1

```
 1                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF CALIFORNIA
 2

 3                                      )
     MICHAEL BLOOM, STEPHEN             )  CASE NO. 17CV2324-AJB
 4   CHATZKY, TONY DIAZ, VALERIE        )
     GRISCHY, PENNY HELMS,              )
 5   BENJAMIN HERNANDEZ, DOUG           )
     HIGGINS, SUZONNE KEITH,            )
 6   GERALD STARK, ANNA STARK, AND      )
     DAVID WILSON, INDIVIDUALLY AND     )
 7   ON BEHALF OF THEMSELVES AND ALL    )  MAY 31, 2018
     OTHERS SIMILARLY SITUATED,         )  3:16 P.M.
 8                                      )
                   PLAINTIFFS           )
 9                                      )
                     -V-                )
10                                      )
     CITY OF SAN DIEGO,                 )
11                                      )
                   DEFENDANT.           )  SAN DIEGO, CALIFORNIA
12   _____)

13

14

15

16             TRANSCRIPT OF MOTION HEARING

17        BEFORE THE HONORABLE ANTHONY J. BATTAGLIA
                UNITED STATES DISTRICT JUDGE
18

19

20

21
     OFFICIAL REPORTER:   JEANNETTE N. HILL, CSR
22                        U.S. COURTHOUSE
                          333 WEST BROADWAY, RM 420
23                        SAN DIEGO, CALIFORNIA 92101
                          (619) 702-3905
24
     REPORTED BY STENOTYPE, TRANSCRIPT PRODUCED BY COMPUTER
25


                         MAY 31, 2018
```

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFFS:   NANCY L. LY, ESQ.
                            FISH & RICHARDSON P.C.
 3                          12390 EL CAMINO REAL
                            SAN DIEGO, CA 92130
 4
                            ANN E. MENASCHE, ESQ.
 5                          DISABILITY RIGHTS ADVOCATES
                            2001 CENTER STREET, 4TH FLOOR
 6                          BERKELEY, CA 94704

 7    FOR THE DEFENDANT:    KATHY J STEINMAN, DEPUTY CITY ATTORNEY
                            OFFICE OF THE CITY ATTORNEY
 8                          1200 THIRD AVE, SUITE 1100
                            SAN DIEGO, CA 92101
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


                           MAY 31, 2018
```

```
 1        SAN DIEGO, CALIFORNIA; THURSDAY, MAY 31, 2018; 3:16 P.M.
 2            DEPUTY CLERK:  CALLING MATTER THREE ON CALENDAR, CASE
 3   NUMBER 17CV2324, BLOOM ET AL VERSUS CITY OF SAN DIEGO, ON FOR
 4   MOTION HEARING.
 5            THE COURT:  OKAY.  LET'S HAVE THE APPEARANCES FOR
 6   PLAINTIFFS.
 7            MS. LY:  GOOD AFTERNOON, YOUR HONOR.  NANCY LY WITH
 8   FISH AND RICHARDSON, FOR THE PLAINTIFFS.
 9            AND WITH ME HERE TODAY IS MY CO-COUNSEL, ANN
10   MENASCHE, WITH THE DISABILITY RIGHTS OF CALIFORNIA, WHO WILL BE
11   ARGUING TODAY.
12            MS. MENASCHE:  GOOD AFTERNOON, YOUR HONOR.
13            THE COURT:  WELCOME TO BOTH OF YOU.
14            AND FOR THE DEFENSE.
15            MS. STEINMAN:  GOOD AFTERNOON, YOUR HONOR.  DEPUTY
16   CITY ATTORNEY KATHY STEINMAN FOR THE CITY.
17            THE COURT:  WELL, THANK YOU.
18            SO WE HAVE THE MOTION TO DISMISS ON CHALLENGING THE
19   CLAIMS MADE UNDER THE ADA AND THE REHABILITATION ACT, TWO OF
20   MANY CLAIMS SOUGHT OR SET OUT BY THE PLAINTIFFS IN THE CASE.
21            AND CLEARLY, THE FOCUS NEEDS TO BE ON THE ADEQUACY OF
22   THE PLEADINGS AT THIS STAGE, NOT NECESSARILY ULTIMATE PROOF
23   BECAUSE OF THE WAY THAT LITIGATION PROCEEDS.
24            AND I THINK IT'S CLEAR TO SAY THAT ISSUES OF
25   HOMELESSNESS, LACK OF ACCESS AND SO FORTH ARE SIGNIFICANT
```

```
 1   ISSUES IN THE COMMUNITY.  BUT, ULTIMATELY, AT THIS STAGE THE
 2   ONLY QUESTION IS ARE THE PLEADINGS SUFFICIENT UNDER RULE 8,
 3   IQBAL AND TWOMBLY, TO SET FORTH A PLAUSIBLE CAUSE OF ACTION?
 4           AND MAYBE WE CAN START WITH THE PLAINTIFFS, BY MY
 5   ASKING THE QUESTION ON ACCOUNT OF DISABILITY, WHAT IS THE
 6   DISABLED COMMUNITY BEING DEPRIVED OF THAT THE ABLE-BODIED
 7   COMMUNITY IS NOT, PURELY AS TO DISABILITY, WITH THE RESTRICTED
 8   PARKING FOR RECREATIONAL VEHICLES?
 9           THAT'S THE SECOND PRONG OF THE ELEMENTS OF THE CAUSE
10   OF ACTION, BEING DENIED BENEFITS OF A PUBLIC ENTITY OR
11   SERVICES, PROGRAMS, AND SO FORTH.
12           SO WHAT IS IT, IN A NUTSHELL?
13           **MS. MENASCHE:**  SHOULD I --
14           **THE COURT:**  YES.  GO AHEAD AND TAKE THE PODIUM.
15           **MS. MENASCHE:**  WE'RE DEALING HERE WITH A FACIALLY
16   NEUTRAL -- OR TWO, ACTUALLY, FACIALLY NEUTRAL ORDINANCES THAT
17   APPEAR TO TARGET PEOPLE WHO ARE HOMELESS WHO HAVE VEHICLES.
18   RVS ARE ONE TYPE OF VEHICLE, BUT ALSO OTHER KINDS OF VEHICLES.
19           AND OUR CLAIM, AND WHAT WE'VE ALLEGED, IS THAT PEOPLE
20   WITH DISABILITIES ARE DISPROPORTIONATELY IMPACTED BY THESE
21   ORDINANCES.
22           AND THERE IS THREE DIFFERENT WAYS AT LEAST -- AND WE
23   HAVE DEFINITELY EXPLAINED AND ALLEGED IN THE FIRST AMENDED
24   COMPLAINT -- THAT PEOPLE WITH DISABILITIES ARE AFFECTED IN A
25   WAY THAT PEOPLE WITHOUT DISABILITIES WHO ARE HOMELESS ARE NOT.
```

1          SO WE'RE DEALING IN BOTH SITUATIONS WITH GROUPS OF
2  HOMELESS PEOPLE.  IN ONE CASE, PEOPLE WHO HAVE DISABILITIES,
3  AND THE OTHER CASE PEOPLE WHO ARE HOMELESS WHO DO NOT HAVE
4  DISABILITIES.
5          **THE COURT:**  BUT HOW DO YOU GET THE HOMELESS -- THE
6  NON-DISABLED HOMELESS REMEDIES UNDER THE ADA OR THE
7  REHABILITATION?  YOU DO NOT.
8          **MS. MENASCHE:**  YOU DON'T.
9          **THE COURT:**  YOU DO NOT.  AND THAT IS ALL WE'RE
10 TALKING ABOUT TODAY.
11         **MS. MENASCHE:**  WE ARE JUST TALKING ABOUT THE SUBCLASS
12 OF PEOPLE, WHO ARE MOST OF OUR NAMED PLAINTIFFS, AND THE
13 SUBCLASS OF PEOPLE WITH DISABILITIES WHO ARE HOMELESS AND WHO
14 ARE BEING TICKETED FOR, BASICALLY, BEING IN THEIR VEHICLES.
15         **THE COURT:**  AND WHAT I'M SAYING IS TAKE THE HOMELESS
16 OUT OF THE EQUATION FOR A MOMENT.  ON THE BASIS OF DISABILITY,
17 WHAT IS THE DENIAL OR DISCRIMINATION BY THE PUBLIC ENTITY, OF
18 BENEFITS AND SERVICES THAT ARE UNDER THE ADA BY REASON OF A
19 DISABILITY, OR UNDER THE REHABILITATION ACT SOLELY BY REASON OF
20 THE DISABILITY?
21         **MS. MENASCHE:**  I THINK IT WOULD MAKE IT CLEARER IF I
22 COULD EXPLAIN THE PRECEDENT -- THE LONG LINE OF PRECEDENT IN
23 THE NINTH CIRCUIT THAT SAYS THAT FACIALLY NEUTRAL LAWS THAT
24 DISPROPORTIONATELY BURDEN A PERSON WITH A DISABILITY
25 DISCRIMINATE BASED ON DISABILITY BY REASON OF DISABILITY.

1           AND IT DOESN'T MATTER -- AND THIS IS TRUE FOR THE
2   ADA, FOR THE FAIR HOUSING ACT, AND FOR SECTION 504.  UNDER ALL
3   THREE LAWS IT DOESN'T MATTER IF THE FACIALLY NEUTRAL LAW ALSO
4   IMPACTS PEOPLE WITHOUT DISABILITIES.  IT DOESN'T MATTER THAT
5   IT'S EVENLY ENFORCED.  IT DOES NOT MATTER IF THE LAW OR POLICY
6   IMPACTS NOT THE IMPAIRMENT ITSELF BUT ONLY THE PRACTICAL IMPACT
7   OF THE DISABILITY, SUCH AS A NEED FOR AN AIDE, LIKE A SERVICE
8   DOG, OR A FINANCIAL ACCOMMODATION.
9           THE ISSUE IS DOES THE ORDINANCE DISPROPORTIONATELY OR
10  UNDULY BURDEN PEOPLE WITH DISABILITIES IN A WAY THAT IT DOES
11  NOT WITH PEOPLE WITHOUT DISABILITIES?
12          **THE COURT:**  SO ARE YOU GOING TO ANSWER MY QUESTION AT
13  SOME POINT IN THIS DIALOGUE?
14          **MS. MENASCHE:**  EXCUSE ME?
15          **THE COURT:**  ARE YOU GOING TO ANSWER THE QUESTION AT
16  SOME POINT?
17          **MS. MENASCHE:**  I AM.  SO THERE IS THREE WAYS THAT WE
18  HAVE NAMED IN OUR FIRST AMENDED COMPLAINT.  THE FIRST IS THAT
19  THE SHELTERS ARE INACCESSIBLE TO MANY OF OUR DISABLED CLASS
20  MEMBERS. BECAUSE OF THEIR DISABILITY, THE CONDITIONS OF THE
21  SHELTERS WOULD AGGRAVATE THEIR MENTAL HEALTH OR PHYSICAL HEALTH
22  CONDITIONS.  SO THOSE SHELTERS ARE INACCESSIBLE.
23          AND I REFER THE COURT TO *COMMUNITIES ACTIVELY LIVING*
24  *V. CITY OF L.A.* -- THAT IS MENTIONED IN OUR PAPERS -- WHERE THE
25  CENTRAL DISTRICT FOUND THAT LOS ANGELES DENIED MEANINGFUL

1  ACCESS TO EMERGENCY PREPAREDNESS PROGRAM BECAUSE THE SHELTERS
2  WERE INACCESSIBLE.  SO THAT IS A SITUATION THAT PEOPLE WITHOUT
3  DISABILITIES WHO ARE HOMELESS DO NOT FACE, COMPARED TO PEOPLE
4  WITH DISABILITIES.
5           SECONDLY, PEOPLE WITH DISABILITIES HAVE PRE-EXISTING
6  MENTAL HEALTH AND/OR PHYSICAL HEALTH CONDITIONS.  AND THAT
7  MEANS THAT THEY ARE MORE VULNERABLE TO SERIOUS OR EVEN
8  LIFE-THREATENING HARM FROM UNSHELTERED HOMELESSNESS IF THEIR
9  VEHICLES ARE IMPOUNDED.
10          IF A PERSON IS HEALTHY, MENTALLY AND PHYSICALLY, AND
11 THEY ARE HOMELESS AND THEY HAVE A VEHICLE IMPOUNDED, IT'S NOT
12 GOOD FOR THEM, BUT THEY ARE NOT GOING TO SUFFER AS MUCH AS
13 SOMEONE WHO ALREADY HAS SERIOUS PHYSICAL CONDITIONS,
14 LIFE-THREATENING CONDITIONS, MENTAL HEALTH CONDITIONS.  THEY
15 ARE GOING TO BE AGGRAVATED.  SO THEY ARE SUFFERING MORE.  THEY
16 ARE GOING TO EXPERIENCE MORE HARM -- A DISPROPORTIONATE HARM,
17 AND THEY ARE UNDULY BURDENED.
18          AND WE ALLEGE IN OUR COMPLAINT A COUPLE EXAMPLES OF
19 THAT.  DAVID WILSON, WHO IS HERE TODAY WITH A SERVICE DOG, WHO
20 ENDED UP BEING HOSPITALIZED AFTER HE LOST HIS RV, BECAUSE OF AN
21 AGGRAVATION OF A MEDICAL CONDITION THAT HE HAS, EDEMA.
22          AND, SECONDLY, BENJAMIN HERNANDEZ, ALSO A NAMED
23 PLAINTIFF, WHO EXPERIENCED WORSENING OF HIS PRE-EXISTING
24 DEPRESSION AND AGGRAVATION OF HIS BACK INJURY WHEN HIS RV WAS
25 IMPOUNDED.

1        SO PEOPLE WITH DISABILITIES ARE BEING HARMED MORE
2   SEVERELY BY THE LOSS OF THE VEHICLES.
3        THIRDLY, MANY PEOPLE WITH DISABILITIES CANNOT ACCESS
4   PERMANENT HOUSING DUE TO THE DISABILITY, NO MATTER WHAT THEY
5   DO.  UNLIKE PEOPLE WITHOUT DISABILITIES, THEY DON'T HAVE THOSE
6   OPTIONS.  A PERSON WITHOUT A DISABILITY, EVEN IF THEY LOST
7   THEIR JOB AND ENDED UP HOMELESS, MAY BE ABLE TO FIND A JOB, A
8   BETTER JOB, GET A SECOND JOB.
9        BUT PEOPLE WITH DISABILITIES -- OR AT LEAST A PORTION
10  IN THIS POPULATION -- A LARGE PORTION OF PEOPLE WITH
11  DISABILITIES REALLY HAVE NO PROSPECT OF BEING ABLE TO WORK
12  BECAUSE THEIR DISABILITIES PREVENT THEM FROM WORKING.
13       SO THAT MEANS THEY HAVE NO PROSPECT OF AFFORDING
14  RENT, AND NO WAY OF COMPLYING WITH THESE ORDINANCES.  THEY HAVE
15  NO WAY OF AVOID THE TICKETING.  THEY HAVE NO MONEY TO PAY THE
16  TICKETS.  AND IT'S REALLY JUST A MATTER OF TIME WHERE THEY ARE
17  GOING TO HAVE THEIR VEHICLE AND THEIR ONLY SHELTER TAKEN FROM
18  THEM AND END UP ON THE STREETS.
19       **THE COURT:**  WITH THAT ARGUMENT, THEN, WE CAN NEVER
20  CITE A HOMELESS DISABLED PERSON WITH ANY VIOLATION OF ANY
21  MUNICIPAL CODE OR LAW.
22       **MS. MENASCHE:**  NO.
23       **THE COURT:**  THEY COULDN'T AFFORD TO PAY IT.
24       **MS. MENASCHE:**  WE'RE NOT TALKING ABOUT ANY MUNICIPAL
25  CODE OF LAW.  WE ARE TALKING ABOUT A SITUATION WHERE PEOPLE ARE

1   BEING TICKETED.  LIKE, FOR EXAMPLE, THE RV PEOPLE, THEY HAVE NO
2   LEGAL PLACE TO PARK ANYWHERE IN THE CITY.  NO PLACE AT ALL.
3             AND IF THEY CAN'T GET -- IF SHELTERS ARE INACCESSIBLE
4   TO THEM AND THEY ARE SUFFERING GREATER HARM, THEY ARE AT RISK
5   OF GREATER HARM, THEN THEY ARE BEING DISCRIMINATED AGAINST
6   BASED ON DISABILITY.
7             SO THEY ARE NOT -- THEY DON'T HAVE THE SAME IMPACT.
8   THEY ARE HARMED IN A DISPROPORTIONATE WAY.  AND IN EVERY CASE
9   THAT I CITED -- WE CITED IN THE PAPERS, *CROWDER V. KITAGAWA*.
10  THAT INVOLVED DOGS.  NOT ALL PEOPLE WITH DISABILITIES HAVE
11  DOGS.  NOT ALL BLIND PEOPLE HAVE DOGS.  BUT BECAUSE THE
12  RESTRICTION ON QUARANTINING DOGS HARMED SOME BLIND PEOPLE --
13  THE ONES WITH SEEING EYE DOGS -- REASONABLE MODIFICATION WAS
14  REQUIRED UNDER THAT.
15            **THE COURT:**  HOW ABOUT *WEINREICH*?
16            **MS. MENASCHE:**  EXCUSE ME?
17            **THE COURT:**  HOW ABOUT *WEINREICH*?  THAT IS A FINANCIAL
18  IMPACT TYPE OF CASE.
19            **MS. MENASCHE:**  LET ME JUST TALK ABOUT *WEINREICH*.
20            **THE COURT:**  AND THAT WOULD SEEM TO BE CONTROLLING
21  HERE.
22            **MS. MENASCHE:**  RIGHT.  LET ME TALK ABOUT THAT.  YEAH.
23  THE CITY RELIES ON BASICALLY WHAT IS DICTA IN THAT CASE.  AND I
24  WILL EXPLAIN WHY I BELIEVE THAT IS THE CASE.
25            FIRST OF ALL, *WEINREICH* PREDATES THE *GIEBELER* AND

1  *BARNETT* DECISION. AND I THINK THAT IS SIGNIFICANT, BUT I WILL
2  GO INTO THAT IN A MINUTE. BUT THE *WEINREICH* DECISION WAS ABOUT
3  EXCLUDING SOMEONE FROM A REDUCED FARE PROGRAM. AND IN ORDER TO
4  BE ELIGIBLE FOR THAT PROGRAM, YOU HAD TO HAVE A QUALIFYING
5  DISABILITY -- IN ORDER TO GET INTO THE PROGRAM. WE HAVE THE
6  SAME THING HERE.
7         **THE COURT:** WE DO? THERE IS NO PROVISION FOR A
8  QUALIFYING DISABILITY FOR THE PARKING.
9         **MS. MENASCHE:** NO. WHAT I --
10        **THE COURT:** THAT IS THE LEVEL OF SCRUTINY.
11        **MS. MENASCHE:** IF YOU LET ME FINISH, YOUR HONOR, I
12 CAN EXPLAIN WHAT I MEAN.
13        BECAUSE THEY DIDN'T HAVE A QUALIFYING DISABILITY,
14 THEY WERE NOT A QUALIFIED PERSON WITH A DISABILITY THAT YOU
15 NEED IN ORDER FOR THE ADA TO EVEN KICK IN. SO THEY WERE NOT --
16 THAT PERSON WAS NOT A QUALIFIED PERSON WITH A DISABILITY.
17        **THE COURT:** BECAUSE YOU SAID HE COULDN'T AFFORD TO
18 GET A DOCTOR TO SIGN THE CERTIFICATE.
19        **MS. MENASCHE:** RIGHT. BUT THAT'S DICTA. BECAUSE YOU
20 DON'T EVEN GET INTO THE ADA -- YOU DON'T EVEN GET INTO THAT IF
21 YOU ARE NOT A QUALIFIED PERSON WITH A DISABILITY. SO IT IS
22 DICTA.
23        BUT SECONDLY, THE CITY MADE A CLAIM THAT THE *GIEBELER*
24 DECISION, WHICH POSTDATES *WEINREICH*, IS LIMITED TO THE FAIR
25 HOUSING AMENDMENT ACT. BUT THAT IS FALSE. IN A CAREFUL

1   READING OF GIEBELER -- AND I WILL GO THROUGH IT -- THE NINTH
2   CIRCUIT NOTED THAT ALL THREE STATUTORY SCHEMES REQUIRE POLICIES
3   BE MODIFIED TO ACCOMMODATE PEOPLE WITH DISABILITIES, AND THAT
4   THE STANDARDS WERE SIMILAR.
5            THE COURT THEN SAID THEY WERE LOOKING TO, QUOTE, BOTH
6   THE REHAB ACT AND THE ADA INTERPRETATIONS OF ACCOMMODATIONS AS
7   INDICATIVE OF THE SCOPE OF ACCOMMODATIONS UNDER THE FHAA,
8   UNQUOTE, ON PAGE 1149.
9            FURTHER, THE *GIEBELER* COURT RELIED ON AN ADA CASE,
10  *U.S. AIRWAYS V. BARNETT,* TO REACH ITS CONCLUSION THAT, QUOTE,
11  ACCOMMODATIONS MAY ADJUST FOR THE PRACTICAL IMPACT OF A
12  DISABILITY, NOT ONLY FOR THE IMMEDIATE MANIFESTATION OR THE
13  PHYSICAL OR MENTAL IMPAIRMENT GIVING RISE TO THE DISABILITY,
14  WHICH IS EXACTLY THE SITUATION WE HAVE HERE.
15           AND, FINALLY, THE *GIEBELER* COURT STATED THAT THE
16  APPROACH -- THAT THE COURT SHOULD NEVER REACH THE
17  REASONABLENESS REQUIREMENT -- IN OTHER WORDS, IF IT'S ECONOMIC
18  CIRCUMSTANCES, WE DON'T EVEN LOOK AT IT.
19           THE *GIEBELER* COURT SAID THAT THIS THEORY WAS NO
20  LONGER VIABLE AFTER *BARNETT*.  AND THE COURT SAID, QUOTE, NOW
21  THAT *BARNETT* HAS BEEN DECIDED -- WHICH IS A U.S. SUPREME COURT
22  CASE -- THAT APPROACH HAS BEEN FORECLOSED.
23           ON THAT BASIS, RELYING ON ADA LAW -- RELYING ON A
24  SUPREME COURT DECISION, THEY DECIDED THAT YOU COULD HAVE A
25  FINANCIAL ACCOMMODATION WHEN THERE WAS A NEXUS BETWEEN THE

1   DISABILITY AND THE POVERTY, AS IN *GIEBELER*.  AND *GIEBELER*
2   INVOLVED GETTING A COSIGNER FOR RENTING AN APARTMENT.
3           SO *GIEBELER* IS VERY CLEAR THAT WE ARE TALKING ABOUT
4   ONE STANDARD IN ALL THREE STATUTORY SCHEMES.  AND THE *GIEBELER*
5   LANGUAGE, EVEN IF IT WASN'T DICTA, WHICH I THINK IT IS IN
6   *WEINREICH*, THE *GIEBELER* LANGUAGE RULES, AND THAT IS A BINDING
7   PRECEDENT IN THIS CASE.
8           **THE COURT:**  OKAY.  WELL, I'M NOT TRYING TO GIVE YOU A
9   HARD TIME.  AND AS I SAID, I THINK HOMELESSNESS IS A BIG
10  PROBLEM, LACK OF SHELTER SPACE IS A BIG PROBLEM.
11          THE INQUIRY, AT THIS STAGE, IS TO SEE IF YOU'VE
12  ADEQUATELY STATED A PLAUSIBLE CLAIM UNDER THE AMERICANS WITH
13  DISABILITIES ACT AND THE REHABILITATION ACT WHICH RELY, IN
14  SIGNIFICANT PART, ON THE FACT OF DISABILITY.
15          AND I GUESS WHAT YOU'RE SAYING IS FOR YOUR PLAINTIFF
16  YOU CAN'T SEPARATE THE TWO.  I MEAN, IF A DISABLED INDIVIDUAL
17  HAS A PLACE TO LIVE AND PARK, THEY ARE NOT AFFECTED BY THIS LAW
18  ADVERSELY, BUT IT'S THOSE THAT ARE HOMELESS.
19          **MS. MENASCHE:**  RIGHT, YES.
20          **THE COURT:**  SO YOU'RE SAYING WE CAN'T REALLY SEPARATE
21  THE TWO IN THE ANALYSIS?
22          **MS. MENASCHE:**  WELL, YOU CAN SEPARATE THAT THE
23  IMPACT, THAT THE BURDEN ON PEOPLE WITH DISABILITIES WITH THESE
24  ORDINANCES IS MUCH GREATER THAN THE BURDEN ON PEOPLE WITHOUT
25  DISABILITIES WHO ARE HOMELESS.  SO THERE IS A GREATER BURDEN,

1    AND THAT IS REALLY WHAT IS SUFFICIENT TO MAKE A CLAIM IN THIS

2    CASE.  AND I ALSO WANTED TO JUST --

3            **THE COURT:**  SO WOULD IT BE THAT THESE CLAIMS UNDER

4    ADA AND THE REHABILITATION ACT ONLY APPLY TO THOSE THAT ARE

5    HOMELESS AND DISABLED?

6            **MS. MENASCHE:**  YES.  YES, THESE CLAIMS.  IT SAYS SO

7    RIGHT IN THE FIRST AMENDED COMPLAINT.  THAT IS ONLY FOR THE

8    SUBCLASS OF PEOPLE WITH DISABILITIES.

9            AND FOR THOSE PEOPLE, THEY ARE MORE VULNERABLE

10   BECAUSE OF THE THREE REASONS THAT I LISTED:  ONE, THAT THE

11   SHELTERS ARE INACCESSIBLE TO THEM VERY OFTEN; TWO, THAT THEY

12   ARE MORE VULNERABLE TO PHYSICAL AND MENTAL HEALTH HARMS BECAUSE

13   THEY ALREADY HAVE CONDITIONS THAT IMPAIR THEM; AND THREE,

14   BECAUSE THEIR HOMELESSNESS -- THEY BASICALLY DON'T HAVE OPTIONS

15   TO GET OUT OF THEIR HOMELESSNESS.  THEY HAVE NO WAY OUT.

16           AND BECAUSE OF THAT, THEY ARE TRAPPED BEING TICKETED.

17   THEY CAN'T AVOID THE TICKETING.  AS I SAID, THERE IS NO PLACE,

18   LEGALLY, ANYWHERE IN THE CITY TO PARK AN RV -- PERIOD -- AT

19   NIGHT.  SO THEY HAVE NO WAY OF AVOIDING THE TICKETING, AND THEY

20   HAVE WHAT IS BASICALLY THEIR HOMES TAKEN FROM THEM.

21           AND THEN THEY ARE OUT ON THE STREET.  AND YOU HAVE

22   PEOPLE WITH ALL KINDS OF HEART CONDITIONS AND ALL KINDS OF

23   SEVERE MENTAL HEALTH CONDITIONS.  AND THEY ARE EXTREMELY

24   VULNERABLE.

25           AND EVERY DAY I HEAR MORE STORIES OF PEOPLE WHO GET

1   THEIR RVS TAKEN, WHO HAVE BEEN IN HOSPITALS, JUST OUT OF THE
2   HOSPITAL AND HAVE THEIR RV TAKEN.  THEY ARE VERY SICK.  AND
3   BEING ON THE STREETS -- AND SHELTERED HOMELESSNESS IS VERY,
4   VERY HARMFUL.
5          AND WE ALLEGED ALL OF THAT.  WE ALLEGED IT VERY
6   SPECIFICALLY.  AND I THINK THAT WHAT WE SAID WAS SUFFICIENT TO
7   STATE A CAUSE OF ACTION AT THE PLEADING STAGE.  WE UNDERSTAND
8   THAT WE ARE GOING TO NEED TO PROVE IT, BUT WE THINK WE SHOULD
9   HAVE AN OPPORTUNITY TO DO THAT.
10         AND THERE IS ONE QUOTE IN THE *MCGARY* CASE, WHICH I
11  THINK IS SIGNIFICANT, THAT SAYS THAT DISMISSALS UNDER 12(B)(6),
12  QUOTE, ARE ESPECIALLY DISFAVORED IN CASES WHERE THE COMPLAINT
13  SET FORTH A NOVEL LEGAL THEORY THAT CAN BEST BE ASSESSED AFTER
14  FACTUAL DEVELOPMENT.
15         THAT IS IN THE *MCGARY* CASE, PAGE 1270.  SO WE THINK
16  WE SHOULD HAVE AN OPPORTUNITY, YOUR HONOR, TO BE ABLE TO PROVE
17  OUR CASE.
18         **THE COURT:**  OKAY.  WELL, THANK YOU.
19         DOES THE DEFENDANT WANT TO HAVE SOME TIME TO COMMENT,
20  THEN?
21         **MS. STEINMAN:**  YES.  BRIEFLY, YOUR HONOR.  I THINK
22  THE COURT, IN ITS INITIAL STATEMENTS, UNDERSTANDS THE ISSUE
23  THAT IS PRESENT BEFORE THE COURT TODAY, WHICH IS VERY
24  STRAIGHTFORWARD.  IT IS WHETHER OR NOT THE COMPLAINT
25  SUFFICIENTLY ALLEGES -- WITH RESPECT TO THE ADA AND THE

1  REHABILITATION ACT OR THE SECTION 504 CLAIMS -- THAT THE
2  ALLEGED DISCRIMINATION HAS OCCURRED BECAUSE OF THEIR
3  DISABILITIES.
4       THE CITY SUBMITS THAT THE COMPLAINT DOES NOT DO SO.
5  THE COMPLAINT, WHEN YOU ANALYZE THE ALLEGATIONS, ATTEMPTS TO
6  BOOTSTRAP ALLEGATIONS REGARDING DISABILITY ONTO WHAT THE
7  SUBSTANCE OF THEIR CLAIM IS, IS THAT THEY ARE AFFECTED BY THESE
8  PARKING REGULATIONS BECAUSE OF THEIR HOMELESS STATUS OR THEIR
9  STATUS AS UNHOUSED INDIVIDUALS.  AND THAT IS THE ISSUE HERE
10 BEFORE THE COURT.
11      THE CASES THAT ARE CITED BY THE PLAINTIFFS IN THEIR
12 BRIEFS ARE DISTINGUISHABLE.  THE *GIEBELER* CASE IS NOT ON POINT.
13 IT IS A CASE IN WHICH THE NINTH CIRCUIT ANALYZED THE FHAA.  AND
14 IN THAT CASE, THE NINTH CIRCUIT, IN ITS ANALYSIS, DETERMINED
15 THAT THE ANALYSIS UNDER THAT FRAMEWORK WAS TO DETERMINE, ONE,
16 WHETHER THE PERSON HAS A DISABILITY; TWO, WHETHER THE
17 DEFENDANTS KNOW OR SHOULD HAVE KNOWN OF THE DISABILITY; THREE,
18 COULDN'T ACCOMMODATION HELP THE PLAINTIFF OBTAIN OR USE THE
19 DWELLING; AND FOUR, THAT THE DEFENDANTS REFUSED TO PROVIDE THAT
20 ACCOMMODATION.
21      IT DOES NOT ADDRESS WHAT THE ADA AND SECTION 504
22 REQUIRE, WHICH IS THAT THE ALLEGED DISCRIMINATION OCCUR BECAUSE
23 OF THE DISABILITY.
24      SO *GIEBELER* IS ENTIRELY DISTINGUISHABLE.  AND I
25 BELIEVE THE COURT INDICATED OR MENTIONED THE *WEINREICH V. CITY*

1  *OF LOS ANGELES* CASE, WHICH IS ON POINT.  IT IS NOT DICTA.  IT

2  ADDRESSED A VERY SIMILAR SITUATION HERE, WHICH -- THE

3  ALLEGATION WAS THAT THE DISCRIMINATION ACTUALLY OCCURRED

4  BECAUSE OF FINANCIAL LIMITATIONS, NOT BECAUSE OF A DISABILITY.

5        AND WE WOULD SUBMIT, YOUR HONOR, THAT IN THIS CASE

6  THE PLAINTIFFS' COMPLAINT HAS NOT MET THE INITIAL BURDEN OF

7  ALLEGING THAT THE ALLEGED DISCRIMINATION OCCURRED BECAUSE OF

8  THEIR DISABILITY.

9        AND TO THE EXTENT THAT THEY ARE ARGUING THAT THIS

10 SHOULD BE ANALYZED UNDER A REASONABLE ACCOMMODATION FRAMEWORK,

11 WE DON'T EVEN GET TO THAT POINT UNLESS THEY MEET THE INITIAL

12 HURDLE, WHICH IS THAT THE ALLEGATIONS MUST BE BECAUSE -- THAT

13 THE DISCRIMINATION MUST BE BECAUSE OF A DISABILITY.

14       **THE COURT:**  BUT HOW WOULD YOU RECONCILE OR

15 DISTINGUISH *CROWDER* FROM *WEINREICH*?

16       **MS. STEINMAN:**  WELL, *CROWDER* -- IN EACH OF THOSE

17 CASES THAT ARE CITED BY PLAINTIFFS, THE COURTS FOUND THAT THE

18 DISCRIMINATION DID OCCUR BECAUSE OF THE DISABILITY.  THEN THEY

19 WENT ON TO THE REASONABLE ACCOMMODATION ANALYSIS.

20       IN *WEINREICH*, THE COURT DIDN'T GET TO ANY REASONABLE

21 ACCOMMODATION ANALYSIS BECAUSE THE COURT FOUND THAT THERE WAS

22 NO DISCRIMINATION BECAUSE OF THE DISABILITY.  AND SIMILARLY

23 HERE, THERE IS NO ALLEGATION THAT THE DISCRIMINATION IS BECAUSE

24 OF THE DISABILITY.

25       **THE COURT:**  OKAY.

1         **MS. STEINMAN:** UNLESS THERE ARE ANY FURTHER
2 QUESTIONS.
3         **THE COURT:** NO, THANK YOU.
4         ANY REPLY FROM THE PLAINTIFF?
5         **MS. MENASCHE:** YES, YOUR HONOR.
6         I THINK THE CITY IS ASSERTING THAT WE ARE TRYING TO
7 CLAIM INTENTIONAL DISCRIMINATION. THAT IS WHAT I'M HEARING
8 WHEN I HEAR THIS ARGUMENT.
9         WHAT WE'RE SAYING, AND THIS LONG LINE OF PRECEDENCE
10 SAYS, IF FACIALLY NEUTRAL LAWS THAT DON'T TARGET PEOPLE WITH
11 DISABILITIES, ARE NOT AIMED AT PEOPLE WITH DISABILITIES, IF
12 THEY DISPROPORTIONATELY BURDEN PEOPLE WITH DISABILITIES, THAT
13 CONSTITUTES DISCRIMINATION BY REASON OF DISABILITY. AND ALL
14 THOSE CASES SAY EXACTLY THAT.
15         THE LAW ABOUT QUARANTINING DOGS, THAT WAS NOT AIMED
16 AT PEOPLE WITH DISABILITIES. THAT WAS ACROSS-THE-BOARD LAW
17 THAT PREVENTED DOGS FROM GOING INTO HAWAII BECAUSE THEY WERE
18 AFRAID OF RABIES, AND THEY WERE GOING TO QUARANTINE THEM. THEY
19 DIDN'T HAVE ANY RABIES IN HAWAII, APPARENTLY. SO THEY WERE
20 QUARANTINING ALL DOGS.
21         AND CERTAINLY THERE ARE A LOT OF PEOPLE WITH
22 DISABILITIES WHO DON'T USE DOGS, AND THERE IS SOME THAT DO.
23 AND THERE IS SOME PEOPLE WHO ARE BLIND, WHO USE A SEEING EYE
24 DOG, AND OTHERS THAT DON'T.
25         BUT BECAUSE IT IMPACTED DISPROPORTIONATELY PEOPLE --

1   AND UNDULY BURDENED THE PEOPLE WITH DISABILITIES WHO HAD THE
2   DOGS, WHICH IS A SUBSECTION OF THAT GROUP, THEN IT WAS
3   CONSIDERED AN ADA VIOLATION.  AND THEY WERE ABLE TO GO TO THE
4   NEXT STEP:  CAN WE REASONABLY ACCOMMODATE THEM; CAN WE MAKE A
5   REASONABLE MODIFICATION.
6            SO THIS IS REALLY CLEAR.  IT'S FACIALLY NEUTRAL LAWS
7   THAT DISPROPORTIONATELY BURDEN PEOPLE WITH DISABILITIES ARE
8   CONSIDERED DISCRIMINATION BY REASON OF DISABILITY.  THANK YOU.
9            **THE COURT:**  ALL RIGHT.  THANKS.
10           ANYTHING ELSE YOU WANT TO SAY, MS. STEINMAN?
11           **MS. STEINMAN:**  NO, YOUR HONOR.
12           **THE COURT:**  I APPRECIATE THE COMMENTS.  I WILL TAKE
13  THE MATTER UNDER SUBMISSION AND RULE AS TO THE LIMITED ISSUE
14  THAT IS HERE TODAY.
15           AGAIN, I WISH I COULD SOLVE EVERYBODY'S PROBLEMS, BUT
16  WE ARE ONLY GOING TO BE DECIDING AT THIS POINT IF THE PLEADINGS
17  ARE SUFFICIENT TO FRAME THE MATTER FOR FURTHER LITIGATION UNDER
18  RULE 8, IQBAL/TWOMBLY AND THE OTHER CASES THAT HAVE BEEN CITED.
19           SO IT WILL BE SUBMITTED AND WE'LL RULE IN DUE COURSE.
20  THANK YOU ALL VERY MUCH.
21           **MS. STEINMAN:**  ACTUALLY, YOUR HONOR, COUNSEL IN THE
22  PRIOR CASE REMINDED ME OF A HOUSEKEEPING ISSUE I HAVE, AS WELL.
23  I AM ALSO GOING TO BE OUT OF THE COUNTRY.  SO DEPENDING ON WHEN
24  THIS RULING IS ISSUED AND WHAT THE RULING IS AND IF THERE IS A
25  RESPONSIVE PLEADING REQUIRED FROM THE CITY, I'M GOING TO BE OUT

1  OF THE COUNTRY FROM JUNE 15TH.  I WILL BE BACK IN THE OFFICE
2  JULY 8TH.
3           **THE COURT:**  OKAY.  SO TO THE EXTENT I DENY THE MOTION
4  AND REQUIRE AN ANSWER, WOULD THE PLAINTIFF HAVE ANY OPPOSITION
5  TO HAVING THE ANSWER DUE AFTER JULY 8TH, WHEN COUNSEL IS BACK
6  IN TOWN?
7           **MS. MENASCHE:**  NO, YOUR HONOR.
8           **MS. STEINMAN:**  THANK YOU, YOUR HONOR.
9           **THE COURT:**  OKAY.  SO WE'LL MAKE SURE TO CONSIDER
10 THAT IF THAT IS HOW THINGS GO.
11          ONCE AGAIN, THANK YOU-ALL.  THE MATTER IS SUBMITTED
12 AND WE ARE IN RECESS.
13          **MS. STEINMAN:**  THANK YOU, YOUR HONOR.
14 (PROCEEDINGS CONCLUDED AT 3:40 P.M.)
15                           CERTIFICATION
16          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
   QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
17 STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
   TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE
18 ON MAY 31, 2018; THAT SAID TRANSCRIPT IS A TRUE AND CORRECT
   TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE FORMAT
19 USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF THE
   UNITED STATES JUDICIAL CONFERENCE.
20
21 DATED:    JUNE 4, 2018, AT SAN DIEGO, CALIFORNIA.
22          S/N_____
            JEANNETTE N. HILL, OFFICIAL REPORTER, CSR NO. 11148
23
24
25