1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11 | Michael Bloom, et al.,

Plaintiffs,

12

13 | v.

14 | City of San Diego, et al.,

Defendants.

15

Case No.:  17-cv-2324-AJB-NLS

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 26)**

16
17
18
19
20
21
22
23
24
25
26
27
28

Before the Court is Plaintiffs' motion for a preliminary injunction to enjoin defendants, the City of San Diego, from enforcing two San Diego Vehicle Ordinances. (Doc. No. 26-1 at 8.) As explained more fully herein, the Court finds Plaintiffs are likely to prevail on their claim that San Diego Municipal Code § 86.0137(f), the "Vehicle Habitation Ordinance," violates Plaintiffs' constitutional rights since the Ordinance is both vague on its face and is being arbitrarily enforced. Thus, the Court **GRANTS** Plaintiffs' motion to enjoin its enforcement.

However, as to San Diego Municipal Code § 86.0139(a), the "Nighttime RV Ordinance," the Court finds the Plaintiffs have not shown a likelihood of success on the merits of their claim that the Ordinance is vague or is being arbitrarily applied. Thus, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to enjoin that Ordinance.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    BACKGROUND

In this Court's order denying defendants' dismissal motion, the Court recognized San Diego's growing housing crisis. (Doc. No. 36 at 1.) Plaintiffs are homeless individuals who reside out of their Recreational Vehicles ("RVs"). (Doc. No. 26-1 at 9.) Some are also disabled, and live in their RVs rather than on the street or in a functionally unaccommodating shelter. (*Id.*) Plaintiffs' disabilities prevent them from working and their disability incomes are too meager to cover rapidly growing rent payments. (*Id.* at 9–10.) Non-disabled Plaintiffs also cannot rely on homeless shelters as permanent housing because shelters provide "only transitory accommodations." (*Id.* at 10.) Plaintiffs consider themselves "fortunate enough" to have an RV, shielding them from unsheltered homelessness, risk of hepatitis A contraction, and functionally unavailable or temporary protection in a shelter. (*Id.*) However, two San Diego Ordinances prevent Plaintiffs from enjoying the use of their RV as a home. The first Ordinance at issue is San Diego Muni. Code § 86.0137(f), the "Vehicle Habitation Ordinance," which states:

> It is unlawful for any *person* to use a vehicle while it is *parked* or *standing* on any street as either temporary or permanent living quarters, abode, or place of habitation either overnight or day by day.

(italics in original).

The second Ordinance at issue is San Diego Muni. Code § 86.0139(a), the "Nighttime RV Ordinance," which states:

> Except as provided in section 86.0140 or otherwise expressly provided to the contrary herein, or unless such *parking* or *standing* is authorized by the City manager and appropriate signs permitting such *parking* or *standing* are posted: (a) [i]t is unlawful for any *person* to park or leave *standing* upon any public street, *park road*, or *parking lot*, any oversized vehicle, *non-motorized vehicle*, or *recreational vehicle* between the hours of 2:00 a.m. and 6:00 a.m.

(italics in original). However, this Ordinance allows those with an address to apply for a permit excepting them from the rule for up to 72 days in a year. San Diego Muni. Code § 86.0143. Plaintiffs' Amended Complaint argues one reason the Ordinances violates their substantive due process rights is because they are unlawfully vague. (Doc. No. 14 at 33.)

2

Plaintiffs also allege the Ordinances were passed with discriminatory motive against homeless individuals, are enforced arbitrarily and inconsistently, and violate Plaintiffs' constitutional rights. (Doc. No. 26-1 at 12–13.) To evidence this, Plaintiffs enclosed notes from a town hall meeting, a City Counsel memo, a report issued by the Counsel's Land Use & Housing Committee, and a San Diego Police Department Training Bulletin; all of which are discussed in more detail below.

## II.    LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish: (1) likelihood of success on the merits; (2) likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24; *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).

## III.    DISCUSSION

Plaintiffs move for a preliminary injunction to enjoin Defendants from: (1) ticketing Plaintiffs under the municipal code, (2) prosecuting Plaintiffs or collecting fines from previously-issued tickets under the ordinance, and (3) impounding Plaintiffs' vehicles as a result of one or more tickets issued under the ordinance. (Doc. No. 26 at 3.) The Court takes the merits of each Ordinance in turn.

### A.    The Vehicle Habitation Ordinance, San Diego Municipal Code § 86.0137(f)

In evaluating the *Winter* factors below, the Court finds Plaintiffs are likely to prevail on their claim the Ordinance is unlawful, that Plaintiffs will suffer irreparable harm if their RVs are impounded, that the balance of hardships tilts in their favor, and that an injunction is in the public's interest.

17-cv-2324-AJB-NLS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    Likelihood of Success on the Merits

Likelihood of success is the most important *Winter* factor. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015); *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) ("We begin with the first and most important factor: whether petitioners have established a likelihood of success on the merits."). A "district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)). In plain terms, mandatory injunctions should not issue in "doubtful cases." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).

Plaintiffs argue the Vehicle Habitation Ordinance is "unconstitutionally vague both because [1] it fails to provide adequate notice of the conduct it criminalizes, and because [2] its lack of clarity encourages police officers to target people for arbitrary and discriminatory reasons, including being homeless." (Doc. No. 26-1 at 20.) The standard for evaluating whether a law is vague was articulated in *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). It states:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

(footnotes omitted). More succinctly stated, an ordinance is vague on its face when "no standard of conduct is specified at all. As a result, men of common intelligence must necessarily guess at its meaning." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (internal quotation marks omitted). "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable

4

ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citation omitted). Plaintiffs contend they are likely to win on the merits of their vagueness claim, arguing the Vehicle Habitation Ordinance both provides inadequate notice and is arbitrarily enforced.

### a.    Inadequate Notice

Plaintiffs first allege the Vehicle Habitation Ordinance is "unconstitutionally vague because ordinary people would not understand what conduct constitutes 'use [of] a vehicle . . . as either temporary or permanent living quarters, abode, or place of habitation either overnight or day by day.'" (Doc. No. 26-1 at 21 (citing San Diego Muni. Code § 86.0137(f)).) Defendants maintain the Ordinance is not vague, and even if parts of it were found to be vague, the severability clause in the Municipal Code would allow the Ordinance to stand, minus the vague terms. (Doc. No. 31 at 13–14.)

"[T]he purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law." *Morales*, 527 U.S. at 58; *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1155 (9th Cir. 2014). "A penal statute cannot require the public to speculate as to its meaning while risking life, liberty, and property in the process." *Desertrain*, 754 F.3d at 1155. The court in *Desertrain* struck down a similar ordinance banning vehicle habitation as vague, which stated:

> No person shall use a vehicle parked or standing upon any City street, or upon any parking lot owned by the City of Los Angeles and under the control of the City of Los Angeles or under control of the Los Angeles County Department of Beaches and Harbors, as living quarters either overnight, day-by-day, or otherwise.

*Id.* at 1149. In that case, four homeless individuals brought suit arguing the L.A. ordinance violated due process, but failed to specifically denote a vagueness challenge in the amended complaint. *Id.* at 1149, 1152. The district court, in granting summary judgment for defendants, did not entertain any vagueness arguments. *Id.* at 1153. On appeal, the Ninth Circuit first found the district court should have construed plaintiffs' motion as an argument

that the law was vague and considered a vagueness challenge on its merits. *Id.* at 1155. Then, addressing the merits, the court found the L.A. ordinance was unconstitutionally vague because it both failed to provide notice and was arbitrarily enforced against the homeless. *Id.* at 1155–57.

Specifically, the court found the L.A. ordinance failed to define "living quarters" or specify long how "otherwise" denoted. *Id.* at 1155. The court noted neither sleeping in a vehicle nor keeping many belongings in one were required to violate the ordinance and that "there is no way to know what *is* required to violate [the ordinance]." *Id.* The Court went on to rhetorically question what could violate the law and why the inability to answer those questions constituted vagueness:

> Is it impermissible to eat food in a vehicle? Is it illegal to keep a sleeping bag? Canned food? Books? What about speaking on a cell phone? Or staying in the car to get out of the rain? These are all actions Plaintiffs were taking when arrested for violation of the ordinance, all of which are otherwise perfectly legal. And despite Plaintiffs' repeated attempts to comply with Section 85.02, there appears to be nothing they can do to avoid violating the statute short of discarding all of their possessions or their vehicles, or leaving Los Angeles entirely. All in all, this broad and cryptic statute criminalizes innocent behavior, making it impossible for citizens to know how to keep their conduct within the pale.

*Id.* 1155–56.

Similarly here, Plaintiffs allege the Ordinance "provides no guidance on what turns a mere vehicle into a 'living quarters,' 'abode,' or 'place of habitation.'" (Doc. No. 26-1 at 21.) Plaintiffs also assert "the ordinance provides no guidance as to what a person must do to 'use' the vehicle" as a place of habitation "while parked on the street." (*Id.*) Attempting to distinguish the San Diego Ordinance from the vague Los Angeles one, Defendants argue its Ordinance is "narrower and clearer" because it adds the words "abode" and "place of habitation" as "additional descriptive terms [in addition to 'living quarters'] explaining the prohibited conduct." (Doc. No. 31 at 12.) Defendants claim these two additional words help modify the prohibited conduct and moot the *Desertrain* concerns—that making a call, eating, or storing of items might violate the law—because those actions would not arise to

using the vehicle as an "abode" or "place of habitation." (*Id.* at 12–13.) Defendants explain that "abode" means "a person's home or residence" and "habitation" is "'the act of living in a place.'" (*Id.* at 11 (quoting Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/habitation).) The Court notes none of these words are defined in the Municipal Code itself, which only defines the italicized words in the Ordinances (i.e. *parked*, *standing*, *person*). *See* San Diego Muni. Code Ch. 8, §§ 81.0101–81.0105.

Yet, as Plaintiffs retort, the Ordinance still provides nothing to indicate what turns a vehicle into an "a person's home" or what activities turn merely enjoying one's vehicle into "the act of living in a place" such that the vehicle becomes a living quarters and thus a violation of the Ordinance. (Doc. No. 32 at 4.) Plaintiffs also argue the additional qualifiers fail to clarify the time limits imposed in the statute of what constitutes "day by day" or "overnight." (*Id.* ("Is parking an RV on the street for 30 minutes 'day by day' activity?").) Much like the plaintiffs in *Desertrain*, at least two Plaintiffs here were ticketed for similarly benign and lawful matters, illuminating the issues with the Ordinance's construction. Doug Higgins, a named plaintiff, was legally parked in his RV reading a book on his couch when an officer ticketed him for habitation. (Higgins Decl., Doc. No. 26-12 ¶¶ 2, 4.) When questioned, Higgins claims the officer provided no explanation as to why he believed Higgins was habitating in his RV, how he was parked "overnight or day by day," or how any elements of the Vehicle Habitation Ordinance applied, but instead told Higgins "he could ticket [him] at any time and at any place in San Diego." (*Id.* ¶ 4; Doc. No. 26-1 at 14.)

Additionally, Tony Diaz, another named plaintiff, claims he has been ticketed several times despite permissively parking in a 7-11 parking lot during the 2:00 a.m. to 6:00 a.m. time period he cannot park his RV on the street. (Diaz Decl., Doc. No. 26-5 ¶¶ 4, 5.) One incident, captured by a police-worn body camera, occurred when Diaz parked his RV legally on a road and went to a public restroom. (*Id.* ¶ 6; Doc. No. 27, Ex. C at 1:46–3:51.) The officer told Diaz, despite his insistence he had arrived minutes earlier around 7:00 a.m., he could ticket Diaz anytime he saw his truck. (*Id.*; Ex. C at 14:14–

7

14:25.) Although this ticket was eventually dismissed, Diaz has been ticketed twice more under similar circumstances. (Doc. No. 26-1 at 15; Diaz Decl. ¶¶ 9, 10.) On the first occasion, Diaz was recovering from a medical episode and was lying down in his truck, and on the second occasion he left his lawfully parked RV in a public parking lot to ride his bicycle and use the public shower and restroom, but returned to a ticket without any explanation. (*Id.*)

These incidents highlight the Ninth Circuit's precise concerns with the L.A. ordinance: it appears "there is no way to know what *is* required to violate" the City's Ordinances. *See Desertrain*, 754 F.3d at 1155. Parking an RV or camper truck on public property during lawful hours whilst engaging in lawful activities appears to be enough to violate the Ordinance. Although the City argues activities which might trigger "living quarters," such as reading a book or talking on the telephone, "would not rise to the level of using the vehicle as an 'abode' or 'place of habitation,'" the Ordinance itself gives no meaning or definition to those words, and it did not prevent the ticketing of Diaz or Higgins. (Doc. No. 31 at 12–13.) The severability cause, accordingly, cannot save the Ordinance because Plaintiffs show a likelihood that nearly all the Ordinance's operative words— living quarters, abode, place of habitation, overnight, and day by day—are vague.

Thus, the Court finds Plaintiffs have shown a likelihood of success on the merits of their claim that the Ordinance is vague because it fails to alert the public what behavior is lawful and what behavior is prohibited.

### b.    Arbitrary and Discriminatory Enforcement

Plaintiffs next assert the Ordinance is being arbitrarily enforced against homeless individuals, pointing to statements made during the City's deliberation of the Ordinance at a Mission Beach Town Council meeting, as well as the San Diego Police Department Training Bulletin 14-01. (Doc. No. 26-1 at 24.) Moreover, Plaintiffs argue the City failed to give law enforcement guidance "to prevent law enforcement officers from enforcing [the Ordinance] in an arbitrary and discriminatory manner." (*Id.* at 25.)

"A statute is also unconstitutionally vague if it encourages arbitrary or

discriminatory enforcement." *Desertrain*, 754 F.3d at 1156. "If a statute provides 'no standards governing the exercise of . . . discretion,' it becomes 'a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.'" *Id.* (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972). The Ninth Circuit held in *Desertrain* that the L.A. ordinance, in addition to failing to provide adequate notice, was also being arbitrarily and discriminatorily enforced against the homeless. *Id.*

Defendants assert Training Bulletin 14-01 offers specific enforcement guidance in determining whether a vehicle is being used as living quarters. (Doc. No. 31 at 14.) The Training Bulletin states:

> Mere sleeping in a vehicle does not constitute a violation. Factors tending to establish that the vehicle is used as either temporary or permanent living quarters include: time of the offense (early morning hours); moisture/condensed on vehicle/windshield; location of the offense) [sic] area of chronic lodging) [sic]; admission that slept overnight at location; presence of any other temporary structures (milk crates, boxes, tables, chairs, blankets, etc.); and/or, significant personal belongings nearby or in vehicle.

(Doc. No. 26-2 at 132, Ex. R.) However, Plaintiffs argue the Bulletin provides little direction and only a vague list of criteria to look for in assessing a potential violation. And Plaintiffs' experiences seemingly validate their accusations of arbitrary enforcement. Diaz's states in his declaration that he does "not know what [he] can do to avoid being ticketed." (Diaz Decl. ¶ 11.) He claims to have been ticketed even when he was not in or near his vehicle. (*Id.*) Although he only sleeps in his vehicle when he is on private property, he continues to be ticketed, and is worried about ticketing even if he, for example, parks at court to attend a hearing. (*Id.* ¶¶ 4–5, 11.) Higgins also stated he does not know how to avoid ticketing and said "[a] couple of years ago, an officer told me that you are habitating if you have food and clothes in your vehicle." (Higgins Decl. ¶ 5.) In these experiences, Plaintiffs were engaged in lawful behavior when the City ticketed them. And yet, at the same time, a retiree, who owns a surf van equipped with an outdoor shower, space for resting, equipment for beach dwelling such as chairs and a folding table, and coolers to

17-cv-2324-AJB-NLS

store food and beverages, could meet the criteria listed in the Bulletin. However, there is nothing in the Training Bulletin preventing officers from choosing not to ticket the retiree, while at the same time, ticketing a similar vehicle owned by Plaintiffs or other homeless individuals.

It is the City's ceding such a wide implementation scheme to officers which concerned the *Desertrain* court. Thus, the Court finds Plaintiffs have shown a likelihood of success on its arbitrary enforcement claim as well. Because the Court finds Plaintiffs are likely to succeed on the merits of their unlawfully vague claim, the Court declines to analyze Plaintiffs' substantive due process argument. (*See* Doc. No. 26-1 at 26–29.)

## B.    Likelihood of Irreparable Harm

Plaintiffs argue they will suffer irreparable harm absent injunctive relief. (Doc. No. 26-1 at 30.) "Without injunctive relief, Defendant will continue to impound Plaintiffs' vehicles during the pendency of this lawsuit, depriving Plaintiffs of their only form of shelter and leaving them on the streets." (*Id.*) Plaintiffs also submitted expert declarations detailing the harm Plaintiffs stand to face should they lose their RVs. (Lipson Decl., Doc. No. 26-3; Beck Decl., Doc. No. 26-4.)

Defendants counter that Plaintiffs' delay in seeking this injunction undermines their irreparable harm argument. (Doc. No. 31 at 18.) Defendants point to a Ninth Circuit case, *Garcia*, 786 F.3d at 746, purporting to find a "months-long delay . . . undercut [plaintiff's] claim of irreparable harm." (*Id.*) The Ninth Circuit did state "[t]he district court did not abuse its discretion by finding this delay undercut Garcia's claim of irreparable harm," however, in doing so it pointed to another Circuit case from 1985 with the same holding. *Garcia*, 786 F.3d at 746 (citing *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)). However, in the 1985 case, the court did not state how long the delay was. *Oakland Tribune*, 762 F.2d at 1377. In a case cited by the *Oakland* opinion, the Ninth Circuit found a five-year delay undercut claims of irreparable harm. *Lydo Enterprise, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("In assessing the relative hardship to the parties and the history of their dilemma, we are

mindful that for reasons unexplained, Lydo delayed five years before taking any action, which, if commenced sooner, might have avoided the threat of immediate closure.").

As Plaintiffs note, Defendants "make[] no attempt to rebut Plaintiffs' showing of irreparable harm," but instead rely only on unreasonable delay. (Doc. No. 32 at 8.) Here, Plaintiffs filed their claim in November 2017, and filed for preliminary injunction four months later. Courts have found, as Plaintiffs argue, longer delays in filing for injunctive relief reasonable. (*Id.* at 9 (citing *Suja Life, LLC v. Pines Int'l, Inc.*, Case No. 16cv985-GPC (WVG), 2016 WL 6157950, at *14–15 (S.D. Cal. Oct. 24, 2016) (finding a 14-month delay "due to good faith discussions and negotiations" did "not weigh against a finding of irreparable harm.").) Here, the Court does not find Plaintiffs' attempts to work with City Council to find a non-legal resolution to the RV problem, and then waiting a few months to file the preliminary injunction after commencing litigation, an unreasonable delay. As such, the delay does not weigh against a finding of irreparable harm.

As the moving party, Plaintiffs must show the harm is not only irreparable, but also that they face immediate threatened injury. *Carribean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); Fed. R. Civ. P. 65(b)(1)(A) (plaintiff must show it faces both "immediate and irreparable injury"). Here, if the City continues to ticket Plaintiffs, they stand to lose their only form of shelter through impounding. (Doc. No. 26-1 at 30.) Thus, Plaintiffs have met this burden and the Court finds Plaintiffs stand to face irreparable harm absent an injunction.

## C.    Balance of Hardships

Plaintiffs also insist the balance of hardships tips in their favor. (*Id.*) "To obtain a preliminary injunction, a plaintiff must also demonstrate that 'the balance of equities tips in his favor.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (quoting *Winter*, 555 U.S. at 20). Plaintiffs argue that "Defendant does not need to enforce the Ordinances to keep its streets, parking lots, and neighborhoods safe and clean." (Doc. No. 26-1 at 31.) Plaintiffs note in similar cases courts have "consistently found that the balance of hardships tilts in favor of plaintiffs." (*Id.*)

1    Defendants allege the balance of hardships does not weigh in Plaintiffs' favor
2    because Plaintiffs fail to show alternate ways the City could keep the streets clean and safe
3    and prevent waste from entering the storm drains or the City's curbs. (Doc. No. 31 at 20.)
4    However, in Plaintiffs' reply, Plaintiffs list several ways the City could meet its goals
5    without the Ordinances: (1) "prohibit parking in excess of 72 hours, in alleys, and on
6    private property, and establish time limits for parking on designated streets;" (2) prohibit
7    dumping of refuse and pollutants into bodies of water, the wastewater system, and/or on
8    public or private highways or roads;" and (3) "prohibiting littering." (Doc. No. 32 at 10.)
9    Additionally, pre-litigation, Plaintiffs suggested the City designate a safe lot for RVs to
10   park during the prohibited nighttime hours which the City could regulate.
11   (Doc. No. 14 ¶¶ 59–61.)

12   Courts have found that although the City has a discernable interest in promoting
13   cleanliness and public health, a homeless person's interest in their personal possessions,
14   safety, and rights outweighs it. *Jeremiah v. Sutter County*, No. 2:18–cv–00522–TLN–KJN,
15   2018 WL 1367541, at *5 (E.D. Cal. Mar. 16, 2018) ("[T]he County's interest in cleaning
16   up the river bottoms is outweighed by Plaintiffs' interest in their personal property and
17   their constitutional rights."); *Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005, 1019
18   (C.D. Cal. 2011) ("[T]he City's interest in clean streets is outweighed by Plaintiffs' interest
19   in maintaining the few necessary personal belongings they might have.").

20   If the injunction is not entered, Plaintiffs will suffer irreparable harm through
21   continued ticketing and impounding of their vehicles. These vehicles keep Plaintiffs off the
22   streets, where they would face dangerous and unsanitary conditions. Plaintiffs' vehicles
23   also allow Plaintiffs a place to live that accommodates their disabilities, which a shelter
24   cannot. If Plaintiffs' vehicles are impounded, Plaintiffs are unlikely to afford the fees to
25   recover them, and could be permanently displaced, along with all their possessions. On a
26   spectrum, the balance of hardships tips towards Plaintiffs.

27   **D.    Public Interest**
28   Finally, Plaintiffs assert the public's interest is served through granting the

preliminary injunction for several reasons. (Doc. No. 26-1 at 31.) Any party seeking a preliminary injunction must show that the injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiffs allege that first, the injunction "will improve the overall health and well-being of the public" by protecting class members from "losing the shelter of their vehicles." (Doc. No. 26-1 at 31–32.) Second, the relief will "protect the broader public's health by ending policies that increase the unsheltered homeless population in San Diego." (*Id.* at 32.) One example Plaintiffs point to is the recent "Hepatitis A epidemic." (*Id.*) Plaintiffs argue an injunction could "[r]educ[e] the chance of future outbreaks" by "keeping people off the street." (*Id.*) Finally, Plaintiffs allege Defendants can use the public's resources more efficiently, such as increasing spending on crime prevention. (*Id.*) The balance tips in their favor, Plaintiffs insist, as the City's interest in clean streets does not outweigh their interest in "maintaining the few necessary personal belongings they might have." (*Id.* (quoting *Lavan*, 797 F. Supp. 2d at 1009).)

Defendants argue "[t]here is a strong public interest in keeping City streets and parking lots clean, safe, and open for the use and enjoyment by all members of the public, not just Plaintiffs or class members." (Doc. No. 31 at 22.) The City again argues that "Plaintiffs make no effort to articulate how the City could [keep its streets clean] without continued enforcement of these parking ordinances." (*Id.* at 23.) However, as previously discussed, Plaintiffs do list several ways the City could maintain the public's interest in clean and safe streets while not enforcing this Ordinances. While the public does have an interest in keeping vehicles from taking permanent residence on streets, and keeping streets clean and safe, the public also has an interest in keeping individuals from unsheltered homelessness and preventing these individuals from losing stable shelter and their only possessions. Again, on a scale, Plaintiffs have shown an injunction would favor the public's interest.

Thus, the Court finds Plaintiffs have met all four *Winter* factors and **GRANTS** Plaintiffs' motion to enjoin enforcement of the Vehicle Habitation Ordinance, San Diego Muni. Code § 86.0137(f).

1

**B.    The Nighttime RV Ordinance, San Diego Muni. Code § 86.0139(a)**

Plaintiffs spend the majority of their briefing arguing the unlawfulness of the Vehicle Habitation Ordinance, but fail to make specific arguments as to why the Nighttime RV Ordinance is similarly vague. The Nighttime RV Ordinance—which the City refers to as the "Oversize Vehicle Ordinance" or the "OVO"—bans "any *person* to park or leave *standing* upon any public street, *park road*, or *parking lot*, any oversized vehicle, *non-motorized vehicle*, or *recreational vehicle* between the hours of 2:00 a.m. and 6:00 a.m." San Diego Muni. Code § 86.0139(a) (italics in original). Unlike the Vehicle Habitation Ordinance, this law clearly proscribes the forbidden conduct: a person cannot leave an oversized vehicle or RV on the street, or in a parking lot, between 2:00 a.m. and 6:00 a.m. While the Court sympathizes that this Ordinance leaves Plaintiffs with nowhere to park between these hours and is decidedly unfair, the law is not ambiguous, unclear, or vague in any way.

As to whether the Ordinance violates the second prong, arbitrary or discriminatory application of the law, the Court finds Plaintiffs have failed to meet their burden of proof in showing the Nighttime RV Ordinance is being applied discriminatorily. Plaintiffs have not shown that officers, in applying the Ordinance, are arbitrarily or discriminatorily ticketing the homeless at a rate much higher than other folks with RVs during the 2:00 a.m. to the 6:00 a.m. time period. Moreover, dissimilar from the Vehicle Habitation Ordinance, nothing in the Ordinance itself encourages arbitrary enforcement or allows officers discretion in interpreting who is violating the Ordinance. While the Court finds Plaintiffs' contentions plausible, the Court must consider the evidence provided. Accordingly, Plaintiffs have not shown a likelihood of success that the Ordinance is either vague on its face or is being arbitrarily or discriminatorily applied.

Thus, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' request for a preliminary injunction as to the Nighttime RV Ordinance, San Diego Muni. Code § 86.0139(a).

17-cv-2324-AJB-NLS

### IV.    CONCLUSION

The Court **GRANTS** in part and **DENIES** in part Plaintiffs' motion for a preliminary injunction. (Doc. No. 26.) As to San Diego Muni. Code § 86.0139(a), the "Nighttime RV Ordinance," the Court **DENIES** Plaintiffs' request for a preliminary injunction, **WITHOUT PREJUDICE**.

However, as to San Diego Municipal Code § 86.0137(f), the "Vehicle Habitation Ordinance," the Court finds Plaintiffs have shown a likelihood of success that the Ordinance is both vague on its face and is being arbitrarily and discriminatorily applied, resulting in its unlawfulness. Plaintiffs have also shown the other three *Winter* factors weigh in favor of a preliminary injunction.

Thus, the Court **GRANTS** Plaintiffs' request for a preliminary injunction as to San Diego Municipal Code § 86.0137(f) and **ISSUES** the following narrowly tailored **INJUNCTION** in its considerable discretion. *See Church of Holy Light of Queen v. Holder*, 443 F. App'x 302, 303 (9th Cir. 2011) (emphasizing that courts enjoy "considerable discretion in fashioning suitable relief and defining the terms of an injunction[.]") (citation omitted); *see also Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) (holding that "[t]here are limitations on this discretion; an injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled.").

1. The City of San Diego is enjoined from ticketing any person under San Diego Municipal Code § 86.0137(f).

2. The City of San Diego is enjoined from impounding any vehicle on the basis of violating San Diego Municipal Code § 86.0137(f).

3. The City of San Diego is enjoined from the continued prosecution of, or enforcement of, any outstanding tickets issued under San Diego Municipal Code § 86.0137(f).

Within thirty (30) days from the date of this Order, the City of San Diego must be in compliance with this injunction order and file with the Court and serve on Plaintiffs a report

17-cv-2324-AJB-NLS

in writing under oath, setting forth the manner and form in which the City has complied with the injunction order.

**IT IS SO ORDERED.**

Dated:  August 21, 2018

_____
Hon. Anthony J. Battaglia
United States District Judge

16

17-cv-2324-AJB-NLS