UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BLOOM, STEPHEN CHATZKY, TONY DIAZ, VALERIE GRISCHY, PENNY HELMS, BENJAMIN HERNANDEZ, DOUG HIGGINS, SUZONNE KEITH, GERALD STARK, ANNA STARK, and DAVID WILSON, individually and on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO,<br>         Defendant. | Case No.: 3:17-cv-02324-AJB-MSB<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**(Doc. No. 135)** |

Presently before the Court is Plaintiffs' *ex parte* motion for temporary restraining order ("TRO"). (Doc. No. 135.) The City of San Diego ("the City") opposes the *ex parte* motion. For the reasons set forth before, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' *ex parte* motion for a TRO.

**I. BACKGROUND**

This case challenges the City of San Diego's ticketing and impoundment of vehicles used by homeless individuals as shelter. At the time of the filing of the First Amended Complaint, the City had been issuing citations under two City ordinances: (1) its ordinance

prohibiting RV parking from 2:00 a.m. to 6:00 a.m., San Diego Muni. Code § 86.0139(a) ("the nighttime RV parking ordinance"); and (2) its ordinance prohibiting vehicle habitation, San Diego Muni. Code § 86.0137(f) ("the Original VHO"). (First Amended Complaint ("FAC"), Doc. No. 14, ¶ 50, 52.) Plaintiffs alleged both ordinances violated the constitutional and statutory rights of San Diego residents with no other shelter options besides their vehicles, including persons with disabilities who are unable to access housing. (*Id.* ¶ 64, 129.)

On April 30, 2018, Plaintiffs filed a motion for preliminary injunction to enjoin enforcement of both ordinances. (Doc. No. 26.) On August 21, 2018, the Court enjoined enforcement of the Original VHO, but denied Plaintiffs' motion for preliminary injunction as to "the nighttime RV parking ordinance." (Doc. No. 44.) As a result of the preliminary injunction, the San Diego City Council repealed the Original VHO on February 25, 2019. Then, on May 14, 2019, the San Diego City Council enacted a new vehicle habitation ordinance ("the New VHO") in response to concerns about the public health and safety effects of the repeal. (Doc. No. 103.) The New VHO prohibits San Diego residents from parking their vehicles for habitation anywhere in the City between the hours of 9:00 p.m. and 6:00 a.m. except at a handful of designated lots, and from parking within 500 feet of any residence or school at any time. *See* San Diego Muni. Code § 86.0137(f). Plaintiffs allege that similar to its predecessor, the New VHO is unconstitutional and targets Plaintiffs and putative class members who reside in their vehicles due to having no other viable shelter options that meet their needs. (Doc. No. 93-1 at 6.)

## II.   LEGAL STANDARDS

A party seeking a temporary restraining order must establish: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Intern Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In the Ninth Circuit, courts may also issue temporary restraining orders when

there are "serious questions going to the merits" and a "balance of hardships that tips sharply towards the plaintiff" so long as the remaining two *Winter* factors are present. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). When applying either test, courts operate with the understanding that a temporary restraining order, much like a preliminary injunction, is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 690 (2008). Whether to grant or deny a TRO or preliminary injunction is a matter within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132–33 (9th Cir. 1979).

### III. DISCUSSION

Against the backdrop of an unprecedented global pandemic and public health crisis, Plaintiffs seek a TRO enjoining the City from enforcing the nighttime RV parking ordinance and the New VHO. (Doc. No. 135-1 at 10.) Plaintiffs requests the Court enjoin the City from "ticketing, towing, or impounding vehicles not posing an immediate threat to public safety." (*Id.*) Additionally, Plaintiffs asks the Court to order the City to "(a) reopen public parking lots, bathrooms and RV waste disposal stations to people sheltering in vehicles, (b) take sufficient steps to inform the public that bathrooms and waste disposal stations are open and available for use, and (c) to properly maintain those facilities." (*Id.*) The Court addresses each requirement necessary for a TRO to issue below.

#### A. Likelihood of Success on the Merits

##### 1. Plaintiffs' Due Process Claim

First, Plaintiffs argue they are likely to succeed on the merits of their due process claim. Plaintiffs contend that under the Fourteenth Amendment to the United States Constitution, the state deprives a person of a substantive due process right if it "'affirmatively place[s] the plaintiff in a position of danger,' such as depriving individuals of the ability to shield themselves from the dangers of the outdoors, city streets, and, in this instance, from infection of COVID-19." (Doc. No. 135-1 at 19–20 (citing *Wood v. Ostrander*, 879 F.2d 583,589 (9th Cir. 1989).) Liability for substantive due process requires: (1) official state action that affirmatively places an individual in danger; and (2)

deliberate indifference to that danger. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006). Deliberate indifference requires proof of (1) serious risk of harm, (2) defendant's actual knowledge of that risk, and (3) defendant's failure to take obvious steps to address that risk. *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996).

### a) Affirmative Conduct

Plaintiffs first contend that in light of COVID-19, the City's ticketing, towing, and impounding of vehicles constitute "affirmative conduct" that places Plaintiffs in known or obvious dangers. (Doc. No. 135-1 at 20–24.) However, as recognized by Plaintiffs, on April 10, 2020, the San Diego Police Department ("SDPD") issued a directive instructing its officers not to impound vehicles that are being used for habitation during the COVID-19 crisis. (*See* Doc. No. 138-8, Declaration ("Decl.") of Lilys McCoy, Exhibit 2 at 2.) The directive specifically emphasized that officers should instead refer the occupants of the vehicle to the City's "Safe Parking Lot Program," and provide occupants with a phone number to call for assistance regarding the program. (*Id.*) Additionally, the evidence provided by Plaintiffs does not indicate that the City is seeking to actively and aggressively enforce the vehicle habitation ordinances during the COVID-19 crisis, particularly not after SDPD's issuance of the April 10, 2020 directive. As such, Plaintiffs have not demonstrated the level of active enforcement and "affirmative conduct" required for the extraordinary measure of a TRO at this time. *See Koller v. Brown*, 224 F. Supp. 3d 871, 880 (N.D. Cal. 2016) (relying on mere potential of enforcement of statute insufficient for a temporary restraining order and preliminary injunction).

Plaintiffs also argue that the City's closure of parking lots, public restrooms, and RV waste disposal sites constitute additional affirmative action which endangers Plaintiffs and individuals living in their vehicles. (Doc. No. 135-1 at 21.) Plaintiffs seek a mandatory injunction requiring the City to (1) reopen public parking lots, bathrooms and RV waste disposal stations to people sheltering in vehicles, (2) take sufficient steps to inform the public that bathrooms and waste disposal stations are open and available for use, and (3) to properly maintain those facilities." (Doc. No. 135-1 at 10.) But contrary to Plaintiffs'

assertions, the City has not closed all public restrooms during the pandemic, and the City has not stopped maintaining or cleaning its public restrooms. (*See* Doc. No. 138-2, Decl. of Andrew Field.) Additionally, the City has made reasonable accommodations to have the Mission Bay Park grey-water disposal accessible to individuals living in RVs. (*Id.*; Doc. No. 138 at 17.) Finally, with regard to Plaintiffs' request that the City open its public parking lots, the City "is bound by the edicts of the County Department of Health, which has issued a series of health mandates during the COVID-19 health emergency containing a directive that 'all parking lots at public beaches shall be closed.'" (Doc. No. 138 at 16.) Any order issued by this Court to force the City to reopen its beach parking lots would be in direct contravention of the San Diego County's health mandates to prevent the public at large from congregating in recreational areas. Such an order would only work to frustrate the state's purpose of containing COVID-19 and protecting the health and safety of the public. Accordingly, Plaintiffs have not established affirmative conduct in violation of Plaintiffs' substantive due process rights at this time.

### b) Deliberate Indifference

Nor have Plaintiffs demonstrated the City has acted with deliberate indifference. Plaintiffs claim "[t]he City's actions of continued enforcement of the OVO and VHO, and of closing public facilities essential for hygiene, show deliberate indifference toward the increased risks faced by Plaintiffs." (Doc. No. 135-1 at 24.) Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

In the face of the unprecedented health crisis, the City has offered reasonable accommodation to protect the well-being of individuals living in vehicles. For example, "the City funds three centrally located safe parking lots with supportive services such as food assistance, employment development, emergency support, benefits access, and asset building." (Doc. No. 138 at 6.) The City also opened Golden Hall and the Convention Center to allow for physical distancing according to CDC guidelines. (Doc. No. 138 at 7.) The City additionally empowered its safe lot service provider to move its Mission Valley

Safe Lot to the SDCCU Stadium parking lot to increase capacity and social-distancing. (*See* Doc. No. 138-3, Decl. of Sarah Jarman.) Individuals who avail themselves of the safe lots are provided three meals each day, bathrooms, showers, handwashing stations, free face coverings, bags of canned food and non-perishable items, hand-sanitizer, bottled water for each family member, bottled water for pets, daily check-ins to screen for COVID-19 symptoms, support in connecting with healthcare providers, and isolation areas for anyone experiencing Covid-19 symptoms. (Doc. No. 138-7 at 2–3); *see also Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 433 (N.D. Cal. 2017) ("The specific allegations here of state action regarding finding temporary shelter alternatives or moving a substantial portion of the population to a parking lot from public land does not rise to the level required by the stringent standard of deliberate indifference.").

Based on the foregoing, Plaintiffs have not established likely success on their due process claim.

### 2. Plaintiffs' ADA and Section 504 of the Rehabilitation Act Claims

Next, Plaintiffs argue they are likely to succeed on their ADA and Section 504 of the Rehabilitation Act claims. To establish a violation of Title II of the ADA, plaintiffs must show: (i) they are "qualified individuals with a disability"; (ii) they were either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (iii) such exclusion, denial of benefits, or discrimination was by reason of their disability. *Weinreich v. Los Angeles County Metro. Trans. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). A violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794, requires the same showings, plus a showing that the program providing the benefits or services receives federal financial assistance. *Id*. A facially neutral program can violate the ADA and Section 504 if it disparately impacts or places a disproportionate burden on the disabled. *See McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (explaining that the Ninth Circuit has "repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently

enforced.").

Plaintiffs' primary argument is that the City's policies regarding parking enforcement programs and public parks during this pandemic disproportionately burden individuals with disabilities, especially those who are at higher risk of complications and death from COVID-19. (Doc. No. 135-1 at 26.) While not entirely clear, the City appears to counter that safe lots provide a reasonable alternative to Plaintiffs and Plaintiffs have not established that the lots cannot accommodate them. (Doc. No. 138 at 14.) The Court notes that there are some questions regarding whether the City's policies violate the ADA and Section 504. On the one hand, Plaintiffs explain the City's programs disproportionately burdens those with disabilities because of their inability to access the safe parking lots or other congregate shelters. (Doc. No. 135-1 at 27.) Specifically, Plaintiffs state they are particularly vulnerable, and cannot utilize congregate shelters or safe parking lots for fear of contact with other individuals. (*Id.*); *Communities Actively Living Indep. & Free v. City of Los Angeles*, No. CV 09-0287 CBM RZX, 2011 WL 4595993, at *15 (C.D. Cal. Feb. 10, 2011) ("Because of the City's failure to address their unique needs, individuals with disabilities are disproportionately vulnerable to harm in the event of an emergency or disaster."). The City counters that Plaintiffs do not explain how the City has failed to address their needs, and instead only "focus on why the safe lots ***could*** be hazardous, without providing proof that they ***are*** hazardous." (Doc. No. 138 at 14.) But in any event, if the Court were to grant Plaintiffs' request, particularly to reopen the public parking lots, it is also unclear whether the Order would subject Plaintiffs to a similar risk and burden. Thus, against the backdrop of the public health crisis, the Court concludes there are some questions going to the merits of Plaintiffs' ADA and Section 504 claims.

### 3. Plaintiffs' Other Constitutional Claims

Lastly, while Plaintiffs primarily focus on their substantive due process and ADA claims, Plaintiffs briefly argue they are likely to succeed on their claim that the New VHO is unconstitutionally vague. Vagueness may invalidate a law for either of two independent reasons. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citation omitted). First, it may

fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; and second, it may authorize and even encourage arbitrary and discriminatory enforcement. *Id.*

Here, the New VHO proscribes that, "[i]t is unlawful for any person to use a vehicle for human habitation on any street or public property . . . (1) between the hours of 9:00 p.m. and 6:00 a.m.; (2) at any time, within 500 feet of a residence . . . ; and (3) at any time, within 500 feet of a school. . . ." San Diego Muni. Code § 86.0137(f)(1)–(3). The New VHO further states that evidence of human habitation may "include observations, considering all the circumstances," that a person is using a vehicle for:

> [S]leeping; bathing; preparing or cooking meals; possessing or storing items that are not associated with ordinary vehicle use, such as a sleeping bag, bedroll, blanket, sheet, pillow, used bedding, kitchen utensils, cookware, cooking equipment, camping gear, food, water, personal grooming items, or containers of feces or urine. Evidence of human habitation also may include observations, considering all the circumstances, that: a person has obscured some or all of the vehicle's windows; there is litter, rubbish, or waste in or around the vehicle; there is furniture set up in or around the vehicle, such as chairs, tables, umbrellas, or portable cooking equipment; or there is evidence of human urination or defecation around the vehicle.

San Diego Muni. Code § 86.0137(f)(4).

Unlike the Original VHO which the Court enjoined the City from enforcing, the New VHO specifically provides for specific time, place, and manner restrictions. Additionally, the examples of "evidence of human habitation" provides some notice of prohibited conduct. Questions naturally arise, however, as to whether enforcement could potentially be arbitrary or discriminatory. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1156 (9th Cir. 2014) ("If a statute provides 'no standards governing the exercise of . . . discretion,' it becomes 'a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.'"). However, in light of the COVID-19 pandemic, SDPD's directive to not impound vehicles used for habitation, and SDPD's progressive service-based enforcement model, this question may be more appropriately addressed another day.

### B. Irreparable Harm

Finding that there are questions going to the merits of some of Plaintiffs' claims, the Court next addresses whether irreparable injury will arise in the absence of a TRO. A plaintiff seeking a TRO must establish a likelihood of irreparable harm in the absence of preliminary relief. *See Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1242 (9th Cir. 2013). "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Id.* at 21. A court may not rely on "unsupported and conclusory statements regarding harm [a plaintiff] *might* suffer." *Id.* at 19 (internal quotation marks omitted; emphasis in the original). In assessing Plaintiffs' motion, the Court is mindful that the presentation of irreparable harm must be "clear." *Garcia v. Google*, 786 F.3d 733, 746 (9th Cir. 2015). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a [TRO]." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "Issuing a [TRO] based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citation omitted).

In this case, Plaintiffs state "the irreparable harm from the City's continued enforcement of the VHO and OVO is serious illness or death from the increased risk of infection of COVID-19—for all San Diegans." (Doc. No. 135-1 at 17.) The COVID-19 pandemic unquestionably presents serious and unprecedented circumstances, and risk of harm to all. However, in the face of SDPD's directive to not impound vehicles used for habitation, the City's progressive services-based enforcement model, coupled with the alternative safe parking lots and shelter provided by the City, the Court cannot conclude that Plaintiffs have shown a clear showing of irreparable harm absent the requested relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

### C. Balance of Hardships and Public Interest

The balance of equities and public interest factors merge "[w]hen the government is a party." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation

9

omitted). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)). The Court is sympathetic to the difficult situation and hardships Plaintiffs may face during this pandemic. However, the City appears to be taking necessary measures to protect the public, including Plaintiffs, during this public health crisis. The policies and programs related to vehicle habitation and sheltering currently implemented by the City additionally further the goals of safety and public health, which is particularly crucial during these times. Additionally, Plaintiffs' requested relief, particularly reopening public parking lots may actually work against the public's interest in effectively combating COVID-19 by encouraging recreational congregation.

* * *

In summation, while there are questions going to the merits of some of Plaintiffs' claims, Plaintiffs have not carried their burden in demonstrating that the remaining elements for a TRO exist. In particular, the City's reasonable alternative programs during this pandemic, in addition to the lack of evidence of active enforcement demonstrates that a TRO inappropriate at this time.

## IV. CONCLUSION

In light of the City's response to this COVID-19 public health crisis, the Court concludes Plaintiffs have not made "a clear showing" that it is entitled to the "extraordinary remedy" of a TRO at this stage of the proceedings. *Winter*, 555 U.S. at 22. Based on the foregoing, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's *ex parte* motion for a temporary restraining order. Nothing in this order precludes Plaintiffs from renewing their motion, or from filing a motion for preliminary injunction at the appropriate time.

**IT IS SO ORDERED.**

Dated: May 13, 2020

[signature]
Hon. Anthony J. Battaglia
United States District Judge