1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL BLOOM, STEPHEN CHATZKY, TONY DIAZ, VALERIE GRISCHY, PENNY HELMS, BENJAMIN HERNANDEZ, DOUG HIGGINS, SUZONNE KEITH, GERALD STARK, ANNA STARK, and DAVID WILSON, individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CITY OF SAN DIEGO,

Defendant.

Case No.: 3:17-cv-02324-AJB-MSB

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION, (Doc. No. 157); AND**

**(2) GRANTING MOTION TO WITHDRAW NICHOLE MARIE MENDOZA AS COUNSEL OF RECORD, (Doc. No. 179)**

This action challenges Defendant City of San Diego's ("the City") ticketing and impoundment of vehicles used by individuals as shelter. Currently pending before the Court is Plaintiffs' renewed motion for class certification. (Doc. No. 157.) The City opposed the motion. (Doc. No. 163.) And Plaintiffs filed a reply. (Doc. No. 170.) The Court held a hearing on Plaintiffs' motion for class certification on May 6, 2021. (Doc. No. 178.) Also pending before the Court is Plaintiffs' motion to withdraw Nichole Marie Mendoza as counsel of record for Plaintiffs. (Doc. No. 179.) For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for class

1

certification. Plaintiffs' motion to withdraw is also **GRANTED**.

## I.    BACKGROUND

Named Plaintiffs are eleven individuals seeking an order enjoining the City from enforcing its Vehicle Habitation Ordinance ("New VHO") and Oversized Vehicle Ordinance ("OVO") until the City has in place adequate, alternate shelter options for persons inhabiting in their vehicles. (Doc. No. 157-1 at 10.) Plaintiffs also seek a restitution process to compensate class members who paid fines or had vehicles impounded under the City's challenged ordinances. (*Id.*)

The City's OVO, codified at San Diego Municipal Code § 86.0139(a), makes it unlawful "for any person to park or leave standing upon any public street, park road or parking lot, any oversized vehicle, non-motorized vehicle, or recreational vehicle between the hours of 2:00 a.m. and 6:00 a.m." A citation for nighttime recreational vehicle ("RV") parking is punishable by a fine of $100 plus a $12.50 surcharge, and that fine doubles if not paid within 21 days. *See* S.D. Mun. Code § 86.0142.

At the time Plaintiffs filed their original Complaint, the City also enforced an ordinance targeting persons deemed to be living in their vehicles. That ordinance (the "Original VHO") made it unlawful "for any person to use a vehicle while it is parked or standing on any streets as either temporary or permanent living quarters, abode, or place of habitation." S.D. Mun. Code § 86.0137(f). Following the Court's injunction against the enforcement of the Original VHO, (Doc. No. 44), the City enacted a "New VHO," again codified at Section 86.0137(f). The New VHO criminalizes persons using a vehicle as their only form of shelter, making it "unlawful for any person to use a vehicle for human habitation on any street or public property" between 9:00 p.m. and 6:00 a.m., and at any time within 500 feet of a residence or school. Violators of the New VHO may be charged with either an infraction or a misdemeanor and may be arrested. *See* S.D. Mun. Code § 86.0137(f).

Based on these two ordinances, the operative Second Amended Complaint against the City asserts twelve claims for relief for:

2

1. Violation of Substantive Due Process—Void for Vagueness (Fourteenth Amendment; 42 U.S.C. § 1983)
2. Right to Be Secure from Unreasonable Seizures (Fourth Amendment; 42 U.S.C. § 1983)
3. Right To Procedural Due Process of Law (Fourteenth Amendment; 42 U.S.C. § 1983)
4. Violation of Cruel and Unusual Punishment (Eighth and Fourteenth Amendments; 42 U.S.C. § 1983)
5. Violation of Right to Be Free From Excessive Fines (Eighth and Fourteenth Amendments; 42 U.S.C. § 1983)
6. Violation of Substantive Due Process—State Created Danger (Fourteenth Amendment; 42 U.S.C. § 1983)
7. Infringement on the Fundamental Right to Travel—Equal Protection (Fourteenth Amendment; 42 U.S.C. § 1983)
8. Violation of Right to Association (First Amendment; Fourteenth Amendment; 42 U.S.C. § 1983)
9. Violation of California Constitution—Rights to Due Process, Equal Protection, Freedom from Unreasonable Seizure of Property, and Freedom from Excessive Fines (California Constitution Article I, § 7; Article I, § 13; Article I, § 17)
10. Violation of Bane Act (California Civil Code § 52.1)
11. Violation of Americans with Disabilities Act (42 U.S.C. § 12132) (On Behalf of Disability Subclass Members)
12. Violation of § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)

On December 21, 2020, Plaintiffs filed a motion for class certification. (Doc. No. 157.) The motion was opposed by the City. (Doc. No. 162.) On May 6, 2021, the Court heard oral argument on Plaintiffs' motion. (Doc. No. 178.) The matter was submitted, and this order follows.

## II.   LEGAL STANDARD

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Federal Rule of Civil Procedure 23(a) as well as the requirements for certification under one of the subsections of Rule[1] 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members

---

[1] All references to "Rule" is to the Federal Rules of Civil Procedure unless otherwise noted.

is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Plaintiffs must also establish that one of the subsections of Rule 23(b) is met. In the instant matter, Plaintiffs seek to certify a class pursuant to both Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Claims for monetary relief may not be certified under Rule 23(b)(2), at least where the monetary relief is not incidental to the requested injunctive or declaratory relief. Instead, individualized monetary claims belong in Rule 23(b)(3), "with its procedural protections of predominance, superiority, mandatory notice, and the right to opt out." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Under Rule 23(b)(3), Plaintiffs must demonstrate that (1) the questions common to the class predominate over any questions that affect only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). These requirements are commonly known as "predominance" and "superiority."

A plaintiff bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158–61 (1982); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977). The Court must conduct a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 564 U.S. at 350. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.*

//

4

### III.   DISCUSSION

To begin, Plaintiffs move for certification of the two following classes. First, Plaintiffs request certification of a "Main Class" consisting of: "All persons in the City of San Diego who used, use, or will use an RV or other vehicle as their only form of shelter at any time after November 15, 2017." (Doc. No. 157-1 at 8.) Second, Plaintiffs request the Court certify a "Disability Sub-Class" consisting of: "Members who have a 'disability' as defined under the ADA, 42 U.S.C. § 12102, which limits their ability to comply with the City's ordinances that prevent people from using vehicles as shelter and/or which makes them particularly vulnerable to harm from the City's enforcement of the ordinances." (*Id.*)

Plaintiffs seek certification of both classes under Rule 23(b)(2) and Rule 23(b)(3). For each proposed class, the Court will start with whether Plaintiffs meet the requirements of Rule 23(a), followed by an analysis of whether Rules 23(b)(2) and (b)(3) are met as well.

####    A.     The Main Class

#####       1.     Rule 23(a) Requirements

######          a)     Numerosity

The Court begins with the numerosity requirement. Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility'"; rather, the inquiry focuses on the "difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). In determining whether numerosity is satisfied, the court may draw reasonable inferences from the facts before it. *See Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501 (S.D. Cal. 2013). The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members. *See Rannis v. Recchia*, 380 Fed. App'x. 646, 651 (9th Cir. 2010).

First, Plaintiffs argue "the proposed class encompasses a minimum of several

5

hundred individuals whose vehicle is their only form of shelter, this may range to 800 people (or higher)." (Doc. No. 157-1 at 21.) In arriving to this estimate, Plaintiffs highlight the 2017 "Point-in-Time Count,"[2] which identified 817 homeless people living in vehicles in the City. (*Id.*) The 2020 Point-in-Time data, by contrast, estimated that there were 2,283 unsheltered, unhoused individuals in the City, of whom anywhere from 297 to 388 individuals live in vehicles within the City. (*Id.*) Plaintiffs also rely on the data provided by the City, which sets forth the number of contacts made under the New VHO between May 14, and December 12, 2019. In total, 802 contacts were made, including 675 warnings, 111 citations, and 16 arrests. (*Id.*) In opposition, the City briefly argues that the Point-in-Time Count does not reliably estimate the number of individuals actually penalized under the New VHO. (Doc. No. 162 at 11–12.)

At this juncture, the Court need not engage in a precise calculation of how many class members exist in the Main Class. Instead, drawing reasonable inferences from the facts provided—particularly the Point-in-Time data, and statistics showing how many contacts the City has made to enforce the New VHO—the Court is satisfied that the potential class size exceeds at least forty members. *See Rannis*, 380 Fed. App'x. at 651. In any event, the Ninth Circuit has also recently recognized that a single Point-in-Time Count "will undercount the homeless population." *Martin v. Boise*, 920 F.3d 584, 602 (9th Cir. 2019) (internal quotations omitted). "It is 'widely recognized that a one-night point in time count will undercount the homeless population,' as many homeless individuals may have access to temporary housing on a given night, and as weather conditions may affect the number of available volunteers and the number of homeless people staying at shelters or accessing services on the night of the count." *Id.* at 604. Therefore, based on the data

---

[2] The Point-in-Time Count is conducted annually in San Diego County during the last week of January. (Doc. No. 158-1 at 3.) It is a physical count of all people experiencing homelessness who are living in emergency shelters, transitional housing, safe havens, streets, vehicles, encampments or parks on a single night. (*Id.*)

submitted by Plaintiffs, the Court is satisfied that the proposed Main Class is sufficiently numerous for class status.

Furthermore, Plaintiffs have also established the impracticability of joinder. A court should consider "not only the class size but other factors as well, including the geographic diversity of class members, the ability of individual members to institute separate suits, and the nature of the underlying action and the relief sought." *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986). Because of Plaintiffs and the proposed class members' transitory nature and lack of resources, it is unlikely that they will be able to adjudicate their rights by filing separate, individual lawsuits. Identifying and locating the putative class also renders joinder impractical. The City provides no contrary evidence or argument for impracticability of joinder. Given the potential size of the class members, the inability of homeless individuals to institute separate suits, and the potential burden individual suits would place on the judicial system, Plaintiffs have satisfied their burden in showing numerosity and impracticability of joinder.

Based on the foregoing, the Court finds that Plaintiffs have met the numerosity requirement for the proposed Main Class.

### b)   Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The plaintiff's burden for showing commonality is "minimal." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Accordingly, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019.

Plaintiffs identify the following as questions of fact common to the proposed Main Class:

> (1) Whether the City's implementation and enforcement of the VHO and OVO places class members in danger;
>
> (2) Whether the City has other, more reasonable methods for protecting any legitimate government interests it seeks to protect by implementing and enforcing the VHO and OVO; and
>
> (3) Whether the City's available shelters and lots (a) have the capacity to serve ALL class members, and (b) are appropriate in nature to require ALL class members to participate in them to avoid criminalization.

(Doc. No. 157-1 at 24.)

In addition, Plaintiffs propose the follow questions of law common to the proposed Main Class:

> (1) Whether the City's enforcement of the VHO and OVO violate 42 U.S.C. § 1983 by infringing upon Named Plaintiffs' and class members' constitutional rights; and
>
> (2) Whether Named Plaintiffs and class members are entitled to equitable relief, including system-wide policy changes to address the constitutional and statutory violations detailed in the Second Amended Complaint.

(*Id.* at 24–25.)

In arguing against commonality, the City contends the determination of whether the City's ordinances are unconstitutional would require an individualized analysis of each person's experience with the enforcement of the ordinances, preventing the provision of common answers required to certify a class. (Doc. No. 162 at 13.) The City maintains that its posture of individualized education and referral to services undercuts Plaintiffs' commonality argument. (*Id.*) The City is incorrect on this point.

Plaintiffs have satisfied the commonality requirement for the Main Class. Plaintiffs' claims rests upon their challenge of the unconstitutionality of the OVO and New VHO. (Doc. No. 157-1 at 22.) Under the Main Class, all class members are subject to the ordinances as they use their vehicles for their only form of shelter. Whether the City is liable to Plaintiffs will turn on whether the City's implementation of the ordinances violate the United States Constitution. The City contends that "significant proof" of an alleged system-wide practice or policy is required for a finding of commonality in civil rights cases

where the plaintiffs challenge such a practice or policy. (Doc. No. 162 at 12.) The City argues that Plaintiffs fail to present "significant proof" of the alleged system-wide practice and policy. (*Id.*) But under these circumstances, the enactment of the OVO and New VHO, on its own, is sufficient to provide "significant proof" of the system-wide practice of prohibiting individuals from sheltering in their vehicles for class certification purposes. No more evidence is required.

Moreover, although there may be some factual differences as to how the City enforced the ordinances against different individuals, all Main Class members are at the same risk of violating the OVO and New VHO by virtue of their habitation in their vehicles. Resolution of the common question of whether these ordinances are constitutional is likely to yield a common answer to the constitutional issues Plaintiffs have raised on behalf of all Main Class members. Therefore, notwithstanding some inevitable individual questions as to enforcement, the Court concludes that there are enough common questions pertaining to the Main Class for certification. Rule 23(a)(2)'s commonality requirement is, therefore, satisfied. *See Rosas v. Baca*, No. 12 Civ. 428, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) ("In a civil rights suit such as this one . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. Under such circumstances, individual factual differences among class members pose no obstacle to commonality."); *Parsons v. Ryan*, 289 F.R.D. 513, 524 (D. Ariz. 2013), aff'd, 754 F.3d 657 (9th Cir. 2014) ("Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.").

### c)  Typicality

Next, Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted). The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

9

"[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal citations omitted). However, a court should not certify a class if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

Plaintiffs assert they meet the requirements for typicality because they allege the same ongoing injury as members of the Main Class. Like the rest of the class, Named Plaintiffs faced and continue to face the risk of ticketing, loss of shelter due to impoundment of vehicles, and threat of criminal penalties. (Doc. No. 157-1 at 26.) In its opposition, the City argues that because each Plaintiff has different needs and ideas related to relief, Plaintiffs cannot show that all class members share the same injury from the same course of conduct. (Doc. No. 162 at 18.) To demonstrate, the City points out that Plaintiff Hernandez "wants money for RV and housing," while Plaintiff Helms does not "know what [the putative class is] seeking. When [she] started this lawsuit, they said they weren't going for anything except for immediate damages." (*Id.* at 18.).

There is no indication that Named Plaintiffs' claims are atypical of the rest of the Main Class. Indeed, the alleged injuries of the Named Plaintiffs—being subject to liability under the OVO and New VHO—are similar to the injuries of the putative Main Class. The City's argument regarding Plaintiffs' various requested relief does not compel a contrary result. (Doc. No. 162 at 18.) Typicality is not destroyed simply because Plaintiffs seek different relief. "Typicality refers to the nature of the claim or defense of the class representative, and ***not*** to the specific facts from which it arose ***or the relief sought***." *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 159 (N.D. Cal. 2015) (emphasis added). Here, Named Plaintiffs and Main Class members all claim they have been injured by the same allegedly wrongful policies, practices, and conduct of the City. And, they all have similar interests in seeing the Court strike down the ordinances as unconstitutional. As such, the Court finds that typicality has been satisfied for the Main Class.

#### d)      Adequacy

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this requirement, courts within the Ninth Circuit apply a two-part test, asking the questions: (1) does the named plaintiff and his counsel have any conflicts of interest with other class members?; and (2) will the named plaintiff and his counsel prosecute the action vigorously on behalf of the class? *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).

First, Plaintiffs' class counsel is adequate to serve as attorneys to represent Plaintiffs and the Main Class. Plaintiffs have retained as counsel several qualified law firms and organizations: (1) the Disability Rights Advocates, (2) the National Law Center on Homelessness and Poverty, (3) Disability Rights California, (4) Fish & Richardson P.C., (5) the Dreher Law Firm, (6) Bonnett Fairbourn Friedman & Balint P.C., and (7) Manfred, APC. The City does not dispute that Plaintiffs have retained experienced counsel, and nothing in the record suggests that Plaintiffs' counsel are entangled in any conflicts of interest.

As for whether Named Plaintiffs are adequate class representatives, Plaintiffs aver they are adequate "because they have been and remain at risk of being directly affected by the City's ordinances; and their interests are not antagonistic to, nor in conflict with, the interests of the class as a whole." (Doc. No. 157-1 at 28.) The City disagrees and argues that Plaintiffs are not adequate representatives because each Named Plaintiff has "varying objectives for bringing this suit that prevent them from adequately representing the entirety of the proposed class." (Doc. No. 162 at 19.) More specifically, the City points out some representatives wish to remain living in their vehicles, (Wilson Depo., Doc. No. 163-12, at 68:12-13; 95:7-8), while others wish to live in the Safe Parking Lots provided by the City, (Bloom Depo., Doc. No. 163-1, at 124). Lastly, the City posits that some Named Plaintiffs indicated they do not view themselves as representatives of the class or find the ordinances repugnant. In particular, Plaintiff Higgins states that she "didn't decide to sue the City," and did not have a working understanding of the litigation at issue. (*See* Higgins Depo.,

11

Doc. No. 163-8, at 54:14-16; 52). Further, Plaintiff Diaz, in his deposition, stated he believes the OVO ordinance is "fair," because he "[does not] think that motor homes should just be all over the place clogging stuff up. . . ." (Diaz Depo., Doc. No. 163-4, at 54:1-10.)

Here, there are eleven Named Plaintiffs in the Second Amended Complaint: Michael Bloom, Stephen Chatzky, Tony Diaz, Valerie Grischy, Penny Helms, Benjamin Hernandez, Doug Higgins, Suzonne Keith, Gerald Stark, Anna Stark, and David Wilson. There is certainly some concern regarding the adequacy of Plaintiffs Higgins and Diaz. The fact that Plaintiff Diaz does not believe that the OVO is offensive, and that Plaintiff Higgins did not decide to engage in litigation calls into question these Plaintiffs' ability to vigorously prosecute this action on behalf of the class. But aside from Plaintiffs Higgins and Diaz, there is no meaningful debate as to the adequacy of the other Named Plaintiffs. First, the interests of these representatives are clear—challenging the OVO and New VHO on constitutional grounds—and are aligned with the interests of the putative class as a whole. Second, there is nothing to suggest that these Named Plaintiffs have any conflicts of interest with other class members such that class certification raises due process concerns. Third, there is no indication that the Named Plaintiffs lack the incentive to prosecute this action vigorously.

Thus, the Court finds that these representatives are adequate and do not possess any conflicts of interest. However, the Court concludes that Plaintiffs Higgins and Diaz are inadequate to serve in representative capacities.

\* \* \*

In running through all required factors, the Court holds that Plaintiffs have met their burden in establishing that the Main Class satisfies the demands of Rule 23(a). Next, the Court will turn to the remaining requirements under Rule 23(b).

## 2. Rule 23(b)(2) Requirements

"In addition to meeting the conditions imposed by Rule 23(a), the party seeking class certification must also show that the action is appropriate under Rule 23(b)(1), (2) or (3)." *Astiana*, 291 F.R.D. at 503 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614

3:17-cv-02324-AJB-MSB

(1997)). Here, Plaintiffs seek to certify their Main Class under both Rule 23(b)(2) and (b)(3). The Court will begin with whether Plaintiffs have met the mandates of Rule 23(b)(2) before moving on to Rule 23(b)(3).

A class is proper under Rule 23(b)(2) where the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *See* Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011). For classes certified pursuant to Rule 23(b)(2), monetary damages must be "merely incidental to the primary claim" for injunctive relief. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001).

Plaintiffs allege that the Main Class is appropriate for certification under Rule 23(b)(2) because the City's policies and practices impact the class members as a whole. (Doc. No. 157-1 at 30.) Specifically, all class members are subject to the same ordinances at issue. (*Id.*) Plaintiffs also point out that they seek broad declaratory and injunctive relief, namely, a City-wide injunction to prevent enforcement of the City's ordinances. (*Id.*) In arguing that Plaintiffs have not met the Rule 23(b)(2) requirement, the City essentially address the merits of Plaintiffs' claim. The City contends that neither the New VHO nor the OVO targets homeless populations. (Doc. No. 162 at 22.) Instead, the City maintains that the ordinances are necessary functions of the City's obligation to regulate parking and right-of-way for reasons that extend from compliance with state and federal law regarding coastal access and stormwater purity, to the need for street sweeping. (*Id.*)

But today, the Court is not called upon to determine the merits of Plaintiffs' entitlement to injunctive or declaratory relief. "An opposition to a motion for class certification is not the appropriate delivery mechanism for merits-related arguments unless those arguments are pertinent to Rule 23's requirements." *Garris v. City of Los Angeles*, No. CV 17-1452-MWF(EX), 2018 WL 5919214, at *8 (C.D. Cal. Feb. 9, 2018); *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Merits questions

13

may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (citation omitted)). Here, certification under Rule 23(b)(2) is appropriate because Plaintiffs seek a targeted injunction against the enforcement of the New VHO and OVO. Plaintiffs also seek a declaration that the City's the enforcement of the ordinances violates numerous constitutional rights. If Plaintiffs are to succeed on their claims, then any injunction prohibiting the enforcement of the ordinances, or declaration that such ordinances are unlawful would aptly apply to the entire class. At this stage of litigation, Plaintiffs are not required to "prove elements of their substantive case at the class certification stage." *In re High–Tech Empl. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1187 (N.D. Cal. 2013). Conversely, "class certification is not a decision on the merits, and the plaintiffs will only be entitled to injunctive relief if such relief is necessary to redress the . . . violations they actually prove at trial." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019), cert. denied sub nom. *Faust v. B. K. By Tinsley*, 140 S. Ct. 2509 (2020). Therefore, at this time, argument regarding the merits is to be left to another day, and certification under Rule 23(b)(2) is appropriate for the Main Class.

### 3.   Rule 23(b)(3) Requirements

Next, Plaintiffs also request certification of the Main Class under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate only where the plaintiff establishes that (1) issues common to the class predominate over issues affecting individual class members; and (2) the class action device is superior to other methods available for adjudicating the dispute. *See* Fed. R. Civ. P. 23(b)(3). These requirements are commonly known as "predominance" and "superiority."

### a)   Predominance

The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods., Inc.*, 521 U.S. at 623–24. If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on

14

a representative rather than on an individual basis," and the predominance test is satisfied. *Hanlon*, 150 F.3d at 1022. "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, [however,] a Rule 23(b)(3) action would be inappropriate." *Zinser*, 253 F.3d at 1190. This is because, inter alia, "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *Id.* "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "Where the issues of a case 'require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate.'" Cas*ida v. Sears Holdings Corp.*, No. 1:11–cv–01052 AWI JLT, 2012 WL 3260423, at *7 (E.D. Cal. Aug. 8, 2012) (quoting *Zinser*, 253 F.3d at 1189).

Plaintiffs briefly argue that predominance is met because "the City's liability for enforcing the ordinances in violation of Plaintiffs' constitutional and statutory rights can be determined in a single adjudication." (Doc. No. 157-1 at 30.) The City does not meaningfully mount a defense in their opposition brief to Plaintiffs' request for certification of a Rule 23(b)(3) class, but clarified at the May 6, 2021 hearing that they opposed all attempts at certification of a Rule 23(b)(3) class.

The Court first notes that Plaintiffs seek restitution in this class action. Plaintiffs seek a process through which persons who have been fined and/or had their vehicles impounded as a result of OVO or New VHO enforcement can request reimbursement/restitution for fines paid and lost vehicles. (*Id.*) But with this request, there is a concern that a restitution process would necessarily require individualized assessments for each class member. For example, the San Diego Police Department ("SDPD") has also adopted a posture of education and referral to services, rather than aggressive enforcement. (Doc. No. 162 at 13.) Particularly, the SDPD has begun a pilot diversion program with "no limit on the number of times a person could use the diversion program to avoid ticketing and receive help from the JFS ["Jewish Family Service of San Diego").". (*See* Wahl Depo., Doc. No.

15

163-30, at 178:22-179:16; 181:21-23.) Therefore, before awarding restitution, a personalized process would need to occur to determine whether individuals were in fact fined, whether their vehicles were impounded, or rather if they simply received a warning. Additionally, the City's Treasurer's Office and City Attorney's Office partnered with the San Diego County Public Defender to expand the City's Clean License Plates Program and low-income payment program for parking tickets to provide additional options to homeless individuals. (*Id.*) Individual-specific questions as to (1) how much of a ticket was paid, (2) how many tickets were issued, (3) how many tickets remain unpaid, (4) what public assistance was used, if any, would overwhelm any common questions in a Rule 23(b)(3) class. Further, in the case of when a vehicle was impounded, individual questions would arise as to the exact location of the vehicle, the value of each vehicle, and reasons why such vehicle was impounded—whether it was for violation of the ordinances at issue, or other unrelated reasons. Thus, these fact-intensive issues cut against Plaintiffs' assertion that common questions predominant over individual questions.

Because Plaintiffs' request for restitution would require individualized adjudication of each class member's claim, the predominance requirement is not met.

### b)   Superiority

Lastly, superiority requires consideration of the following: (1) the interest of individuals within the class in controlling their own litigation; (2) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (3) the convenience and desirability of concentrating the litigation in the particular forum; and (4) the manageability of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D); *Amchem Prods., Inc.*, 521 U.S. at 615–16.

Given Plaintiffs' lack of resources, class members are unlikely to institute separate individual lawsuits. Individuals using their vehicles as their primary residences are also typically unfamiliar with the federal court system and lack the knowledge and ability to pursue individual separate lawsuits. However, as explained above, because restitution claims would necessarily require deeply personalized analyses tailored to each class

16

member, the Court is not convinced that a class action is the superior method of resolving Plaintiffs' restitution claims.

* * *

In summation, while the Court grants certification as to Plaintiffs' Rule 23(b)(2) Main Class, certification under Rule 23(b)(3) for Plaintiffs' restitution claim is not appropriate.

### 4. Whether the Main Class Definition Is Overbroad or Ascertainable

Having determined that certification of a Rule 23(b)(2) Main Class is proper, the Court will address whether the Main Class definition is overbroad or sufficiently defined. While not delineated in Rule 23, courts have generally required a party seeking class certification to demonstrate that the putative class is ascertainable. *See McCrary v. Elations Co.*, No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243, at *3 (C.D. Cal. Jan. 13, 2014). A class is ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria. *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012) (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)). But importantly, courts in the Ninth Circuit have held that the ascertainability element does not apply to Rule 23(b)(2) classes. *See In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015) (distinguishing (b)(2) actions from (b)(3) actions in finding that ascertainability was not required under the former); *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *12 (C.D. Cal. Feb. 26, 2018) (same).

Furthermore, "[a]n adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)); *see also Holman v. Experian Info. Solutions, Inc.*, No. C 11–0180 CW, 2012 WL 1496203, at *8 ("District courts are permitted to limit or modify class definitions to provide the necessary

17

precision.") (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir.2004)).

First, the City argues that the proposed class definition for the Main Class is not ascertainable because Plaintiffs cannot agree on a clear definition of who is a "homeless individual" for purposes of class certification. (Doc. No. 162 at 9.) Second, the City argues Plaintiffs' proposed Main Class definition includes a subjective element that prevents an objective identification of potential class members. (*Id.* at 11.) However, as stated, courts in the Ninth Circuit have held that ascertainability is not a prerequisite to class certification for Rule 23(b)(2) injunctive relief classes. *See Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 512 (N.D. Cal. 2017). As such, the City's concern is not an impediment to certification of the Main Class.

Second, the City contends that the proposed Main Class is overbroad because Plaintiffs' class definition does not limit class members to a geographical area, and potentially includes individuals who travel through, or plan to travel through, San Diego from other cities and states. (Doc. No. 162 at 10.) As presently written, the Main Class is defined as "[a]ll persons in the City of San Diego who used, use, or will use an RV or other vehicle as their only form of shelter at any time after November 15, 2017." Plaintiffs respond that "individuals who only have their vehicles for shelter and only spend part of the time in San Diego are also properly part of the class" as they too are subject to the City's ordinances. (Doc. No. 170 at 6.) The Court finds that the proposed Main Class, as currently conceived, is overbroad. The definition proposed by Plaintiffs would cover anyone who is simply driving through the City of San Diego, in a vehicle, on vacation, even if they own another residence in another city or state. Notwithstanding the overbreadth, district courts have the inherent power to modify overbroad class definitions. *See Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009) (citing *Hagen v. City of Winnemucca*, 108 F.R.D. 61, 64 (D. Nev. 1985)); *see also Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("[D]istrict courts have broad discretion to modify class definitions"); *Schorsch v. Hewlett–Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) (noting that "[l]itigants and judges regularly modify class definitions").

Using this discretion, the Court modifies the Main Class definition by adding the term "anywhere": "[a]ll persons in the City of San Diego who used, use, or will use an RV or other vehicle as their only form of shelter, ***anywhere***, at any time after November 15, 2017." The inclusion of "anywhere" will alleviate concerns about the overinclusive nature of Plaintiffs' original proposed Main Class definition. This modification is to clarify that individuals traveling through the City of San Diego, on vacation, with other forms of shelter somewhere else, are not included in the Main Class.

Based on the foregoing, the Court **GRANTS** Plaintiffs' motion for certification of the Rule 23(b)(2) Main Class.

## B.   Disability Sub-Class

Having found that Plaintiffs' Rule 23(b)(2) injunctive/declaratory relief Main Class appropriate for class certification, the Court will proceed to analyze whether Plaintiffs' proposed Disability Sub-Class is likewise proper for certification. As explained in detail below, the Court concludes it is not.

### 1.   Rule 23(a) Requirements

#### a)   Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Plaintiffs estimate that between 172 to 480 individuals fall into the Disability Sub-Class. (Doc. No. 157-1 at 21.) These figures are again calculated from the 2020 Point-in-Time Count, which reports that 58% of unhoused people in San Diego County have a disability. (*Id.*) In responding to these claims, the City cursorily argues that the Point-in-Time Count does not reliably estimate the number of individuals actually penalized under the New VHO or OVO. (Doc. No. 162 at 11–12.) However, like with the Main Class, precision is not demanded for a numerosity analysis at this point. Drawing reasonable inferences from the Point-in-Time data, the Court is satisfied that the potential class size is suitable for class certification consideration, with at least one hundred disabled individuals using their vehicles as their primary residence. *See Rannis*, 380 Fed. App'x. at 651.

19

### b)   Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality can be established if Plaintiffs demonstrate they and the proposed class members "'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Falcon*, 457 U.S. at 157). This can be done if Plaintiffs raise a "common contention" between them and the proposed class members of "such a nature that it is capable of classwide resolution." *Id.* at 350. A contention is capable of classwide resolution if determining its truth or falsity resolves "an issue that is central to the validity of each one of the claims in one stroke." *Id.* Consequently, "what matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

In support of their contention that commonality exists for their Disability Sub-Class, Plaintiffs identify the following question of fact common to the proposed Disability Sub-Class: "Whether the City's ordinances and City-wide enforcement guidance place a disproportionate burden on class members with disabilities who are unable to use available shelter and/or housing options and/or City's lots." (Doc. No. 157-1 at 24.) In addition, Plaintiffs propose the follow question of law common to the proposed Disability Sub-Class: "Whether the City's failure to offer a process for reasonably addressing the needs of class members with disabilities who are disproportionately burdened by the City's enforcement of the VHO and OVO discriminates on the basis of disability and violates the ADA." (*Id.* at 24–25.) In opposition, the City argues that few of the Named Plaintiffs can provide any evidence that they sought and were denied reasonable modifications as a result of their disability. (Doc. No. 162 at 14.) For the City, this determination is one that can only be made on a case-by-case basis, comparing the individual's disability with the modification requested. (*Id.*)

To succeed on Plaintiffs' ADA claim as a class, Plaintiffs would have to establish that the New VHO and OVO violates Title II of the ADA. Title II of the ADA provides

20

that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This analysis would require Plaintiffs prove (1) they are qualified individuals with a disability, and (2) they were excluded from participation in or denied benefits of the program because of their disability. Moreover, Title II imposes upon public entities a "duty to accommodate" disabled persons. *Cohen v. City of Culver City*, 754 F.3d 690, 700 (9th Cir. 2014). Even facially neutral government actions that apply equally to disabled and nondisabled persons may violate Title II if the public entity has failed to make reasonable accommodations to avoid unduly burdening disabled persons. *Id.*

While the fact that certain Plaintiffs have different disabilities would not necessarily preclude a finding of commonality, the individualized exercise needed to determine whether each Plaintiff was denied the benefit of public parking or denied reasonable accommodation does. Whether Plaintiffs were denied public parking ***because*** of their disability would require a factual analysis in each particular case. And, whether the City denied reasonable accommodation to Plaintiffs is not a contention capable of classwide resolution because, as discovery reveals, many class members seek widely varied accommodation. For instance, while the City provides accommodation for individuals living in their vehicles through their Safe Parking Lots program, Plaintiffs offer various reasons why they cannot avail themselves of the Safe Parking Lots. (Doc. No. 162 at 15.) Some class members require parking spaces close to family members, while others require that the parking spaces be distanced from noise and other people. (*Id.*) These differences in each individual case does not give way to common contentions capable of classwide resolution.

Accordingly, commonality is not met for Plaintiffs' proposed Disability Sub-Class.

### c)    Typicality

Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class

members." *Falcon*, 457 U.S. at 156 (quoting *Rodriguez*, 431 U.S. at 403) (internal quotation marks omitted). As stated by the Supreme Court, "the commonality and typicality requirements of Rule 23(a) tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349. The Ninth Circuit has also explained that in cases challenging policies or practices, "the underlying issue presented with respect to typicality is similar to that presented with respect to commonality," and although the injuries of the class representatives need not be identical to those of the proposed class members, their injuries must result from the same, injurious course of conduct. *Parsons v. Ryan,* 754 F.3d 657, 685 (9th Cir. 2014).

Plaintiffs maintain that like the members of the putative Disability Sub-Class, they have disability-related needs that make it unreasonably difficult to access existing housing, shelter, and parking options. (Doc. No. 157-1 at 27.) The City takes the position that Plaintiffs all have different personal, social, psychological, physical, and emotional needs, and thus, Plaintiffs do not share the same injury from the same course of conduct. (Doc. No. 162 at 18.)

Typicality is not met for many of the same reasons Plaintiffs fail to establish commonality. As explained for the commonality element, Plaintiffs' ADA claims in the context of the City's ordinances and alternative Safe Parking Lot program would not benefit from classwide resolution. Although Plaintiffs claim they and the proposed class have similar disability-related needs that make it challenging to access existing housing and parking options, Plaintiffs have failed to demonstrate their risk of injury and the proposed class's risk of injury derives from the same, injurious course of conduct. For one, whether Plaintiffs were denied reasonable accommodation for their disabilities, or whether such reasonable accommodation was requested in the first instance, requires an analysis that would differ for each class representative and the larger putative class. Secondly, many

of the named Plaintiffs have differing views as to why the City's parking programs, including the Safe Parking Lot program, do not provide reasonable accommodation. For example, Plaintiff Keith believes that the Safe Parking Lots do not offer adequate privacy, while Plaintiff Wilson does not wish to be in close proximity to noise and people. (Wilson Depo., Doc. No. 163-12, at 3; Keith Depo., Doc. No. 163-9, at 53:7.) Plaintiff Higgins believes the Safe Lots are located too far away from the beach, (Higgins Depo., Doc. No. 163-8, at 75:15–76:10), while Plaintiff Diaz has never attempted to visit the Safe Parking Lots, (Diaz Depo., Doc. No. 163-4, at 35–36).

In short, Plaintiffs fail to establish that the injury they allege is the same, or similar, to any injury which the proposed class members may be exposed to. Plaintiffs thus fail to satisfy Rule 23(a)(3)'s typicality requirement for their Disability Sub-Class.

### d)      Adequacy

A class action will only be certified if Plaintiffs can demonstrate "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate where: (1) the class representative and their counsel do not have conflicts of interest with other class members; and (2) the class representatives and their counsel will "prosecute the action vigorously on behalf of the class." Although the City does not challenge the adequacy of Plaintiffs' class counsel, the City challenges the adequacy of the class representatives. Here, because Plaintiffs fail to establish commonality and typicality, the Court also finds Plaintiffs fail to demonstrate they are adequate representatives. *See Amchem Prods., Inc.*, 521 U.S. at 625–26 n.20 ("The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'").

Plaintiffs' inability to establish commonality and typicality for the Disability Sub-Class directs the Court to this conclusion because, having failed to show that each Plaintiffs suffered similar injuries with respect to the denial of reasonable accommodation, Plaintiffs

cannot seek to represent a Disability Sub-Class class that it has not demonstrated it shares common questions with. Nor can Plaintiffs serve as adequate representatives considering they fail to establish their claims are typical.

### 2.    Rule 23(b) Requirements

In light of Plaintiffs' failure to meet the demands of Rule 23(a), the Court need not engage in a Rule 23(b) analysis to conclude that certification of Plaintiffs' Disability Sub-Class would be improper. However, the Court will nevertheless briefly address the Rule 23(b) requirements. Even if Plaintiffs were able to demonstrate they meet the Rule 23(a) elements, the Court concludes that the Disability Sub-Class would not be suitable for certification under Rule 23(b).

First, a Rule 23(b)(2) Disability Sub-Class would be inappropriate. Rule 23(b)(2) requires Plaintiffs to demonstrate "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. Plaintiffs seek an injunction which would provide a process to address the needs of disabled class members. (Doc. No. 157-1 at 30.) In opposition, the City argues that it is in compliance with the ADA, and points to its ADA Office, its designated ADA coordinator, its complaint process for ADA grievances, and its appeal process. (Doc. No. 162 at 26.) Through these processes, the City states that it is available to engage in an interactive process with individualized analysis in response to any and all requests for reasonable modifications to any of its programs or service. (*Id.*)

The Court concludes that a Rule 23(b)(2) class would not be a workable vehicle to address the highly individualized needs of each disabled class member. Any injunctive relief would necessarily need to account for each class member's disabilities, and what would constitute reasonable accommodation for each class member. A broad and vague

3:17-cv-02324-AJB-MSB

injunction for a process to do so is insufficient to establish that a Rule 23(b)(2) class is appropriate.

Second, Plaintiffs' proposed Rule 23(b)(3) Disability Sub-Class fares no better. Certification under Rule 23(b)(3) is appropriate only where the plaintiff establishes that (1) issues common to the class predominate over issues affecting individual class members; and (2) the class action device is superior to other methods available for adjudicating the dispute. *See* Fed. R. Civ. P. 23(b)(3). The first "predominance" prong is not met here because as already explained, a determination of the City's liability as to the Disability Sub-Class would turn on an individualized analysis of whether class members had indeed faced discrimination as a result of being denied parking or housing accommodation. The inquiry would require a close look at each individual class member, their disabilities, what accommodation would be required, and whether they were denied this accommodation if it was requested. These individual issues would overwhelm and predominate over any common questions, destroying predominance. Because Plaintiffs' proposed Disability Sub-Class fails the predominance element, the Court cannot conclude that a class action is the superior means of litigating Plaintiffs' claims.

For all these reasons, the Court **DENIES** Plaintiffs' motion to certify their Disability Sub-Class. This denial, of course, does not eliminate or hinder Plaintiffs' ability to pursue their claims pursuant to the Main Rule 23(b)(2) class.

## IV.   CONCLUSION

For the foregoing reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for class certification of the Main Class and Disability Sub-Class. The motion to certify the Rule 23(b)(3) Main Class and Disability Sub-Class is **DENIED**. However, the Court **GRANTS** Plaintiffs' motion as to the Rule 23(b)(2) Main Class. The following class definition will apply:

> All persons in the City of San Diego who used, use, or will use an RV or other vehicle as their only form of shelter, anywhere, at any time, after November 15, 2017.

3:17-cv-02324-AJB-MSB

By **June 14, 2021**, the parties are ordered to contact Magistrate Judge Daniel Butcher's chambers for further scheduling of this case.

Finally, the motion for withdrawal of Nichole Marie Mendoza as counsel of record is also **GRANTED**. The Clerk of Court is **DIRECTED** to terminate the delivery of all Notices of Electronic Filing addressed to Nichole.Mendoza@disabilityrightsca.org.

**IT IS SO ORDERED.**

Dated:  June 7, 2021

Hon. Anthony J. Battaglia
United States District Judge

3:17-cv-02324-AJB-MSB