UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BLOOM, STEPHEN CHATZKY, TONY DIAZ, VALERIE GRISCHY, PENNY HELMS, BENJAMIN HERNANDEZ, DOUG HIGGINS, SUZONNE KEITH, GERALD STARK, ANNA STARK, and DAVID WILSON, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>Defendant. | Case No.: 17-cv-02324-AJB-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**(2) DIRECTING NOTICE TO THE CLASS; and**<br><br>**(3) SETTING DATE FOR FAIRNESS HEARING**<br><br>**(Doc. No. 329)** |

Presently before the Court is the parties' joint motion for preliminary approval of class action settlement. (Doc. No. 329.) Defendant City of San Diego (the "City") has filed a notice of non-opposition. (Doc. No. 332.) The Court finds the matters suitable for decision on the papers and without oral argument, pursuant to Local Civil Rule 7.1.d.1. Accordingly, the Court hereby **VACATES** the hearing currently set for **May 9, 2024, at 2:00 p.m.** For the reasons stated herein, the Court **GRANTS** the joint motion.

///

1

## I. BACKGROUND

On November 15, 2017, Plaintiffs filed a class action complaint against the City, alleging violations of the constitutional and statutory rights of San Diego residents, including those with disabilities who rely on their vehicles for shelter and cannot access alternative housing. (Doc. No. 1.) In the operative complaint, Plaintiffs allege claims on behalf of themselves and on behalf of those similarly situated for violations of: (1) substantive due process under the Fourteenth Amendment under the void for vagueness doctrine; (2) the right to be secure from unreasonable seizures under the Fourth Amendment; (3) the right to procedural due process under the Fourteenth Amendment; (4) cruel and unusual punishment under the Eighth and Fourteenth Amendments; (5) the right to be free from excessive fines under the Eighth and Fourteenth Amendments; (6) substantive due process under the Fourteenth Amendment under the state created danger doctrine; (7) infringement on the right to travel under the Equal Protection Clause of the Fourteenth Amendment; (8) the right to association under the First and Fourteenth Amendments; (9) the California Constitution's rights to due process, equal protection, freedom from unreasonable seizure of property, and freedom from excessive fines; (10) the Bane Act, Cal. Civ. Code § 52.1; (11) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and (12) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (*See generally* Second Amended Complaint ("SAC"), Doc. No. 137.) The SAC specifically challenges two of the City of San Diego's ordinances: one prohibiting recreational vehicle ("RV") parking from 2:00 a.m. to 6:00 a.m. ("Oversized Vehicle Ordinance" or "OVO"), and another prohibiting vehicle human habitation in most areas of San Diego any time of the day or night ("New VHO"). (*Id.* ¶¶ 61, 63.)

The initial complaint, (Doc. No. 1), was filed after Plaintiffs submitted written reasonable accommodation requests to the City to resolve these issues prior to engaging in litigation. (Doc. No. 329 at 11–12.) A first amended complaint was filed on February 14, 2018. (Doc. No. 14.) The City thereafter filed a motion to dismiss, (Doc. No. 15), which was denied by the Court on June 8, 2018, (Doc. No. 36). On April 30, 2018, Plaintiffs filed

a motion for preliminary injunction, seeking to cease enforcement of the then-operative Vehicle Habitation Ordinance ("Original VHO") and to prohibit ticketing and impoundment of any vehicle used for human habitation, (Doc. No. 26), which was granted in part and denied in part, (Doc. No. 44). The City repealed the Original VHO on February 15, 2019, and subsequently approved the New VHO. (Doc. No. 329 at 12.) On May 1, 2020, Plaintiffs filed the SAC, and the City filed its Answer on May 26, 2020.

On June 8, 2021, the Court granted in part Plaintiffs' renewed motion for class certification and certified a Rule 23(b)(2) Class defined as "[a]ll persons in the City of San Diego who used, use, or will use an RV or other vehicle as their only form of shelter, anywhere, at any time, after November 15, 2017." (Doc. No. 180 at 25.)

Between May 9, 2017 and October 2023, the parties participated in approximately twenty-four settlement conferences and informal discussions with the Honorable Magistrate Judges Nita Stormes and Michael Berg, in addition to private mediation before the Honorable Carla M. Woehrle (Ret.), all of which were unsuccessful. (Doc. No. 329 at 13.) In January 2022, the Honorable Magistrate Judge Daniel Butcher began negotiations with the parties, and the parties eventually reached a complete settlement on all substantive issues on March 29, 2023, pending final approval by City Council. (*Id.*) On May 5, 2023, the parties reached an agreement on reasonable attorneys' fees. (*Id.*)

After a hiccup in the settlement agreement terms, the parties returned to negotiations with Judge Butcher, and a second agreement was finalized in August 2023. (*Id.*) On October 30, 2023, the City Council voted to approve the settlement in closed session, and in January 2024, voted to approve the settlement in open session. (*Id.*) The Mayor did not veto the action of the City Council within the ten-day period allotted to him. (*Id.*)

## II.   SETTLEMENT AGREEMENT

Plaintiffs and the City have executed a proposed Settlement Agreement ("Settlement Agreement" or "Settlement"). The primary terms of Settlement are provided below:

   A. <u>Substantive Relief</u>:
        1. <u>Ticket Forgiveness</u>: The City of San Diego will forgive all outstanding OVO

tickets incurred by class members for parking oversized vehicles between 2:00 a.m. and 6:00 a.m., and tickets for "violation of signs" prohibiting vehicle habitation between November 15, 2017, and the date of the Settlement. The City, if feasible, will promptly forgive the class members' unpaid parking tickets and other debts related to unpaid parking tickets upon request. The City will inform the Department of Motor Vehicles that the fines are null and void.

2. <u>Amended VHO Training Bulletin and Limitations on VHO Enforcement</u>: The City will issue an amended VHO training bulletin for law enforcement. The amendments to the training bulletin are intended to avoid VHO enforcement for sheltering in, resting in, sleeping in, and/or storing property in vehicles while being otherwise law-abiding, *i.e.*, without committing a criminal law violation other than the VHO. Enforcement of the VHO will only occur if the police determine reasonable suspicion of a crime or violation of a law *other than* residing in one's vehicle. A class member parked illegally will have an opportunity to move the vehicle to a legal parking location before they can be cited under the VHO. In addition, people who live in their vehicle may use the same vehicle for transportation without being cited under the VHO, such as traveling and temporarily parking to visit parks, beaches, shops, libraries, go to the doctor, attend school, work, or religious services, or to visit family or friends.

3. <u>Safe Parking Program</u>: This Settlement expands and improves the City's designated parking program ("safe lots"). Additional options for legal nighttime parking will be provided in various locations throughout the City. The City will update a list of available spots in the parking program on its website nightly, including indicating if the spaces are suitable for oversized vehicles. Each parking lot in the City's program will have safe, accessible bathrooms, security and/or personnel on-site. The City will also make improvements to the Mission Valley Safe Lot in order to enhance the health

and safety for residents of oversized vehicles (*e.g.*, widening the entrance to the lot and adding running water, showers, electric hookups, improved lighting, and shade). Class members may have a second vehicle at the Mission Valley Safe Lot. Mission Valley Safe Lot will continue to operate on a 24-hour basis during the three-year period of the Settlement.

4. <u>Nighttime Enforcement When Safe Lot Options Are Unavailable</u>: The City will not enforce by arrest, citation, or ticket the VHO or OVO during the hours of 9:00 p.m. to 6:00 a.m. when legal parking under the City's designated parking lot program is unavailable to a class member because the lots are full, closed, or there is no spot reasonably available to the class member, considering, among other factors, the type of vehicle, the distance to the lot, and whether there is adequate space for the vehicle. Members of the Settlement Class will be provided an opportunity to relocate to an available space in a "safe lot" before enforcement or issuing of tickets or citations to the class member under the VHO or OVO may occur.

5. <u>Consideration of ADA-Related Requests for Class Members with Disabilities</u>: In compliance with Title II of the ADA, the City agrees to evaluate all requests for reasonable modifications from Plaintiffs and class members in good faith but retains the right to refrain from actions that would fundamentally change the nature of its programs or services or impose an undue financial or administrative burden.

B. **<u>Enforcement and Monitoring</u>**: Under the Settlement, the Court shall have jurisdiction to enforce the terms of the settlement agreement for three years. During this period, the City will provide Plaintiffs' counsel every three months with available records of: (i) enforcement of the VHO, including records of grounds for reasonable suspicion of criminal activity; (ii) enforcement of the OVO; (iii) ticket forgiveness; and (iv) reasonable accommodation/modification requests and responses regarding enforcement of the VHO and/or the OVO.

C. **Dispute Resolution**: The parties have agreed to a multi-step process to resolve disputes. First, any party notified of a dispute through a written Notice of Dispute has 45 days to cure or identify a plan to cure any non-compliance. Second, if the alleging party maintains that the violation or failure to perform has not been cured within 45 days, the alleging party can petition Judge Butcher for resolution of systemic issues. In the case of systemic violations, Judge Butcher has the authority to extend jurisdiction and prescribe suitable remedies.

D. **Released and Unreleased Claims**: The members of the Settlement Class will release the City and its relevant departments from all claims for equitable relief relating to the allegations in the operative Complaint up through the three-year settlement term. The Named Plaintiffs will also release their claims for monetary damages, but the release does not apply to claims for monetary damages by other class members.

E. **Damages and Service Awards**:

1. The City will pay Fifteen Thousand Dollars ($15,000.00) in monetary damages to each of the nine current Plaintiffs. This award of monetary damages does not extinguish or otherwise disturb any claim for monetary damages that other members of the class may have against the City.

2. In addition to the individual monetary damages to current Plaintiffs, the seven class representatives will each receive a Service Award of $7,500.00.

F. **Reasonable Attorneys' Fees, Costs, and Expenses**.

1. The City will pay Plaintiffs' counsel $2,950,000 in attorneys' fees and costs for work through final approval of the Agreement. The City also agrees to pay reasonable attorneys' fees and costs in an amount not to exceed $25,000 to monitor the Settlement. Class Counsel will file a motion to recover their reasonable attorneys' fees, costs, and expenses pursuant to Federal Rule of Civil Procedure 23(h).

(*See* Ex. 1, Doc. No. 329-2, Proposed Settlement Agreement.)

## III.  LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the Court must first assess whether a class exists.[1] *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rule 23(e)(1) requires the court to take certain steps to ensure proper administration of the settlement, including "direct[ing] notice in a reasonable manner to all class members who would be bound by the proposal."

"[P]reliminary approval and notice of the settlement terms to the proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with [sic] the range of possible approval . . . .'" *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZx), 2013 WL 169895, *2 (C.D. Cal. Jan. 16, 2013) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation and citation omitted)) and (citing *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("[t]o determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance

---

[1] As noted above, the Court granted in part Plaintiffs' renewed motion for class certification and certified a Rule 23(b)(2) Class defined as "[a]ll persons in the City of San Diego who used, use, or will use an RV or other vehicle as their only form of shelter, anywhere, at any time, after November 15, 2017." (Doc. No. 180 at 25.)

to object and/or opt out.")).

## IV. MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

### A. A Product of Serious, Informed, Non-Collusive Negotiations

Federal Rule of Civil Procedure 23(e) requires a district court to determine whether a proposed class action settlement is fundamentally fair, adequate, and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026; *see also Officers for Justice v. Civil Service Comm'n of the City and Cnty. of S.F.*, 688 F.2d 615, 630 (9th Cir. 1982) (holding a settlement must stand or fall in its entirety because a district court cannot "delete, modify or substitute certain provisions"). A court must assess several factors to determine the overall fairness of a proposed class action settlement:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.

Plaintiffs and Class Counsel have adequately represented the Class as required by Rule 23(e)(2)(A). Plaintiffs and Class Counsel have demonstrated their ability to vigorously prosecute this action on behalf of the Class through conducting significant law-and-motion practice. The facts and the parties' respective legal positions have been extensively briefed in this Court. Class Counsel extensively investigated Plaintiffs' claims and the City's defenses, and negotiated an exchange of information sufficient to enable them to fully evaluate the strengths and weaknesses of the claims and defenses raised by both sides. For example, Plaintiffs' Counsel overcame the City's motion to dismiss, and obtained relief in the form of the Court's granting in part Plaintiffs' Motion for Injunctive Relief from the Original VHO. (Doc. No. 329 at 21); *see In re Wireless Facilities, Inc.*

*Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

Second, that the settlement was reached with the assistance of an experienced mediator further suggests that the settlement is fair and reasonable. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) (noting that discovery and the use of a mediator "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement" (citation omitted)). Between May 9, 2017, and October 2023, the parties participated in approximately twenty-four settlement conferences and informal discussions with Judges Stormes and Berg, in addition to private mediation before Judge Woehrle (Ret.). In August 2023, the parties were able to reach a finalized agreement with Judge Butcher. The agreement has been reduced to writing and executed as of February 9, 2024. (*See* Ex. 1.)

Third, courts generally afford great weight to the recommendation of counsel with respect to settlement because counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, counsel found the strengths and risks of the case support the compromises reached by both sides. Given Plaintiffs' counsel's experience with similar class action litigation, the Court finds that affording deference to their decision to settle the case, as well as the terms of that settlement, is appropriate.

Taken together, these facts support finding the settlement to be fair, reasonable, and adequate.

**B.  The Proposal Was Negotiated at Arm's Length**

In reviewing the next Rule 23(e) factor, the Court must examine the Settlement for additional indicia of collusion that would undermine a prima facie arm's length negotiation. Signs of collusion may include (a) disproportionate distributions of settlement funds to counsel; (b) negotiation of attorney's fees separate from the class fund (a "clear sailing" provision); or (c) an arrangement for funds not awarded to revert to the defendants. *See*

*Staton*, 327 F.3d at 965. If multiple indicia of implicit collusion are present, the district court has a heightened obligation to assure that fees are not unreasonably high. *Id.*

Based on the intensive settlement process, the Court finds the Settlement was negotiated at arm's length and there is no evidence of collusion. That the Settlement was reached with the assistance of the magistrate judge further suggests that the settlement is fair and reasonable. *See Bellinghausen*, 303 F.R.D. at 620. As discussed above, the parties attended numerous settlement conferences with Judges Stormes and Berg, in addition to private mediation before Judge Woehrle (Ret.), between May 9, 2017, and October 2023. Although the Action did not resolve during this time, the parties were able to reach a class-wide settlement during negotiations with Judge Butcher in August 2023. The agreement has been reduced to writing and executed as of February 9, 2024. (*See* Ex. 1.) Thus, this factor weighs in favor of approval.

### C. The Relief Provided for the Class is Adequate

#### 1. The Costs, Risk, and Delay of Trial and Appeal

Moving on, in assessing "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial . . . ." *Hanlon*, 150 F.3d at 1026.

Here, this is a complex class action which has been litigated for years. Plaintiffs allege the City violated a number of constitutional and statutory rights. (*See generally* SAC.) However, the City denies all liability. Given the complexity and age of the case, the Court concludes that the strength of Plaintiffs' case against the City, and the risk, expense, complexity, and risk of maintaining class status throughout trial weighs in favor of approving the Settlement. The ticket forgiveness expanded and improved safe parking program, an amended VHO training bulletin restricting VHO enforcement, and $15,000 in damages for each Named Plaintiff all result in a substantial and tangible recovery, without the considerable risk, expense, and delay of summary judgment motions, trial, and post-trial litigation.

### 2.     Request for Class Representative Incentive Awards

Plaintiffs seek a class representative enhancement payment of $7,500.00 for each class representative, totaling $52,500.00. (Doc. No. 329 at 26.)

Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). "Incentive awards are fairly typical in class action cases," but are ultimately "discretionary." *Id.* at 958. In deciding whether to approve an incentive award, courts consider factors including:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

In this case, the Class Representatives spent roughly six years assisting the litigation of this case by responding to discovery requests, participating in deposition sessions, and maintaining regular communication with Class Counsel. (Doc. No. 329 at 26.) Class Representatives also provided essential information on how the City enforced the VHO and OVO. (*Id.* at 26–27.)

Under these circumstances, the service award totaling $7,500 to each Class Representative is fair and reasonable in light of the extraordinary risks they accepted and the time and effort they expended for the benefit of the Class. The Court grants Plaintiffs' request for class representative incentive awards.

### 3.     Attorneys' Fees

The City has agreed to pay Class Counsel $2,950,000.00 in attorneys' fees and costs for work done through final approval, an almost 50% reduction of Plaintiffs' lodestar of

attorneys' fees and costs expended in the more than six years covered by this litigation. (Doc. No. 329 at 25–26.) Class Counsel will make a separate application to the Court for an award of attorneys' fees, costs, and expenses. (*Id.* at 26.)

This court has an "independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). At the fee-setting stage, the interests of the plaintiffs and their attorneys diverge and is described as "adversarial"; therefore, the district court assumes a fiduciary role for the class plaintiffs. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

Class Counsel will set forth the exact amounts requested in a separate application, which will be filed prior to the final approval of this proposed Settlement. In connection with the final fairness hearing, the Court will cross check the requested amount with the lodestar amount based upon counsels' submission, and will determine whether the award is reasonable here.

**D.    Notice**

Rules 23(c)(2)(A) and (e)(1) states that for a Rule 23(b)(2) settlement class, "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

Here, the parties propose that notice to the Class be distributed as follows: (1) Class Counsel will distribute the court-approved notice in areas within the City where the relevant citations were issued with frequency or where class members tend to park; (2) Plaintiffs will engage in press coverage and interviews in local relevant media outlets and will propose the notice be published in periodicals of general circulation in the City and surrounding communities; (3) within 30 days of the preliminary approval order, Plaintiffs will create and post on a website that would set forth a copy of the Notice, the Settlement Agreement, and points of contact to obtain additional information about the settlement; (4) within 30 days of the preliminary approval order, Plaintiffs will publicize a number for class members to call to answer questions about the proposed settlement; and (5) the City shall conspicuously communicate the settlement notice on the City's webpage

dedicated to informing the public of legal settlements concerning issues relevant to homelessness. (Doc. No. 329 at 27–28.)

Having reviewed the proposed Class Notice Packet, the Court concludes the notice complies with Federal Rule of Civil Procedure 23.

### E. Final Approval Hearing

A court must hold a hearing before finally determining whether a class settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). The Court thus **ORDERS** that the final fairness hearing be set for **October 10, 2024 at 2:00 PM**. The Motion for Final Approval must set forth Plaintiff's Counsel's request for fees and costs, with detailed records of hours, rates, and costs documented.

## V. CONCLUSION

Based on the foregoing, the Court **GRANTS** the parties' joint motion for preliminary approval of settlement in its entirety. The Court additionally (1) orders the 60-day notice period to begin within 30 days of the entry of this preliminary approval order, in which any comments/objections can be filed by Class Members, and (2) sets a final approval briefing schedule to begin within 21 days of the end of the 60-day notice period, with a hearing on fairness and final approval of the settlement to be held **on October 10, 2024 at 2:00 PM**.

IT IS SO ORDERED.

Dated: March 15, 2024

Hon. Anthony J. Battaglia
United States District Judge