UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BLOOM, STEPHEN CHATZKY, TONY DIAZ, VALERIE GRISCHY, PENNY HELMS, BENJAMIN HERNANDEZ, DOUG HIGGINS, SUZONNE KEITH, GERALD STARK, ANNA STARK, and DAVID WILSON, individually and on behalf of themselves and all others similarly situated,[1]<br><br>                                    Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO,<br>                                    Defendant. | Case No.: 17-cv-02324-AJB-DEB<br><br>**ORDER GRANTING MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES**<br><br>**(Doc. Nos. 336, 337)** |

      Presently before the Court is Plaintiffs' unopposed motions for final approval of class action settlement and for attorneys' fees. (Doc. Nos. 336, 337.) Defendant City of San Diego (the "City") has filed notices of non-opposition as to each motion. (Doc. Nos. 340, 341.) The deadline to object to the Settlement was July 10, 2023, and class member

---

[1] Plaintiffs Michael Bloom and David Wilson passed away during the course of this litigation. (Doc. No. 336 at 9 n.1.) Plaintiffs' counsel informed the Court during the October 10, 2024 hearing that there are no survival claims for the decedent plaintiffs.

1

Christopher Scott Endres filed an Opposition to the Settlement. (*See* Doc. No. 335.) The Court held a hearing on Plaintiffs' Final Approval Motion on October 10, 2024, at 2:00 p.m. For the reasons stated herein, the Court **GRANTS** the motions.

## I.   BACKGROUND

On November 15, 2017, Plaintiffs filed a class action complaint against the City, alleging violations of the constitutional and statutory rights of San Diego residents, including those with disabilities who rely on their vehicles for shelter and cannot access alternative housing. (Doc. No. 1.) The operative complaint specifically challenges two of the City's ordinances: one prohibiting recreational vehicle ("RV") parking from 2:00 a.m. to 6:00 a.m. ("Oversized Vehicle Ordinance" or "OVO"), and another prohibiting vehicle human habitation in most areas of San Diego any time of the day or night ("New VHO"). (Second Amended Complaint, Doc. No. 137, ¶¶ 61, 63.)

Between May 9, 2017 and October 2023, the parties participated in approximately twenty-four settlement conferences and informal discussions with the Honorable Magistrate Judges Nita Stormes and Daniel Berg, in addition to private mediation before the Honorable Carla M. Woehrle (Ret.), all of which were unsuccessful. (Doc. No. 329 at 13.) In January 2022, the Honorable Magistrate Judge Daniel Butcher began negotiations with the parties, and the parties eventually reached a complete settlement on all substantive issues on March 29, 2023, pending final approval by City Council. (*Id.*) On May 5, 2023, the parties reached an agreement on reasonable attorneys' fees. (*Id.*) After a hiccup in the settlement agreement terms, the parties returned to negotiations with Judge Butcher, and a second agreement was finalized in August 2023. (*Id.*) On October 30, 2023, the City Council voted to approve the settlement in closed session, and in January 2024, voted to approve the settlement in open session. (*Id.*) The Mayor did not veto the action of the City Council within the ten-day period allotted to him. (*Id.*)

On March 18, 2024, the Court preliminarily approved the Settlement Agreement and the proposed class notice, and further directed that the notice be distributed. (*See* Doc. No. 333.) As part of the Order, the Court approved the Parties' proposal for distribution of the

2

notice at places where class members tend to park; that Plaintiffs engage in press coverage and interviews and that the notice be published in periodicals of general circulation; that Plaintiffs create and post a website with a copy of the Notice of Settlement Agreement and points of contact; and that Plaintiffs establish a telephone number for class members to call to have their questions answered. (*Id.*) In addition, the City was to conspicuously communicate the settlement notice on the City's webpage. The Parties have distributed the notice as agreed.

On June 12, 2024, Christopher Scott Endres filed an opposition and objection to the Settlement. (Doc. No. 335.) He asserts the Settlement "falls short of delivering justice and equity" for a number of reasons and provides proposed alternative settlement terms, as discussed further below. (*Id.* at 1, 3–5.)

## II.   SETTLEMENT AGREEMENT

Plaintiffs and the City have executed a proposed Settlement Agreement ("Settlement Agreement" or "Settlement"). The primary terms of Settlement are provided below:

A. <u>Substantive Relief</u>:

1. <u>Ticket Forgiveness</u>: The City of San Diego will forgive all outstanding OVO tickets incurred by class members for parking oversized vehicles between 2:00 a.m. and 6:00 a.m., and tickets for "violation of signs" prohibiting vehicle habitation between November 15, 2017, and the date of the Settlement. The City, if feasible, will promptly forgive the class members' unpaid parking tickets and other debts related to unpaid parking tickets upon request. The City will inform the Department of Motor Vehicles that the fines are null and void.

2. <u>Amended VHO Training Bulletin and Limitations on VHO Enforcement</u>: The City will issue an amended VHO training bulletin for law enforcement. The amendments to the training bulletin are intended to avoid VHO enforcement for sheltering in, resting in, sleeping in, and/or storing property in vehicles while being otherwise law-abiding, *i.e.*, without committing a criminal law violation other than the VHO. Enforcement of the VHO will only occur if the

police determine reasonable suspicion of a crime or violation of a law *other than* residing in one's vehicle. A class member parked illegally will have an opportunity to move the vehicle to a legal parking location before they can be cited under the VHO. In addition, people who live in their vehicle may use the same vehicle for transportation without being cited under the VHO, such as traveling and temporarily parking to visit parks, beaches, shops, libraries, go to the doctor, attend school, work, or religious services, or to visit family or friends.

3. Safe Parking Program: This Settlement expands and improves the City's designated parking program ("safe lots"). Additional options for legal nighttime parking will be provided in various locations throughout the City. The City will update a list of available spots in the parking program on its website nightly, including indicating if the spaces are suitable for oversized vehicles. Each parking lot in the City's program will have safe, accessible bathrooms, security and/or personnel on-site. The City will also make improvements to the Mission Valley Safe Lot in order to enhance the health and safety for residents of oversized vehicles (*e.g.*, widening the entrance to the lot and adding running water, showers, electric hookups, improved lighting, and shade). Class members may have a second vehicle at the Mission Valley Safe Lot. Mission Valley Safe Lot will continue to operate on a 24-hour basis during the three-year period of the Settlement.

4. Nighttime Enforcement When Safe Lot Options Are Unavailable: The City will not enforce by arrest, citation, or ticket the VHO or OVO during the hours of 9:00 p.m. to 6:00 a.m. when legal parking under the City's designated parking lot program is unavailable to a class member because the lots are full, closed, or there is no spot reasonably available to the class member, considering, among other factors, the type of vehicle, the distance to the lot, and whether there is adequate space for the vehicle. Members of the

Settlement Class will be provided an opportunity to relocate to an available space in a "safe lot" before enforcement or issuing of tickets or citations to the class member under the VHO or OVO may occur.

5. <u>Consideration of ADA-Related Requests for Class Members with Disabilities</u>: In compliance with Title II of the ADA, the City agrees to evaluate all requests for reasonable modifications from Plaintiffs and class members in good faith but retains the right to refrain from actions that would fundamentally change the nature of its programs or services or impose an undue financial or administrative burden.

B. <u>Enforcement and Monitoring</u>: Under the Settlement, the Court shall have jurisdiction to enforce the terms of the settlement agreement for three years. During this period, the City will provide Plaintiffs' counsel every three months with available records of: (i) enforcement of the VHO, including records of grounds for reasonable suspicion of criminal activity; (ii) enforcement of the OVO; (iii) ticket forgiveness; and (iv) reasonable accommodation/modification requests and responses regarding enforcement of the VHO and/or the OVO.

C. <u>Dispute Resolution</u>: The parties have agreed to a multi-step process to resolve disputes. First, any party notified of a dispute through a written Notice of Dispute has 45 days to cure or identify a plan to cure any non-compliance. Second, if the alleging party maintains that the violation or failure to perform has not been cured within 45 days, the alleging party can petition Judge Butcher for resolution of systemic issues. In the case of systemic violations, Judge Butcher has the authority to extend jurisdiction and prescribe suitable remedies.

D. <u>Released and Unreleased Claims</u>: The members of the Settlement Class will release the City and its relevant departments from all claims for equitable relief relating to the allegations in the operative Complaint up through the three-year settlement term. The Named Plaintiffs will also release their claims for monetary damages, but the release does not apply to claims for monetary damages by other

class members.

E. **Damages and Service Awards**:

   1. The City will pay Fifteen Thousand Dollars ($15,000.00) in monetary damages to each of the nine current Plaintiffs. This award of monetary damages does not extinguish or otherwise disturb any claim for monetary damages that other members of the class may have against the City.

   2. In addition to the individual monetary damages to current Plaintiffs, the seven class representatives will each receive a Service Award of $7,500.00.

F. **Reasonable Attorneys' Fees, Costs, and Expenses**.

   1. The City will pay Plaintiffs' counsel $2,950,000 in attorneys' fees and costs for work through final approval of the Agreement. The City also agrees to pay reasonable attorneys' fees and costs in an amount not to exceed $25,000 to monitor the Settlement. Class Counsel will file a motion to recover their reasonable attorneys' fees, costs, and expenses pursuant to Federal Rule of Civil Procedure 23(h).

(*See* Ex. 1, Doc. No. 329-2, Proposed Settlement Agreement.)

## III. LEGAL STANDARD

A class action may not be settled without court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)). The Ninth Circuit Court of Appeals has a "strong judicial policy" in support of class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, when presented with a motion to finally approve a class action settlement, "judges have the responsibility of ensuring fairness to all members of the class . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

## IV. OBJECTION TO THE SETTLEMENT

Mr. Endres raises an objection to the proposed settlement, asserting "the settlement

falls short of delivering justice and equity." (Doc. No. 335 at 1.) Mr. Endres specifically asserts the settlement does not adequately address the following issues:

1. **The State Action Doctrine**: asserting the OVO and VHO do not pass the State Action Doctrine scrutiny because the ordinances are discriminatory either on its face or administration;
2. **Discriminatory Practices**: The City's policies and enforcement of the OVO and VHO disproportionately target and harm homeless individuals through vague ordinances and unequal access to resources;
3. **Misapplication of Law**: The OVO and VHO ordinances unfairly impose restrictions and punishments on non-sex offender homeless individuals, though these restrictions and punishments are typically reserved for sex offenders;
4. **Color of Law Violations**: The City is responsible for color of law violations through issuance of unlawful orders via policing agency;
5. **Equal Protection**: The City's policies violate the equal protection clause by discriminating against homeless individuals, particularly those with disabilities, by denying them access to the same parking permits and opportunities as housed individuals;
6. **California Constitution**: The City's actions violate the due process and equal protection provisions of the California Constitution;
7. **Right to Associate**: The City violates the right to association via the Safe Parking Lots, which "segregate the undesired socioeconomically disadvantaged population[;]"
8. **California Coastal Act**: The City disregards the Act by way of assertive privatization management practices, including unlawful signage and unlawful enforcement in areas designated for 24 hours a day, 7 days a week public coastal access;
9. **Bane Act**: The City's policies and practices are seen as threats, intimidation, and coercion that interfere with the homeless individuals' rights, including their right to

be present on public streets. Objector asserts the ordinances are punitive and restrictive;

10. **The ADA**: The City discriminates against individuals with disabilities by failing to provide reasonable modifications to its policies;

11. **Rehabilitation Act**: As a recipient of federal funds, requiring it to ensure meaningful access to its programs for individuals with disabilities, the City's refusal to modify its policies is a violation of this act;

12. **Lack of Sustainable Solutions**: The settlement focuses on punitive measures rather than investing in sustainable housing solutions that could effectively address the root causes of homelessness. The ordinances fail to address the root causes and instead are a punitive measure to assault the victim and therefore must be voided.

(Doc. No. 335 at 1–3.)

In his objection, Mr. Endres also provides a proposed alternative settlement, which includes such terms as a permanent injunction to enjoin the City from enforcing the ordinances, an award of $700 million in compensatory damages, implementing sustainable housing programs, forgiving all tickets issued under the ordinances and ensuring the return of impounded property, and holding city council members, the mayor, and other officials accountable for their roles in enforcing the ordinances. (*Id.* at 3–4.)

## V. MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### A. Class Certification

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees). In the present case, the Court previously granted in part Plaintiffs' motion for class certification. (*See* Doc. No. 180.) Accordingly, the Court reaffirms and incorporates by reference its prior analysis under Rules 23(a) and (b)(2) as set forth in its Order Granting in Part Plaintiffs' Motion for Class Certification. (*See id.* at 5–25.)

### B.  Adequacy of Notice

Next, the Court must determine whether the Class received adequate notice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.*

In its Preliminary Approval Order, the Court approved the Parties' proposed notice and notice plan. (*See* Doc. No. 333 at 12–13.) As part of their Final Approval Motion, Plaintiffs filed the Declaration Ann E. Menasche, who is lead counsel for Plaintiffs and all class members in this action. (Declaration of Ann E. Menasche ("Menasche Decl."), Doc. No. 336-1, ¶ 1.) Ms. Menasche details the actions taken by herself, co-counsel, several Plaintiffs and Class Representatives, and the cooperation of the City Attorney's Office to provide notice in accordance with the Preliminary Approval Order. (*Id.* ¶ 5.) Having reviewed Ms. Menasche's declaration, the Court finds the Settlement Class received adequate notice of the Settlement.

### C.  Fairness of the Settlement

The Court must next determine whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(1)(C), while considering the fairness factors.

In its Preliminary Approval Order, the Court addressed each of the fairness factors in turn and found all the pertinent factors weighed in favor of approving the Settlement. (*See* Doc. No. 333 at 8–12.) Among other criteria, the ticket forgiveness, expanded and improved safe parking program, and an amended VHO training bulletin restricting VHO enforcement to settle and resolve all claims in the action by or on behalf of the potentially over 800 Class Members against the City is a fair, reasonable, and appropriate settlement amount to resolve all claims in this action. Under the Parties' proposed settlement, every class member, including Plaintiffs, will benefit from the same policy changes that will protect class members from unrestricted enforcement of the VHO and OVO. The only difference in recovery between the Plaintiffs and other class members is a service award in

9

the amount of $7,500 for each of the Plaintiffs who were appointed Class Representatives and $15,000 to each Named Plaintiff for damages.[2] The Settlement Agreement, however, preserves unnamed class members' rights to sue for individual damages, in contrast to Named Plaintiffs, who otherwise waive the right to sue for additional damages.

One Class Member, Mr. Endres, has filed an objection against the settlement as discussed above. (Doc. No. 335.) In response, Plaintiffs assert that with respect to the issue of compensatory damages for class members, the Settlement Agreement does not prevent Mr. Endres from suing the City for his own damages; while Named Plaintiffs have released the City from additional claims for damages, the Settlement Agreement's release of claims on behalf of class members only applies to equitable relief. (Doc. No. 336 at 29.) Moreover, the Settlement Agreement's release of claims on behalf of class members for equitable relief only lasts three years, and so Mr. Endres is free to sue the City for additional equitable relief after the period of reserved jurisdiction expires. (*Id.* at 30.) Plaintiffs assert all class representatives support the Settlement Agreement and believe it is fair, and that the reaction from other class members to the proposed settlement has been overwhelmingly positive. (*Id.*)

During the October 10, 2024 hearing, Mr. Endres was given an opportunity to voice his objections to the Settlement Agreement. Plaintiffs' counsel and the Court emphasized the narrow scope of the instant action, and that Mr. Endres and other class members are free to independently file suit for damages. Plaintiffs' counsel further highlighted that the instant case did not seek damages, but rather was for injunctive relief. Plaintiffs' counsel and the Court are unaware of any other objections to the proposed Settlement Agreement.

Because no pertinent facts have changed, the Court reaffirms and incorporates by reference its analysis of the Rule 23(e) requirements as set forth in its Preliminary Approval

---

[2] In the Court's Order granting in part and denying in part Plaintiffs' motion for class certification, the Court concluded Named Plaintiffs Tony Diaz and Doug Higgins were inadequate to serve in representative capacities. (Doc. No. 180 at 12.)

Order. (*See* Doc. No. 333 at 8–12.) Accordingly, the Court finds the settlement to be "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e).

## VI.   MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiffs' counsel request attorneys' fees and costs for a total of $2,950,000.00 ("Agreed Amount"). (Doc. No. 337 at 10.) Of this Agreed Amount, $2,845,567.06 is requested for attorneys' fees and $104,432.94 is requested for costs and expenses. (*Id.* at 24.)

### A.   Attorneys' Fees

In its moving papers, Plaintiffs' counsel state that through June 1, 2024, they devoted more than 8,819.4 hours to this action over the course of 7 years, for a full lodestar totaling $6,215,338.30. (*Id.* at 21–22.) However, Plaintiffs are requesting an approximate 53% reduction of its actual fees expended to demonstrate the reasonableness of its request. (*Id.* at 24–25.) As such, they request $2,845,567.06 in attorneys' fees for the work done by the Law Office of Ann Menashe; Disability Rights Advocates ("DRA"); Disability Rights California ("DRC"); Dreher Law Firm; Law Foundation of Silicon Valley; Fish & Richardson P.C.; National Homelessness Law Center ("NHLC"); Manfred, APC; and Bonnett, Fairbourn, Friedman & Balint, PC ("BFFB"). (*Id.*) The full lodestar of $6,215,338.30 is calculated as follows:[3]

| Attorney/Staff | Billable Time | Hourly Rate | Billable Amount |
|---|---|---|---|
| Ann E. Menasche | 545.2 | $915 | $498,858 |

---

[3] On October 4, 2024, the Court requested more information from counsel regarding the billable time, hourly rate, and total billable amount for each timekeeper. Counsel thereafter provided the Court with a spreadsheet with the requested information, and filed a declaration stating that, in responding to the Court's order, Fish & Richardson, P.C. ("Fish") discovered two discrepancies: (1) in the total hours calculated for Fish's time as reflected in the July 8, 2024 declaration, and (2) in the billing rate used to calculate Fish's total billed amount across all timekeepers. (Declaration of Michael A. Amon, Doc. No. 343, ¶ 4.) Thus, Fish made two adjustments to its calculation but has not changed the total amount that it is claiming for its work on the case, and indeed has reduced the total number of hours. (*Id.* ¶ 8.) Thus, this change does not impact the City, given the parties have agreed on a reduced total attorneys' fees and costs as part of the settlement agreement. (*Id.*)

| | | | |
|---|---|---|---|
| (Law Office of Ann E. Menasche) (Beginning January 2023) | | | |
| Stuart Seaborn (DRA) | 477 | $1050 | $500,850 |
| Jinny Kim (DRA) | 36.2 | $990 | $35,838 |
| Kevin Knestrick (DRA) | 151.3 | $930 | $140,709 |
| Madeleine Reichman (DRA) | 199.2 | $585 | $116,532 |
| Jameelah Najieb (DRA) | 171.6 | $440 | $75,504 |
| Shira Tevah (DRA) | 390.1 | $635 | $247,713.50 |
| Jess Miller-Suchet (DRA) | 76.2 | $280 | $21,336 |
| Nathan Weister (DRA) | 89.2 | $300 | $26,760 |
| Robert Scott Dreher (Dreher Law Firm) | 191.5 | $810 | $155,115 |
| Tristia Bauman (The Law Foundation) | 79.1 | $725 | $57,347.50 |
| Ann Menasche (DRC until May 2022) | 2,394.20 | $915 | $2,190,693 |
| Stuart Seaborn (DRC) | 34.1 | $1050 | $35,805 |
| Nichole Mendoza (DRC) | 175.8 | $625 | $109,875 |
| Lili Graham | 180.8 | $720 | $130,176 |

| | | | |
|---|---|---|---|
| (DRC) | | | |
| Natasha Reyes (DRC) | 63.2 | $505 | $31,916 |
| Kendra Muller (DRC) | 509.1 | $305 | $155,275 |
| Michael Amon (Fish & Richardson P.C.) | 192.6 | $1125 | $216,699 |
| Geoff Biegler (Fish & Richardson P.C.) | 124.7 | $1200 | $149,608 |
| Angela Castagnola (Fish & Richardson P.C.) | 1.4 | $455 | $624 |
| Ahmed Davis (Fish & Richardson P.C.) | 1.1 | $1250 | $1,423 |
| Ryan Frei (Fish & Richardson P.C.) | 151.7 | $505 | $76,614 |
| Monika Kapuscinska-Kass (Fish & Richardson P.C.) | 18.3 | $390 | $7,118 |
| Nancy Ly (Fish & Richardson P.C.) | 277.2 | $830 | $230,099 |
| Madelyn McCormick (Fish & Richardson P.C.) | 369.8 | $795 | $293,982 |
| Kathryn Quisenberry (Fish & Richardson P.C.) | 1.9 | $795 | $1,508 |
| Jeanel Sunga (Fish & Richardson P.C.) | 3.3 | $620 | $2,025 |
| Tucker Terhufen (Fish & Richardson P.C.) | 0.4 | $760 | $315 |
| Elizabeth Wilton (Fish & Richardson P.C.) | 7.4 | $310 | $2,285 |

13

| | | | |
|---|---|---|---|
| Robert Yeh (Fish & Richardson P.C.) | 55.4 | $760 | $42,093 |
| Tristia Bauman (NHLC) | 233.5 | $778 | $181,663 |
| Maria Foscarinis (NHLC) | 0.3 | $864 | $259.20 |
| Will Knight (NHLC) | 80.7 | $698 | $56,328.60 |
| Alex Matak (NHLC) | 51.5 | $574 | $29,561 |
| Lily Milwit (NHLC) | 73.5 | $574 | $42,189 |
| Eric Tars (NHLC) | 1.8 | $795 | $1,431 |
| Manfred Muecke (Manfred, APC) (Beginning 2020) | 239.2 | $750 | $179,312.50 |
| Manfred Muecke (BFFB) (through 2019) | 511.4 | $425 | $217,345 |
| Patricia Syverson (BFFB) | 67.2 | $600 | $40,320 |

Under 42 U.S.C. section 12205 of the ADA, 29 U.S.C. section 794a(b) of the Civil Rights Act of 1964, and California Code of Civil Procedure section 1021.5, reasonable attorney's fees and litigation costs are available to the prevailing party in a claim, in the Court's discretion. Moreover, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to

ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.

The Ninth Circuit utilizes the lodestar method for calculating reasonable attorneys' fees, "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). The burden is on the party seeking fees to establish their reasonableness. *Id.* at 945–46 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). In determining "a reasonable hourly rate, the district court should consider: '[the] experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented.'" *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986)). Additionally, district courts may "rely[] on their own knowledge of customary rates and their experience concerning reasonable and proper fees." *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Plaintiffs bear the burden of demonstrating its counsels' hourly rates are reasonable and in line with prevailing rates in the relevant legal community of the Southern District of California. *See Herring Networks, Inc. v. Maddow*, No. 19-cv-1713, 2021 WL 409724, at *4 (S.D. Cal. Feb. 5, 2021). To do so, Plaintiffs must produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Roberts v. City & Cnty. of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate").

To support the requested lodestar amount, Plaintiffs submit the declarations of Ann Menashe (Doc. No. 337-1), Jinny Kim (Doc. No. 337-3), Robert Scott Dreher (Doc. No. 337-11), Tristia Bauman (Doc. No. 337-13), Melinda Bird (Doc. No. 337-15), Michael Amon (Doc. No. 337-19), William Knight (Doc. No. 337-21), Manfred Muecke (Doc. No.

337-25), and Francis Balint, Jr. (Doc. No. 337-27), and accompanying exhibits, which explain in detail the amount of experience, skills, and reputation of each attorney and staff member involved in this case. Significantly, the City filed a notice of non-opposition to the motion for attorneys' fees and did not challenge the hourly rates set forth in Plaintiffs' fee application, nor did it argue that the hours expended by Plaintiffs' counsel were unreasonable. (*See* Doc. No. 341.) Moreover, the hourly rates above are generally in line with rates prevailing in this community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See, e.g., Soler v. Cnty. of San Diego*, No. 14cv2470-MMA (RBB), 2021 WL 2515236, at *5 (S.D. Cal. June 18, 2021) (collecting cases and noting that "courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in the range of $550 per hour to more than $1000 per hour"); *Herring Networks, Inc.*, 2021 WL 409724, at *8 (collecting cases awarding fees based on hourly rates in the range of $295 to $943 and concluding that "reasonable rates in this district for those of comparable skill, experience, and reputation" justified rates between $470 to $1,150).

In reviewing the billing invoices of Plaintiffs' counsel, the Court finds 54.8 hours were billed for clerical tasks. Time billed for clerical tasks is not recoverable as the tasks should be absorbed into law firm overhead rather than billed at the rate of paralegals. *Rosemary G. V. v. Saul*, 3:19-CV-00715-RBM, 2020 WL 6703123 at *4 (S.D. Cal. Nov. 12, 2020). Tasks such as calendaring, organizing exhibits, and circulating ECF filings are clerical in nature. *Id.* However, because Plaintiffs have reduced their own request by 53%, the Court ultimately finds Plaintiffs' request of $2,845,567.06 to be reasonable.

**B.   Litigation Expenses**

In their motion, Plaintiffs seek an award of $104,432.94 in litigation costs for experts, translators, distributing class notice, and deposition expenses, transcripts, and necessary travel. (Doc. No. 337 at 24.) Class Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See Staton*, 327 F.3d at 974. The Court finds Class Counsel's out-of-pocket costs were

reasonably incurred in connection with the prosecution of this litigation, were advanced by Class Counsel for the benefit of the Class, and shall be reimbursed in full in the amount requested. The Court approves the request for litigation costs and expenses in the amount of $104,432.94.

### C. Incentive and Individual Damages Awards to Class Plaintiffs

Finally, the Settlement Agreement provides each of the seven Class Representative will receive $7,500.00, totaling $52,500.00. (Doc. No. 329 at 26.)

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal citation and quotations omitted). Named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton*, 327 F.3d at 977. The incentive award for the Class Plaintiffs in this case is presumptively reasonable. *See, e.g.*, *Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2019 WL 2269958, at * (S.D. Cal. May 28, 2019) (awarding a service award of $5,000 to each Class Representative); *Vasquez v. Kraft Heinz Foods Co.*, No.: 3:16-cv-2749-WQH-BLM, 2020 WL 1550234, at *9 (S.D. Cal. Apr. 1, 2020) (finding reasonable incentive awards of $7,500 and $3,000). Accordingly, the Court finds the service awards to the Class Representatives are appropriate.

Further, each of the nine Named Plaintiff will also receive $15,000.00 in individual monetary damages under the Settlement Agreement, totaling $135,000.00. (Doc. No. 336 at 17, 22.) The Court finds the individual damages award to the Named Plaintiffs to compensate Plaintiffs' claims is reasonable given the alleged individual harms each Plaintiff experienced.

## VII. CONCLUSION

Based on the foregoing and the entire record, the Court **GRANTS** Plaintiffs' motions for final approval of the Settlement and for attorneys' fees. The Court also

**ORDERS**:

1. The claims of Plaintiffs and Class Members are hereby released as against Defendant consistent with Paragraph 12 of the Settlement Agreement;
2. The City pay $15,000 in monetary damages to each of the nine current Named Plaintiffs, and $7,500 to each of the seven Class Representatives within thirty (30) days of this Order;
3. Without affecting the finality of this Final Approval Order, the Court **RETAINS JURISDICTION** over implementation of the settlement for a period of three years, with enforcement delegated to Magistrate Judge Butcher;
4. This action be **DISMISSED WITH PREJUDICE**, with each side to bear its own costs and attorneys' fees except as provided by the Settlement Agreement and the Court's Orders;
5. This document constitutes a final judgment and separate document for purposes of Federal Rule of Civil Procedure 58(a); and
6. The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: October 14, 2024

Hon. Anthony J. Battaglia
United States District Judge