Ann E. Menasche, SB #74774
ann@bulldogforjustice.com
LAW OFFICE OF ANN E. MENASCHE
1901 First Avenue, Suite 100
San Diego, CA 92101
Telephone: (619) 798-7073
Fax: (619) 702-7073
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BLOOM, STEPHEN CHATZKY, TONY DIAZ, VALERIE GRISCHY, PENNY HELMS, BENJAMIN HERNANDEZ, DOUG HIGGINS, SUZONNE KEITH, GERLAD STARK, ANNA STARK, and DAVILD WILSON, individually and on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br>  vs.<br><br>CITY OF SAN DIEGO,<br><br>      Defendant. | Case: No. 3:17-cv-02324-AJB-DEB<br><br>**PLAINTIFFS' REPLY POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT RE: SIGNS** |

# INTRODUCTION

The City has raised several matters in its Opposition brief that are completely peripheral to the issue at hand, which is whether the City can, under the Settlement Agreement, actively.misinform.and.mislead class members and the public through its signage regarding the conditions under which the VHO and OVO are enforceable.

These signs do just that, as they are far more visible, authoritative, available and effective in communicating to the public than information posted on the City's website. Furthermore, the signs are likely to override and undermine Plaintiffs' vigorous attempts to get the word out to class members about the terms of the settlement and the narrow conditions under which the VHO and OVO may be enforced. Those efforts included distributing flyers on multiple occasions and contacting the media.

This issue has nothing to do with the holding of *City of Grants Pass v. Johnson*, 144 S. Ct. 2202, decided June 28, 2024, close to four months before final approval by the Court on October 10, 2024, with not a word of opposition by the City to approval of the Settlement including when present that day in open court.[1] Judge Battaglia clearly did not think the settlement was "illegal" in light of *Grants Pass* when he approved it.

It certainly has nothing to do with any expectation that the Settlement would solve the homelessness crisis. Class members, themselves indigent, must look to bodies with far greater resources to accomplish that feat.

Moreover, there are no new "encampments" being created. The use of Robb Field by class members for daytime or nighttime parking has been going

---

[1] The Second Amended Complaint contained 12 separate causes of action, and did not solely rely on the 8th Amendment claim. (Doc. 137) Plaintiffs' strongest challenge to the VHO, that the ordinance is unconstitutionally vague, and that was briefed in Plaintiffs' Motion for Partial Summary Judgment (Doc. 232-1), was unaffected by the *Grants Pass* decision.

*Bloom, et al. v. City of San Diego*, Case No. 3:17-CV-02324-AJB-DEB  2
**Plaintiffs' Reply Points and Authorities in Support of Plaintiffs' Motion for Enforcement of Settlement Agreement Re: Signs**

on for many years. (See Declaration of Penny Helms.) To the extent sensational news coverage of neighbor complaints alleging dumping trash, and alcohol and illegal drug use by class members has any validity, the police have multiple tools available to them without compromising the clear intent of the Settlement Agreement.

The only expectations arising out of this Settlement Agreement are that law-abiding class members are no longer to be treated as criminals, subjected to arrest and fines under the VHO; or to be ticketed for nighttime parking under the OVO when the vehicle was their only available shelter, and no legal parking is available.  These expectations are being undermined by the City's misleading signage, frustrating the Plaintiffs and class members' right to receive the benefit of the Settlement.

## ARGUMENT

**A. The City's VHO and OVO signage contradicts the definite and certain provisions of the Settlement Agreement**

**1. VHO Signage**

The City's VHO signage states that "Vehicle habitation is prohibited at all times" and "Habitation in vehicles prohibited from 9 pm to 6 am."  Both are clearly and unambiguously *false* under the provisions of the Settlement Agreement.

Surprisingly, the City attorney appears confused about the restrictions on VHO enforcement in the Settlement Agreement, making the false claim that "[t]he City has the right to progressively enforce the OVO[2] and VHO against persons residing in vehicles during the day in City Parks and at night if there is other street parking or safe lots available."  (Doc. 354, Oppos. Brief,4:7-9).

---

[2] The OVO 2 to 6 a.m. restrictions for parking oversized vehicles that was challenged in this lawsuit has no applicability during daytime hours.

In fact, the Settlement Agreement contains *three separate restrictions* on VHO enforcement, therefore allowing enforcement in only the narrowest of circumstances.

1) Enforcement should be avoided "while sheltering in, resting in, sleeping in and/or storing property in their vehicle while being otherwise law abiding, i.e., without committing a criminal law violation other than the VHO," i.e.., there.must.be.a.reasonable.suspicion.of.a.criminal.law.violation.(or a parking violation after being given an opportunity to locate) *other than the VHO*. See Settlement Agreement, Doc. 329-2, 3:§3;19:§IV(A).

2) Enforcement is also to be avoided "when a vehicle is lawfully parked in a location that is open to the general public...when a person who shelters in a vehicle is using the vehicle as transportation, including but not limited to traveling and temporarily parking at...public parks and beaches, shops and libraries..." *Id.,* p. 19:§IV(C).

3) VHO shall also not be enforced "based on 9:00 p.m. to 6:00 a.m. restriction when legal parking options, including safe parking lots in the City of San Diego, are full, closed, or are not reasonably available to involuntarily homeless individuals sheltering in vehicles at the time of the law enforcement contact." *Id*., p. 19:§IV(D).

Therefore, otherwise law-abiding class members parked at public parks including Robbs Field at times when they are open to the general public, are free to use the park like anyone else. That is, the VHO cannot be enforced against them. Vehicle.habitation.is.not.generally.prohibited.under.the.Settlement.Agreement?either.during.the.day.or.during.nighttime.hours¡ Thus, the City's signage related to the VHO is false and misleading.

\\\

\\\

*Bloom, et al. v. City of San Diego*, Case No. 3:17-CV-02324-AJB-DEB                    4
**Plaintiffs' Reply Points and Authorities in Support of Plaintiffs' Motion for Enforcement of Settlement Agreement Re: Signs**

### 2. OVO signage

The City's OVO signage regarding the 2:00 to 6:00 a.m. parking prohibition for oversized vehicles is also misleading. It claims all such parking is prohibited "except by City permit." However, in fact class members can only be ticketed under the OVO for parking their oversized vehicles on city streets or parks *if there is safe parking reasonably available.* If there is none, they may not be ticketed. If there is safe parking available, the class member must be given an opportunity to relocate before he or she can be ticketed under the OVO. *Id*. p. 3, §4A.

As things currently stand, the Mission Valley lot remains the only lot in the Safe Parking lot program accepting oversized vehicles and it is at capacity with a waiting list of many months or longer. (Menasche Declaration; Helms Declaration). Also, the City has yet to set up its website posting vacancies as provided for in the Settlement Agreement. *Id,* p. 4, §4(I).

Thus, the nighttime provisions of the OVO cannot now be enforced against any class member at all, and in the future, it may only be enforced under limited circumstances. The City's signs indicate that there are no such restrictions.

### B. The terms of the Settlement Agreement are sufficiently definite and certain to prohibit the City from misleading class members and the public through its signage and undermining the settlement.

The provisions of the Settlement Agreement regarding the restrictions on VHO and OVO enforcement are clear and unambiguous.

Under the covenant of good faith and fair dealing implied under California law in every contract, a party is prohibited from unfairly frustrating the other party's right to receive the benefits of the agreement made. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349-50 (Cal. 2000). (*See also Nelson v. Abraham,* 29 Cal. 2d. 745 (1947), holding that under the implied covenant of

good faith and fair dealing, terms can be implied that are not explicitly in the contract, if required to carry out the intent of the agreement.) This is what the City's misleading signage is doing here. The clear intent of the Settlement Agreement, to not punish law-abiding class members for living in their vehicles, is undermined, as the signs tell them that they can indeed be punished. This has a chilling effect on the exercise of their right to live in the City.

The case of *Weddington Prods. Inc. v. Flick*, 60 Cal App. 4th 793 (1998) relied on by the City is distinguishable on its facts. In *Weddington*, the parties agreed to a one-page memorandum and to "'formalize' additional material terms later." *Weddington*, at 796. The parties never finalized those additional terms. Rather, one party submitted a 35-page addition on its own. The Judge found that the 35-page addition did not fall under the authority of California Civil Code §664.6 because no contract was formed and therefore could not be enforced. *Id.* at 797.

In the instant case, all material terms of the Settlement have been agreed to by the parties and approved by the Court including those that provide for substantial restrictions on VHO and OVO enforcement. Plaintiffs are not imposing additional terms but merely request that the City not mislead class members and the public and frustrate the intent of the settlement by declaring in its signs that no such restrictions exist.

Parking signage is how a city provides notice to its residents of applicable parking restrictions. See, e.g., *Homes on Wheels v. City of Santa Barbara*, 119 Cal. App. 4th 1173, 1179. "The purpose of these signs is to provide notice of the different parking restrictions for each street before motorists decide to park there." Parking signs are posted to ensure that the

City's parking regulations are not "a trap for the unwieldy." *Id*. It is important, indeed imperative, that the signs be accurate.[3]

### C. Judge Butcher has broad discretion to enforce the Settlement agreement and provide appropriate remedies.

The Settlement Agreement signed by all the parties and approved by City Council and the Court provides: "The Parties agree to reserve to the Court jurisdiction to enforce the terms of the settlement agreement for three years. Subject to the approval of the Court, jurisdiction for purposes of enforcement will be delegated to Magistrate Judge Butcher." Settlement Agreement, 6: §7.

Following the Court's granting final approval of the settlement (Doc. 346), the Court issued a judgment that included the following: "Without affecting the finality of this Final Approval Order, the Court Retains Jurisdiction over implementation of the settlement for a period of three years, with enforcement delegated to Magistrate Judge Butcher."[4] (Doc. 347)

Judge Butcher therefore has authority to enforce the Settlement Agreement and broad discretion to provide relief including awarding attorneys' fees.

\\\
\\\

---

[3] Notably, in *Homes on Wheels*, the court found the signs confusing because their language was more restrictive than the actual regulations. This is precisely the situation in our case. *Homes on Wheels v. City of Santa Barbara*, 119 Cal. App. 4th 1173, 1180, (2004).

[4] Because the parties agreed to retention of jurisdiction in its Settlement Agreement signed by all parties and all counsel, and that the Court ordered retention of jurisdiction in the Judgment, this should be sufficient, and no further form should need to be signed to allow Judge Butcher to enforce the Settlement. See *United States ex rel Lesnick v. Eisenmann* SE 2021 WL 1893072.

### D. Attorneys' fees may be awarded to the prevailing Plaintiffs but should the City prevail, it may only receive fees if Plaintiffs' motion is found to be frivolous.

The Settlement Agreement states that in addition to the fees for work done through final approval of the Settlement, "The City also agrees to pay reasonable attorney's fees and costs for work necessary to monitor compliance with the Agreement during the period of reserved jurisdiction set forth in paragraph 7 not to exceed $25,000." Settlement, 7: §10.

The Agreement further provides that "Reasonable attorneys' fees and costs shall be awarded for work done in connection with dispute resolution pursuant to the standards set forth in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 512, 422 (1978)." Id., 7: §11.

*Christiansburg* held that a district court may in its discretion award attorneys' fees to a prevailing defendant "upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." *Christiansburg* at 421. The Supreme Court advised caution before making such an award: "In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Id* at 421-422.

Plaintiffs are entitled to fees under *both* provisions of the Settlement Agreement as described above. However, should the City defeat Plaintiff's Motion, following the guidance in *Christiansburg*, it is entitled to fees only if Plaintiffs' Motion is found to be frivolous, unreasonable or without foundation. *Christiansburg at 42.* The City cannot possibly meet this high threshold.

\\\

**CONCLUSION**

The City should not be permitted through its signage to mislead class members and the public about the enforceability of the VHO and OVO, thereby frustrating the clear terms of the Settlement Agreement. False and misleading signage that says that class members are banned from living in their vehicles and cannot without exception park oversized vehicles between 2 and 6 a.m., is no different than if the City's Mayor had held a press conference or the police distributed flyers containing the same misinformation. If anything, parking signs are far more harmful, likely to carry even more weight in the eyes of the public and have even more impact in confusing and miseducating the class about their rights, thereby depriving class members of the benefits of the settlement.

Therefore, Plaintiffs' motion should be granted and the City required to remove or modify the signs so they are consistent with the Settlement Agreement.

Dated: March 31, 2025                    */s/ Ann E. Menasche*
                                        Ann E. Menasche
                                        Attorney for Plaintiffs