Ann E. Menasche, SBN 74774
ann@bulldogforjustice.com
LAW OFFICE OF ANN E. MENASCHE
1901 First Avenue, Suite 100
San Diego, CA 92101
Telephone: (619) 798-6835
Fax: (619) 702-7073

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BLOOM, STEPHEN CHATZKY, TONY DIAZ, VALERIE GRISCHY, PENNY HELMS, BENJAMIN HERNANDEZ, DOUG HIGGINS, SUZONNE KEITH, GERALD STARK, ANNA STARK, and DAVID WILSON, individually and on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>CITY OF SAN DIEGO,<br><br>                    Defendant. | Case No.: 3:17-cv-02324-AJB-DEB<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME** |

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES and the COURT: PLEASE TAKE NOTICE THAT Plaintiffs Stephen Chatzky, Tony Diaz, Valerie Grischy, Penny Helms, Benjamin Hernandez, Doug Higgins, Suzonne Keith, Gerald Stark, and Anna Stark[1] (collectively "Plaintiffs" or "Named Plaintiffs"), by and thorough their counsel of record, hereby move the Court to enforce the terms of settlement agreement, and request for attorneys' fees for having to do the same. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declarations and exhibits, all pleadings and papers on file in this action, and any oral argument that may be presented.

By: /s/ Ann E. Menasche
    Ann E. Menasche, SBN 74774
    ann@bulldogforjustice.com
    LAW OFFICE OF ANN E. MENASCHE

---

[1] During the course of this litigation, Plaintiffs Michael Bloom and David Wilson died.

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................... 2

    A. OVO Ticketing Where Safe Parking Is Not Reasonably Available ............... 3

    B. Failure To Make Required Improvements at Mission Valley Lot ................. 8

    C. Inaccurate and Incomplete Posting of Safe Lot Vacancies ............................ 9

    D. Plaintiffs' Efforts to Resolve This Dispute Have Been Unsuccessful............ 9

III. ARGUMENT........................................................................................................11

    A. The City Violating Explicit Terms of the Settlement Agreement.................11

    B. The City Violated Its Obligation of Good Faith and Fair Dealing................14

    C. Awarding Plaintiffs' Attorney Fees Is Appropriate.......................................15

IV. CONCLUSION ...................................................................................................15

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. WalMart*,
   2025 WL 2775774 (9th Cir., Sept. 3, 2025) ...........................................................11

*Brown v. Superior Court*,
   34 Cal. 2d 559 (1949) ..............................................................................................14

*Parsons v. Ryan*,
   912 F. 3d 486 (9th Cir. 2014)...................................................................................11

**Statutes**

Cal. Civ. Code § 1656 ......................................................................................................14

Cal. Civil Code § 1638 .....................................................................................................11

Cal. Civil Code § 1641 .....................................................................................................12

Oversized Vehicle Ordinance (SD Municipal Code § 86.0139(a)) ......................*passim*

Vehicle Habitation Ordinance (SD Municipal Code § 86.0137(f)) ............................... 1

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

## I. INTRODUCTION

Plaintiffs respectfully move this Court to issue an order enforcing the terms of the February 2024 Settlement Agreement ("the Settlement Agreement," Doc. No. 329-2, Menasche Decl. Ex. A) signed by the parties and accepted by this Court. Specifically, Plaintiffs request that the Court order Defendant, the City of San Diego ("the City"), to comply with its agreement as follows:

1) Train and instruct its police officers to assess, on a case-by-case basis, whether safe parking is reasonably available to a particular class member, considering the *totality of circumstances* including distance to a designated nighttime-only lot, prior to issuing a citation under the nighttime provisions of the Oversized Vehicle Ordinance (OVO) (SD Municipal Code § 86.0139(a)), or enforcing the nighttime provisions of the Vehicle Habitation Ordinance (SD Municipal Code § 86.0137(f)) (*see* Agreement, p. 2, ¶ 3, and p. 3, ¶ 4(A)). Plaintiffs also request that the Court order the City to hold class members harmless regarding improperly issued OVO tickets.

2) Improve the Mission Valley parking lot as required under the Agreement (Agreement, p. 4, ¶ 5) focusing on essential improvements of electric hookups, running water, bathrooms, and showers up to the allocated budget of $900,000. To ensure prompt compliance with this provision of the Settlement Agreement, Plaintiffs further request that the City be ordered to share estimates for the cost of work by outside contractors and/or in-house projected costs, provide a time-line for completion, and all relevant documents regarding any impediments to completing the work, while allowing Plaintiffs and their experts to inspect the lot, as necessary.

1

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

   3) Update daily and display on the City's website the total number of vacant spots in each of the City's Safe Lot locations, including specifying the number of parking spots in each lot that is available for oversized vehicles.

Plaintiffs' motion is necessitated for three principal reasons. **First**, in the twenty months since the parties signed the Agreement, the City has not complied with any of the above-listed obligations under that Agreement except for improvements made to the gate at the Mission Valley lot. **Second**, during Plaintiff's attempts to meet and confer with the City regarding its failure to perform the above, the City repeatedly stated that it wanted to "renegotiate" the terms it had already agreed to before this Court.[2] **Third**, the City's failure to comply is adversely affecting Plaintiffs, especially in light of the City's (and its police department's) return to the discriminatory and illegal enforcement of the OVO and the threat of renewed VHO enforcement, which Plaintiffs' lawsuit was originally designed to address. Thus, Plaintiffs are left with no reasonable option other than to seek to enforce the terms of the Settlement Agreement given the City's apparent desire to renege on what it promised to do.

For these reasons, the Court should grant Plaintiffs' motion and order the City to perform its obligations under the terms of the Agreement.

## II. STATEMENT OF FACTS

In February 2024, the Parties agreed to and signed the Settlement Agreement that was hard fought and negotiated with the intention to resolve the issues raised in Plaintiffs' class action lawsuit against the City. That Settlement Agreement, attached as Ex. A to the accompanying Declaration of Ann E. Menasche ("Menasche Decl."), sets forth detailed requirements that the City agreed to in order to resolve Plaintiffs

---

[2] Indeed, when pressed during the meet and confers leading to this motion to explain the City's position, the deputy City attorney refused to provide the City's substantive position, and on two separate occasions intentionally disconnected the call with Plaintiffs' counsel and made no attempt to reconnect. *See* Menasche Decl., ¶¶ 34, 37.

2

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

claims that the OVO and VHO are unconstitutional and were being enforced in a discriminatory manner. The Court reviewed and approved the Parties' Settlement Agreement on October 10, 2024 (Doc. No. 346).

### A. OVO Ticketing Where Safe Parking Is Not Reasonably Available

Since July 2025, the City police have been issuing OVO tickets to class members even though, considering the totality of circumstances, Safe Parking was not reasonably available to these individuals. Notably, in issuing those tickets, the police have failed to inquire on a case-by-case basis about whether safe parking was reasonably available, as the Settlement Agreement requires. Moreover, there is no evidence that police have taken into account insurmountable obstacles described by class members in using the new H-Barracks lot, and issued OVO tickets regardless of class members' circumstances.

By way of background, the new Safe lot at H-Barracks next to the airport opened at the end of May 2025, with room for RV parking. But it is open only overnight. This is a problem because it is six miles each way from the area of Mission Bay where many class members with oversized vehicles park during the day. They are in Mission Bay because it offers plentiful parking for oversized vehicles and second vehicles, including disabled parking spaces, running water, showers, garbage collection, and free waste disposal sites for RVs. Mission Bay is also in close proximity to many class members' medical providers. There is no free daytime parking suitable for RVs close to H-Barracks. Participants must enter H-Barracks between 6:00 and 10:00 p.m. and leave at 7:00 in the morning. No second vehicles are permitted at the lot. *See* Menasche Decl., ¶ 10.

Soon after H-Barracks opened, the City gave the green light to the police to start ticketing again, targeting class members under the OVO who declined to go to H-Barracks. However, as revealed by the City's own documents and the testimony of

3

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

Class members, the City failed to properly train and instruct its officers as to the requirements of the Settlement Agreement.

The City's ticketing focused on those parked in and around Mission Bay, though some class members have been ticketed in other locations as well. Since July, there have been 1136 OVO tickets issued, with the most (525 tickets) in September. *See* Menasche Decl., Ex. B.[3]

According to documents produced by the City, the police use a form to be filled out for everyone issued an OVO ticket. *See* Menasche Decl., Ex. C. The City's form includes the following options for the issuing police officer to select:

- The officer knocked at the door and there was no answer *or* they spoke to someone in the vehicle; and
- The OVO citation and flyer regarding the Safe Lot program was left on the windshield, *or* the person answered and "declined services or refused to move the oversized vehicle from location".

*See id.*

There is no space on the City's form for noting any reasons the class member may have given as to why H-Barracks was not reasonably available to them, nor are police instructed to inquire or consider whether there are impediments to daily travel to and from the lot or accessing the lot on arrival. The only consideration for police is whether a space is open or has been filled, *not* whether the class member can reasonably travel there and use the space considering the *totality of circumstances*. *See id.*

The City's failure to have its police officers consider the totality of circumstances has been made clear over the course of the City's increased ticketing efforts. In interacting with police, individual class members have expressed to police

---

[3] Plaintiffs' counsel have not yet received the City's October ticketing records.

4

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

orally and/or in writing (through filling out a form Plaintiffs' counsel provided[4]) several compelling reasons why H-Barracks is not reasonably available to them. Those reasons include the following:

- That in light of the distance to H-Barracks from Mission Bay (12 miles round trip), they could not afford the extra gas money of up to $300 per month[5] and the wear and tear on their usually older vehicles to drive to H-Barracks twice per day. *See* Declaration of Alberto Diaz; Declaration of Sharone Tingley; Declaration of David Kern; Declaration of Germanos Soklaropoulis; Declaration of Paulette Santana; Declaration of Sean Halpin; Declaration of Teresa Lunsford; Declaration of Jodie Peterson; Declaration of Kevin Denczek; Declaration of Ophelia Wendt;

- Some class members need a second vehicle close at hand to go to doctors' appointments and a second vehicle is prohibited at H-Barracks, *see* Kern Decl., Soklaropoulis Decl., Lunsford Decl., Denezek Decl., and some are on medication or have visual impairments that make it dangerous for them to drive at night or during dusk, *see* Tingley Decl., Soklaropoulis Decl., Declaration of Ophelia Wendt;

---

[4] Plaintiffs' counsel provided class members with a form to assist them in understanding and advocating for their rights with police. The police obtained a few copies of the completed forms. Some of them showed up in the City's record production. *See* Menasche Decl., Ex. D.

[5] Class members' RVs often only get 5 to 7 miles per gallon in their older RVs. Many class members are on small, fixed incomes due to disability or retirement; a few have no regular income at all except food stamps. *See* Diaz Decl., Tingley Decl., Kern Decl., Soklaropoulis Decl., Santana Decl., Halpern Decl., Lunsford Decl., Peterson Decl., Dencek Decl., Wendt Decl. At least since 2022, the City fully understood the obstacle represented by distance to "Safe Parking" for class members with RVs impacting their ability to utilize a nighttime-only lot.

5

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

- Some class members have a hearing impairment that would likely be worsened by the loud noises at the H-Barracks location near the airport, *see* Halpin Decl.;
- Many have mobility impairments or other physical disabilities that make it impossible for them to carry out the multiple steps necessary to prepare their RV for moving twice per day, or they depend on assistance of others and the persons they rely on are not available with such frequency and/or during the required times of the day, *see* Diaz Decl., Soklaropoulis Decl., Lunsford Decl., Denczek Decl.; and
- The hours for entering and exiting H-Barracks conflict with work schedules, *see* Diaz Decl.

These are facts that the police should have taken into account in the context of the totality of the circumstances, and which directly impact the factors required to be considered by the Settlement Agreement.

Under the Settlement Agreement, the City was obligated to "adopt an amended VHO Training Bulletin, which [was] attached to [the] Agreement," and also to "provide in-person training of police officers on the amended VHO Training Bulletin that would begin on a rolling basis as soon as possible with the goal of completing the training no later than three months of the Effective Date." Menasche Decl., Ex. A (Agreement), § 3. This requirement would logically include that the City's police be trained on how to "consider the totality of the circumstances, including the type of vehicle, the distance to the safe parking lot, and whether there is adequate space for the vehicle in the safe parking lot" in determining whether a space in a Safe Lot is reasonably available. Such training should have been a prerequisite to renewed enforcement of the OVO and VHO. *Id.*

6

PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME

Police officers do not appear to be abiding by the express terms of the Settlement Agreement. Rather than doing the case-by-case assessment considering the totality of circumstances to determine whether safe parking is reasonably available, as required, police dismiss class members' information regarding circumstances making the Safe Lot not feasible, apparently failing to consider *any* of these reasons before automatically issuing OVO tickets. See Diaz Decl., Tingley Decl., Kern Decl., Soklaropoulis Decl., Santana Decl., Halpin Decl., Lunsford Decl., Petterson Decl., Denezek Decl, Wendt Decl.  When class members attempt to explain their circumstances, police simply note that a class member had "declined services."  Some police have openly expressed hostility and disdain toward class members attempting to explain the barriers they faced in utilizing H-Barrack.[6]  Based on class members' interactions with police, it appears that the City failed to properly train its police on how to address class members and determine reasonable availability of Safe Parking under the terms of the Settlement Agreement.[7]

The City has not only failed to provide such training required under the Agreement, but it has also failed to provided a timeline for completing this training. As a result, the City's police officers continue to enforce the OVO in contravention to the terms of the Settlement Agreement.

---

[6] In one instance, when a class member explained their circumstances, officers responded by saying, "I don't give a damn."  Tingley Decl.  On another occasion, after a class member explained why it was unreasonable for him to park at H Barracks, officers told him that if he could not park there, he must leave the City of San Diego. "We don't want you here."  Halpin Decl.

[7] In addition, some of the members of Plaintiffs' class have declared that although the form San Diego police complete indicates that police are supposed to knock, and despite the officer checking the box that they did knock, there are instances where that did not occur before a citation was issued.  See Diaz Decl., Kern Decl., Soklaropoulis, Decl. Peterson Decl., Denezek Decl., Wendt Decl.  Without knocking, class members are not given an opportunity to relocate if they are able or to explain why they cannot assess H-Barracks, before receiving a ticket.

7

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

Moreover, the City is denying class members' requests for reasonable modifications due to their disabilities. In the Settlement Agreement (at § 6), the City expressly agreed to consider all reasonable requests for modifications based on individual's disabilities. Despite this obligation, the City has denied at least two reasonable modification requests on the spurious grounds that any exceptions that would give these class members priority for placement in a 24-hour lot (or that would instruct police to refrain from ticketing and towing vehicle homes under the OVO until they are appropriately placed) would constitute a "fundamental alteration of the program." Menasche Decl., Ex. G. Under such flawed reasoning, no class member with disabilities could realistically obtain a reasonable modification to excuse them from going to H-Barracks, no matter what the circumstances. This is in direct contravention to the intent and text of the Settlement Agreement. *Id.*, Ex. A (Agreement), p. 5, § 6.

### B. Failure To Make Required Improvements at Mission Valley Lot

The Settlement Agreement requires the City to make "essential improvements" to the Mission Valley lot, including to provide "electric hookups, running water, bathrooms, and showers." Menasche Decl., Ex. A (Agreement), pp. 4-5, § 5. The City committed under the Settlement Agreement to spend up to $900,000 for such improvements. *Id.*

To date, none of these essential improvements have been completed. The only fix the City has made is to the entrance gate to the Mission Valley safe lot. Menasche Decl., ¶ 20; *see also* Declaration of Penny Helms. This is a start—but it's not enough. The City's failure to make the improvements it is contractually obligated to make leaves the Mission Valley Safe Lot an unsanitary, unsafe, and difficult to access space.

When Plaintiffs raised this issue with the City, it had neither a plan nor any viable excuse. At first, the City claimed that construction involving digging was precluded

8

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

because the lot was a protected archeological site; the City later withdrew that claim. *See* Menasche Decl., ¶ 21. While the Parties have discussed creative ideas for providing electricity through use of solar panels, the need for clean running water, and addressing the infestation by vermin, the City has not acted to bring about any change to the conditions of the lot. And despite Plaintiffs counsels' request for information, the City has not shared any plans nor a timeline for when the requisite work will start. *Id.*, ¶ 24.

### C. Inaccurate and Incomplete Posting of Safe Lot Vacancies

The Settlement Agreement requires the City to provide on the City's website "vacant spots in Safe Lots …, including whether spaces may be suitable for oversized vehicles, on at least a nightly basis." Menasche Decl., Ex. A (Agreement), p. 4, § 4(I).

The City has not updated the information required by the Settlement Agreement regarding space vacancies. For example, since H-Barracks first opened and for many months now, the City has posted ***the same*** information, claiming there are only twenty Safe Parking spaces available, with no indication of where these spaces are located or how many of the parking spaces are appropriate for RVs. Menasche Decl., ¶ 32. The only information that is modified on the City's website from one day to the next is the date that the notice is allegedly "updated."[8]

### D. Plaintiffs' Efforts to Resolve This Dispute Have Been Unsuccessful

---

[8] For example, the listing for October 21, 2025, on the City's website reads, "The City's Safe Parking Program currently has 20 spaces available, including spaces for oversized vehicles. Interested individuals should call the program operator, Jewish Family Service San Diego (JFS), at 858-637-3373 to learn more about options and how to enroll. JFS maintains an active waiting list should spaces become available. *Updated Oct. 21, 2025)*" https://www.sandiego.gov/homelessness-strategies-and-solutions/services/safe-parking-program.

9

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

After the above identified deficiencies came to light and after investigating numerous complaints from class members regarding OVO ticketing, Plaintiffs' counsel attempted multiple times to meet and confer with the City to address these issues, as is required by the Settlement Agreement—but to no avail.[9]  On September 10, 2025, Plaintiffs' counsel sent to Deputy City Attorney Michelle Neff a Notice of Dispute concerning the City's non-compliance with the Settlement Agreement. *See* Menasche Decl., Ex. H, ("Notice Letter").  The Notice Letter included the above identified deficiencies in the City's compliance with the Settlement Agreement.  Plaintiffs' Notice Letter explicitly identified that, among the other issues, that City police were issuing OVO tickets without considering the totality of the circumstances to determine whether Safe Parking was reasonably available to a particular class member as required by the Settlement Agreement.

On September 12, 2025, Plaintiffs' counsel met with City attorney Michelle Neff.  During that call, while Plaintiffs' counsel was attempting to get the City's position on certain issues and see if the parties could reach agreement, the City attorney intentionally disconnected the call in the middle of the parties' discussions and made no attempt to reconnect.  Menasche Decl., ¶ 35.  Plaintiffs' counsel sent a follow-up letter to the City attorney Ms. Neff on September 15, 2025, summarizing the parties' positions and stating Plaintiffs' willingness to continue to meet.  *See* Menasche Decl.,

---

[9] Section 11 of the Agreement, on Dispute Resolution, provides in relevant part: "If any Party believes that another Party is substantially violating this Agreement, within 30 days of receipt of information…counsel of record for that Party shall provide a written Notice of Dispute to counsel of record for the other Party, setting forth the Dispute in reasonable detail. Counsel for the other Party shall be required to respond to the Notice of Dispute within 14 days.  To the extent non-compliance is identified, the responding Party will have 45 days to cure the non-compliance…If the parties are unable to resolve the Dispute within 45 days of the Notice of Dispute, the Party that served the Notice of Dispute may thereafter petition the Court through Judge Butcher for resolution of the Dispute…" Menasche Decl., Ex. A (Agreement), p. 7, § 11.

10

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

Ex. I. Plaintiffs also requested that the City provide a timeline for completion of the Mission Valley improvements. *Id.*; Menasche Decl., ¶ 37.

Attempts to reschedule a follow-up meet and confer were unsuccessful. The City attorney improperly insisted that only certain Plaintiffs' counsel—but not others—be permitted to attend any additional meet and confer. *See* Menasche Decl, ¶ 37. After several more tries, including the above referenced attempts to obtain accommodation for two disabled class members, Plaintiff's counsel again contacted the City's attorney on October 16, 2025, to express concern about police harassing and threatening Plaintiff class members. Plaintiffs' counsel shared that the City police were apparently threatening the two class members seeking accommodation (Ms. Lunford and Mr. Soklaropoulos) with OVO tickets and the possibility of towing their vehicles. Menasche Decl., ¶ 38. During that conversation, the City attorney again intentionally disconnected the call and made no attempt to reconnect. Plaintiffs' counsel again followed by email expressing Plaintiffs' concerns in writing. *Id.*

While Plaintiffs' counsel remains willing to continue meeting and conferring with the City, further attempts to do so on this issue seemed unlikely to bear fruit. At this point, more than 45 days have passed since Plaintiffs provided notice of the dispute, and the parties remain at an impasse with no clear path to resolution. As such, Plaintiffs' motion to enforce the terms of the Settlement Agreement is ripe for adjudication.

## III. ARGUMENT

### A. The City Violating Explicit Terms of the Settlement Agreement

A court's interpretation of a settlement agreement is governed by principles of local law which apply to interpretation of contracts generally. *Parsons v. Ryan*, 912 F. 3d 486 (9th Cir. 2014). Settlement agreements are governed by the same rules as other contracts. In California, courts look to the plain meaning of the agreement's language;

11

PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME

if the agreement's language is clear and explicit, and it does not involve an absurdity, it controls. Cal. Civil Code § 1638; *Alvarado v. WalMart*, 2025 WL 2775774 (9th Cir., Sept. 3, 2025). "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civil Code § 1641.

As explained above, the Settlement Agreement explicitly requires police to consider the *totality of the circumstances* regarding whether safe parking is reasonably available to a homeless individual before issuing an OVO ticket. Per the Settlement Agreement, police are required to "determine whether a safe parking lot is reasonably available to an involuntarily homeless person sheltering in their vehicle," and "Officers should consider the totality of the circumstances…including the distance to the safe parking lot." Menasche Decl., Ex. A (Agreement), p. 2, § 3. The distance to the lot is relevant for homeless individuals sheltering in their vehicles because the location of a night-time only lot (where one must drive back and forth between nighttime an daytime locations) directly impacts cost and creates other obstacles.

There is no evidence that the City is complying with the plain language of the Settlement Agreement. The Settlement Agreement requires police to determine, on a case-by-case basis, whether a parking spot is reasonably available to someone who is involuntarily experiencing homelessness. The phrase "totality of the circumstances" and the express language in the Settlement Agreement require police to consider distance to the lot in the Settlement Agreement. The City police are not doing this. Instead, the City measures "reasonable availability" as a generic standard, merely determining whether "a parking spot [is] open for anyone with an oversized vehicle to park." But this overly narrow and simplified interpretation violates the express language of the Settlement Agreement.

12

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

In narrowing its analysis to the sole question of whether a parking spot is open, the police disregard whether class members are able to travel to and from the lot each day due to distance (which implicitly includes disability or financial constraints), or the condition of the vehicle, whether the lot's hours conflict with work schedules, or whether the conditions at the lot itself are inaccessible to that individual based on disability. In other words, the police are not considering the totality of the circumstances expressly required by the Settlement Agreement.

This is particularly egregious when one considers that the express intent of the Settlement Agreement is to avoid ticketing and towing of class members who have no alternative but to park in violation of the OVO's nighttime parking ban—*a goal the City agrees with*. Menasche Decl. Ex. A (Agreement), p. 2, § 2 ("The City agrees that it does not want to tow vehicles that provide the sole means of shelter to individuals or families who are experiencing involuntary homeless.") Thus, a policy of ticketing and towing the vehicles of class members who, through no fault of their own, cannot utilize the H-Barracks night-time-only lot, and where the police are not considering the totality of the circumstances, violates the clear intent and express language of the Settlement Agreement.

Likewise, the failure of the City—one year after this Court approved the Settlement Agreement—to do anything to improve the Mission Valley lot, save for one gate is also a violation of the clear, explicit language of the Settlement Agreement. To be sure, construction can take time, but the City refuses to provide a timeline for when the agreed on "essential improvements of electric hookups, running water, bathrooms, and showers" the City is contractually obligated to make will be started or completed. *See* Menasche Decl., Ex. A (Agreement), p. 3, § 5. This is a straightforward violation of the Settlement Agreement that this Court can correct by requiring compliance from the City.

13

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**

Finally, the unambiguous language of the Settlement Agreement requires the City to post accurate information updated daily on the number of spots available in each of the Safe Lots and how many of those are suitable for oversized vehicles. It has failed to do so. Listing 20 spots available for months now without specifying where these spots are located or how many are suitable for RVs makes a mockery of this requirement and undermines the City's purported attempts to provide "services." This is another clear violation of the Settlement Agreement that Plaintiffs must seek this Court's assistance in compelling the City to fulfill its contractual obligations.

### B. The City Violated Its Obligation of Good Faith and Fair Dealing

In addition to the express terms of the Settlement Agreement, the doctrine of good faith and fair dealing requires that the parties perform their obligations in good faith. As the California Supreme Court explained, "In every contract, there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Brown v. Superior Court*, 34 Cal. 2d 559 (1949). Furthermore, the law holds that "all things that in law or usage are considered as incidental to a contract or as necessary to carry it into effect, are implied therefore, unless some of them are express mentioned therein, when all things of the same class are deemed to be excluded." Cal. Civ. Code § 1656.

The City's harsh enforcement of the OVO in violation of the terms of the Settlement Agreement show a lack of good faith and fair dealing. Even if there is some ambiguity in the language of the Settlement Agreement regarding the police's obligation to individually assess whether a safe lot spot is reasonably available to a class member, or the timing of improvements to the Mission Valley lot, through the actions and inactions described above, the City has injured the rights of class members, many with disabilities, and deprived them of the benefit of the Settlement Agreement by reinstating the same punitive measures that originally led to this lawsuit, and

14

1  maintaining the uninhabitable conditions at the Mission Valley lot.  This is another
2  reason the Court should find the City in violation of the Settlement Agreement terms
3  and compel the City to comply with the agreed to terms and conditions of that
4  agreement.

### C. Awarding Plaintiffs' Attorney Fees Is Appropriate

Plaintiffs request an award of attorneys' fees associated with this enforcement of the Settlement Agreement.  Pursuant to § 10 of the Settlement Agreement, Plaintiffs believe that the funds allocated by the City for enforcement should be used to cover these fees and costs.  In the alternative, Plaintiffs request that the Court order the City to reimburse Plaintiffs for the fees incurred in bringing the motion. Plaintiffs will provide documentation of hours expended at the Court's request.

## IV. CONCLUSION

Based on the above, Plaintiffs request that this Court Order the City to comply with provisions of the Settlement Agreement as set forth in this motion.

By: */s/ Ann E. Menasche*
Ann E. Menasche, SBN 74774
ann@bulldogforjustice.com
LAW OFFICE OF ANN E. MENASCHE
1901 First Avenue, Suite 100
San Diego, CA 92101
Telephone: (619) 798-6835/Fax: (619) 702-7073

Michael A. Amon, SB # 226221
Amon@fr.com
Madelyn S. McCormick, SB # 320063
MMcCormick@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Fax: (858) 678-5099

15

1
2  Robert Scott Dreher, SB # 120527
   scott@dreherlawfirm.com
3  DREHER LAW FIRM
   350 W. Ash Street, Ste. 101
4  San Diego, CA 92101
5  Telephone: (619) 230-8828
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE TERMS OF SETTLEMENT AGREEMENT AND REQUEST FOR SUPPLEMENTAL ATTORNEYS' FEES FOR HAVING TO FILE SAME**