UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL BLOOM, et al.,

Plaintiffs,

v.

CITY OF SAN DIEGO,

Defendant.

Case No.:  17-cv-2324-DEB

**ORDER ON PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND REQUEST FOR ATTORNEYS' FEES AND SETTING HEARING**

**[DKT. NO. 362]**

Before the Court is Plaintiffs' Motion to Enforce Terms of Settlement Agreement and Request for Supplemental Attorneys' Fees ("Motion"). Dkt. No. 362. Plaintiffs' Motion alleges the City of San Diego ("City") has breached the parties' Settlement Agreement by: (1) enforcing the City's Oversized Vehicle Ordinance ("OVO") when a safe parking lot was not reasonably available; and (2) failing to perform agreed-upon improvements to the existing Mission Valley safe lot. The City opposes the Motion (Dkt. No. 367), and both parties seek to recover their attorneys' fees.

For the reasons discussed below, the Court finds the City's enforcement of the OVO is not in violation of the Settlement Agreement, but the City has not honored its agreement to improve the Mission Valley safe lot. Because neither party has completely prevailed, the Court declines to award attorneys' fees.

## I.      **Procedural Background**

Plaintiffs are a class of individuals who use their vehicles as their only form of shelter. Plaintiffs alleged the City violated their constitutional and statutory rights by enforcing the City's Vehicle Habitation Ordinance (VHO) and Oversized Vehicle Ordinance (OVO) against them. Dkt. No. 137.[1]

The parties resolved this case in a multifaceted Settlement Agreement. Dkt. No. 329-2. Among other things, the Settlement Agreement requires the City to create additional safe parking lots, establishes guidelines for the City's enforcement of the VHO and OVO, and obligates the City to make improvements to its Mission Valley safe lot.

The Court retained jurisdiction to resolve disputes arising under the Settlement Agreement. The Court's jurisdiction, however, is limited to issues that are "systemic in nature." Dkt. No. 329-2, ¶ 11. Excepted from the Court's jurisdiction is adjudication of an "isolated incident or issue involving only an individual ticket." *Id.*

Plaintiffs' Motion asserts the City violated two parts of the Settlement Agreement. First, the Settlement Agreement obligates the City to establish new safe parking lots and not ticket class members for OVO violations if a safe lot is not reasonably available. *Id.*, ¶ 4. Plaintiffs allege the City has violated the Settlement Agreement by issuing OVO tickets without considering whether a safe lot is reasonably available.

Second, the Settlement Agreement obligates the City to make certain improvements to the existing Mission Valley oversized vehicle safe parking lot. *Id.*, ¶ 5. Plaintiffs claim the City has not made these improvements. The Court addresses each argument in turn and

---

[1] The VHO prohibits any person from using a vehicle for human habitation on any street or public property between the hours of 9:00 p.m. and 6:00 a.m. San Diego, Cal., Ordinance § 86.0137(f) (2025). The OVO prohibits any person from parking upon any public street, park road, or parking lot, any oversized vehicle, non-motorized vehicle, or recreational vehicle between the hours of 2 a.m. to 6 a.m. San Diego, Cal., Ordinance § 86.0139(a) (2025).

finds Plaintiffs have not established the City's enforcement of the OVO constitutes a systemic breach of the Settlement Agreement, but the City has not honored its agreement to improve the Mission Valley safe lot.

## II.   Discussion

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *United Commercial Ins. Serv., v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). Under California law, courts must interpret contracts "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. The party asserting a breach bears the burden of proof by a preponderance of the evidence. *See Pugh v. See's Candies, Inc.*, 203 Cal. App. 3d 743, 760 (Ct. App. 1988).

A.  The City's Enforcement of the OVO

The Court approved the parties' class action Settlement Agreement on October 15, 2024. Dkt. No. 346. In May 2025, the City established a 100-space safe lot called "H Barracks." After H Barracks opened, the City began issuing OVO citations to class members who did not relocate there. Plaintiffs allege the City is issuing these citations without considering whether, under the totality of the circumstances, H Barracks is reasonably available.

Plaintiffs' main argument is that H Barracks is too far from Mission Bay Park, where many class members spend their daytime hours. The Court disagrees. H Barracks is just over five miles from Mission Bay Park. Dkt. No. 367-1, ¶ 10. It can accommodate oversized vehicles, and it has never reached capacity. The Court, therefore, finds that H Barracks is reasonably available to class members encountered in the Mission Bay Park area.

Consistent with this conclusion, many class members initially relocated to H Barracks. Dkt. No. 372-3, ¶ 8. That changed in August 2025, when Plaintiffs' counsel prepared and distributed a flyer for class members to present to officers seeking to enforce the OVO. Dkt. No. 367-1, ¶ 8; *see also* Dkt. No. 372-3, ¶ 8. Since then, the number of class

17-cv-2324-DEB

members who relocated to H Barracks significantly decreased (from 27 in August 2025 to 14 in September 2025), and the number of OVO tickets issued significantly increased (from 367 in August 2025 to 525 in September 2025). Dkt. No. 367-1, ¶ 7.

The flyer at issue, addressed "Dear San Diego Police Department," provides class members with a menu of pre-printed reasons why they are "unable to utilize night-time only H-Barracks lot for parking my/our RV, camper, or trailer." The first pre-printed reason is "I/we can't afford the cost of gas and wear and tear on my/our oversized vehicle driving back and forth daily to the H-Barracks lot."[2]

To support their argument that the City is breaching the Settlement Agreement by issuing OVO citations to class members who did not relocate to H Barracks, Plaintiffs have submitted completed copies of the flyer that certain class members provided to police officers to avoid ticketing for failing to relocate to H Barracks. All have the first pre-printed reason (i.e., "I/we can't afford the cost of gas and wear and tear") checked. Dkt. Nos. 362-6; 362-13 at 6; 362-14 at 11; 362-22 at 7.

Accepting Plaintiffs' argument that they can avoid OVO enforcement by presenting a pre-printed form with the "I/we can't afford the cost of gas and wear and tear" box checked, however, would give them unfettered veto power over the City's ability to enforce the OVO. The City's officers have no ability to verify class members' claims that they cannot afford the five-to-six-mile drive (10-12 mile round trip) to H Barracks.[3] Moreover, Plaintiffs understood their financial challenges when they agreed to the Settlement

---

[2] A blank flyer is attached to this Order as Exhibit 1. *See* Dkt. No. 362-5.

[3] By contrast, the Settlement Agreement gives objective criteria that officers can verify in real time as examples of factors to consider in determining whether a safe parking lot is reasonably available. Dkt. No. 329-2, ¶ 3 ("To determine whether a safe parking lot is reasonably available . . . , Officers should consider the totality of the circumstances, including the type of vehicle, the distance to the safe parking lot, and whether there is adequate space for the vehicle in the safe parking lot.").

17-cv-2324-DEB

Agreement, yet, they agreed they would have to move from their daytime locations to a reasonably available safe lot during the nighttime hours or risk receiving an OVO citation.

Counsels' distribution of this form to class members is troubling in two respects. First, it misleads class members into believing that presenting this form will immunize them from OVO enforcement. Many class members have received tickets as a result. Second, the form seeks to deprive the City of the main benefit it bargained for under the Settlement Agreement: the ability to clear vehicle encampments from City streets and parks and connect unhoused individuals with the social services available at safe lots and, ultimately, into permanent housing. Dkt. Nos. 367 at 7–8; 367-1, ¶ 26. The City incurred substantial expense to establish the H Barracks safe lot, including defending a lawsuit, only to have Plaintiffs' counsel attempt to undermine the City's efforts by providing class members with pre-printed reasons why they cannot relocate there. *See Waller v. Truck Ins. Exch., Inc.,* 11 Cal. 4th 1, 36 (1995) (The covenant of good faith and fair dealing "is implied as a supplement to the express contractual covenants, to prevent one party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.").

Certain class members have submitted declarations describing additional obstacles they face in relocating to H Barracks. Some explain they have disabilities that make it difficult to relocate to H Barracks, especially at night. Dkt. Nos. 362-12; 362-14; 362-16; 362-21. One class member claims parking in a gated lot will trigger her PTSD. Dkt. No. 362-21. Another claims an allergy to bird droppings and fears noise from the nearby airport will damage his hearing. Dkt. No. 362-20. Another claims her emotional support dog was banned from the Mission Valley safe lot because it was allegedly aggressive, so she assumes H Barracks will not allow her dog either. Dkt. No. 362-18. Another class member explains moving his RV in the evening is incompatible with his wife's work and school schedule. Dkt. No. 362-12, ¶ 9. And others complain about the

17-cv-2324-DEB

time, effort, and inconvenience required to pack and move their RVs. Dkt. Nos. 362-12, ¶ 6; 362-15, ¶ 17; 362-16, ¶ 7; 362-20, ¶ 5; 362-22, Ex. B.[4]

Moving their RVs to a nighttime safe lot understandably presents challenges to class members, who have limited financial resources, disabilities, and other personal challenges. Many class members also explain that a 24-hour safe lot would serve them better than a nighttime-only lot. *See, e.g.,* Dkt. Nos. 361-12, ¶ 7 and 362-13, ¶ 8. Plaintiffs, however, did not bargain for a 24-hour safe lot. Dkt. No. 329-2, ¶ 4A ("The City's intent is to provide safe parking during nighttime hours" which "may vary in hours depending on daytime use."). Plaintiffs, therefore, understood and agreed that, once the City provided reasonably available safe parking, they would have to relocate there during the nighttime hours or risk an OVO ticket.

The Court recognizes that Mission Bay Park may better serve class members' needs. Multiple class members explain that Mission Bay Park offers more amenities, including "access to running water, showers, garbage collection, and free waste disposal sites for RVs." Dkt. Nos. 362-12, ¶ 7; 362-13, ¶ 5; 362-14, ¶ 6; 362-15, ¶ 14; 362-17, ¶ 9; 362-18, ¶ 8; 362-20, ¶ 6. Plaintiffs, however, also did not bargain for the right to spend the night in Mission Bay Park. Instead, they bargained for (and the City agreed to provide) reasonably available nighttime safe parking. As the City points out, the "Settlement Agreement is a compromised agreement, where both sides did not get exactly what they wanted." Dkt. No. 367 at 8.

The Court is sympathetic to the class members' plight. Financial challenges, disabilities, and other circumstances have resulted in them living in their vehicles. But this reality was known when the parties entered into the Settlement Agreement. The City held

---

[4] These individual claims do not establish a Settlement Agreement violation that is "systemic in nature." Instead, each presents a unique claim relating to an "isolated incident or issue involving only an individual ticket." Plaintiffs may challenge individual tickets in another forum. *See* Dkt. Nos. 362-15, ¶ 13 and 362-16, ¶ 12 (describing administrative challenges to OVO citations).

up its end of the bargain by establishing a reasonably available nighttime safe lot. Plaintiffs must honor their agreement by relocating there or risk receiving a citation.

### B. The Mission Valley Improvements

In the Settlement Agreement, "[t]he City agree[d] to operate the Mission Valley lot . . . on a 24-hour basis for the exclusive use of involuntary homeless persons residing in RVs and other oversized vehicles during the three (3) year term of the Settlement Agreement." Dkt. No. 329-2, ¶ 5. The City also agreed to "make a reasonable, good faith attempt, to complete the following improvements [to the Mission Valley lot] within [a $900,000] budget":

- Water and electricity hookups for up to 40 RV parking sites;
- Demolition and expansion of the existing access gate and construction of an additional emergency exit;
- Up to 25 new light posts;
- A proposed pump-out station for sewage disposal;
- Connections for four bathrooms and shower stalls; and
- Construction of shade structures and/or planting of trees.

*Id.*

Plaintiffs allege the City is in breach of the Settlement Agreement because it has not provided the agreed-upon improvements. The Court agrees.

Eighteen months after the Court approved the Settlement Agreement, the only work the City has completed is widening the entrance and installing a security gate at a cost of $30,000. Dkt. 372-1, ¶ 10.[5] Regarding the other improvements listed in the Settlement Agreement, the City explains:

---

[5] At oral argument, the City represented it has spent "$140,000 approximately," which includes repaving the Mission Valley lot. Dkt. No. 383 (Tr. at 16). Although repaving is not listed in the Settlement Agreement, the City asserts it is necessary to perform the other listed improvements. *Id.* at 19. The Court is making no ruling at this time whether the cost of repaving counts against the $900,000 budget.

17-cv-2324-DEB

- Based on an "estimate of around $870,000 for the access gate, asphalt repair, and site lighting, a new proposal to build an infrastructure for electricity and water would exceed the settlement funds of $900,000." *Id.*, ¶ 8.

- "The City evaluated the ability to set up a shower trailer at the site, but due to the space required for the shower trailer along with its ancillary equipment, the trailer would occupy around eight (8) existing parking spaces . . . . [and] require the City to remove approximately eight existing participants from the site." *Id.*, ¶ 9.

- "The City is also exploring the lease or purchase [of] solar light towers to replace the four light towers that are powered by noisy diesel generators." *Id.*, ¶ 12.

Thus, the City claims it cannot provide electricity and water within the $900,000 budget, and it is presently "evaluating" and "exploring" whether it can perform the other work. *Id.* Contrary to the City's argument, this is not "substantial compliance with the requirements to make improvements at the Mission Valley safe parking." Dkt. No. 372 at 4.[6]

The Court, therefore, concludes the City is in breach of the Settlement Agreement. On or before **May 29, 2026**, the City must submit a **status report** containing: (1) a plan for completing the improvements listed in the Settlement Agreement; (2) a budget for the improvements; and (3) a schedule for completing the work. Plaintiffs may file a **response** to the City's status report on or before **June 19, 2026**. The Court sets a further in-person hearing regarding the City's performance on **June 29, 2026 at 10:00 a.m.** in Courtroom 2B, Edward J. Schwartz United States Courthouse, 221 W. Broadway, San Diego, California, 92101.

---

[6] At oral argument, the City characterized the listed work as "wishful thinking" and a "wish list". Dkt. No. 383 at 7, 13. To the contrary, the City agreed to "make a reasonable, good faith attempt, to complete the [listed improvements] within [a $900,000] budget." Dkt. No. 329-2, ¶ 5.

17-cv-2324-DEB

C. <u>Attorneys' Fees</u>

Both Plaintiffs and the City seek to recover their attorneys' fees. The Court denies both requests.

The Settlement Agreement provides that, "[r]easonable attorneys' fees and costs shall be awarded for work done in connection with dispute resolution pursuant to the standards set forth in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978)[.]" Dkt. No. 362-2, ¶ 11. However, "[i]f neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999).

Plaintiffs' Motion presents two issues: (1) whether the City systemically violated the Settlement Agreement by enforcing the OVO when safe parking was not reasonably available; and (2) whether the City honored its commitment to improve the Mission Valley safe lot. The City prevailed on the first issue, and Plaintiff prevailed on the second. Neither party prevailed sufficiently to receive an attorney fee award. *Id.* The Court, therefore, denies both parties' requests for attorneys' fees.

## III.  **Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion.

The Court **DENIES** the Motion with respect to Plaintiffs' claim that the City's enforcement of the OVO constitutes a systemic breach of the Settlement Agreement. The Court **GRANTS** the Motion with respect to Plaintiffs' claim that the City failed to make the agreed-upon improvements to the Mission Valley safe lot and **ORDERS** further proceedings as described above. The Court **DENIES** both parties' requests for attorneys' fees.

//

//

17-cv-2324-DEB

The Court **FURTHER SETS** the matter for a Hearing on **June 29, 2026 at 10:00 a.m**. in Courtroom 2B of the Schwartz Federal Courthouse, 221 W. Broadway, San Diego, California, 92101.

**IT IS SO ORDERED.**

Dated: **May 6, 2026**

Honorable Daniel E. Butcher
United States Magistrate Judge

17-cv-2324-DEB

Date: _____                Time: _____
Location: _____            License plate No. _____

Dear San Diego Police Department:

I/we are residents of the City of San Diego. My/our oversized vehicle (RV, camper or trailer) is my/our only available shelter.  I am therefore a member of the class and am subject to the Settlement Agreement in *Bloom et al. v. City of San Diego*, case no. 3:17-cv-02324 restricting enforcement of the Oversized Vehicle Ordinance (OVO) (SD Municipal Code §86.0139(a)). and Vehicle Habitation Ordinance (VHO) SD Muni Code § 86.0137(f).

I/we are unable to utilize night-time only H -Barracks lot for parking my/our RV, camper, or trailer for the following reasons: (Check applicable reasons.)

_____ I/we can't afford the cost of gas and wear and tear on my/our oversized vehicle driving back and forth daily to the H-Barracks lot.

_____ The lot's hours conflict with my work or school schedule or otherwise interfere with my ability to work or attend school, as described below:

_____
_____
_____

_____ I/we have disability related reasons why nighttime parking at H Barracks location will not work for me and/or members of my family, as described below:

_____
_____
_____

_____ Other reasons as described below:

_____
_____
_____

For these reasons, a parking spot at H Barracks is not reasonably available to me/us. Pursuant to the Settlement Agreement, I should not receive tickets for parking between 2:00 and 6:00 a.m. under the OVO.  (SD Municipal Code §86.0139(a)).

Print name: _____

Signature: _____